USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2-10-17

Jawad Amir Musa
a.k.a Leroy Moses,
   Petitioner,

        RECEIVED
       SDNY DOCKET UNIT

       2017 FEB 14 AM 10: 56

v.

       Crim. No.: 90 cr. 863-01 (RPP)
       Civil No: 97 civ. 2833 (RPP)

United States of America,
   Respondent.

## OMNIBUS MOTION FOR RELIEF FROM FINAL JUDGMENT TO REOPEN §2255 MOTION PURSUANT TO FED.R.CIV.P. 60(b)(6) AND UNITED STATES V. HOLLOWAY, 68 F.SUPP.3d 310 (E.D.N.Y. 2014) OR ALTERNATIVELY THROUGH A WRIT OF AUDITA QUERELA OR CORAM NOBIS UNDER THE ALL WRITS ACT, 28 USC §1651(a)

         *

Now Comes Jawad Amir Musa a.k.a. Leroy Moses [hereinafter "Petitioner"], Pro-Se, and respectfully moves this Honorable Court, pursuant to Fed.R.Civ.P. 60(b)(6) and United States v. Holloway, 68 F.Supp.3d 310 (E.D.N.Y. 2014), for Relief From Final Judgment to Reopen §2255 Motion to vacate sentence to remedy an unjust sentence, or Alternatively through a Writ of Audita Querela or Coram Nobis under the All Writs Act, 28 U.S.C. §1651(a) to vacate conviction and allow the Government to withdraw §851 enhancements. In support of this Motion Petitioner states as follows, based in law and fact:

### INTRODUCTION

This Court should hold this Pro-Se Petitioner to less stringent standard of review and liberal construction when examining procedural rule. See Haines v. Kerner, 404 U.S. 519 (1972).

In the words of the Honorable Judge John Gleeson,"[t]he power [then] United States Attorney Loretta Lynch has put to use in Francois Holloway's case inheres

in our adversarial system. It is the power to seek justice even after all appeals and collateral attacks have been exhausted and there is neither a claim of innocence nor any defect in the conviction or sentence. Even in those circumstances, a prosecutor can do justice by the simple act of going back into court and agreeing that justice should be done...

The use of this power poses no threat to the rule of finality, which serves important purposes in our system of justice. There is no floodgates to worry about; the authority exercised in this case will be used only as often as the Department of Justice itself chooses to exercise it, which will no doubt be sparingly. But, the misuse of prosecutorial power over the past 25 years has resulted in a significant number of federal inmates who are serving grotesquely severe sentences, including many serving multiple decades and even life without parole for narcotic offenses that involved no physical injury to others [such as the case with Petitioner]. Even seasoned federal prosecutors will agree that many of those sentences were (and remain) unjustly severe." United States v. Holloway, 68 F.Supp.3d 310, 315 (E.D.N.Y. 2014).

The deserving nature of Petitioner's motion for resentence is reflected in the position taken by his sentencing Judge nearly 20 years after he initially sentence Petitioner. In 2010, the Late Judge Robert P. Patterson, Jr., a highly regarded member of this District wrote in an order that "the length of Jawad's sentence and time served there on makes him an appropriate applicant for executive clemency." See Exhibit A, Order Denying Request to Correct Clerical Error in Judgment, Case No. Cr. 90-863 July 2, 2010).

Based on Judge Patterson's endorsement and the Clemency Initiative announced on April 23, 2015, by then Deputy Attorney General James Cole, Petitioner filed a clemency petition in May 2016.

In addition to the endorsement by Judge Patterson, Kenneth L. Wainstein the lawyer who prosecuted Petitioner on behalf of the United States, had submitted a strong endorsement of Petitioner's release. See Exhibit B, Letter of Support

[then AUSA] Kenneth L. Wainstein. Mr. Wainstein was the assistant United States Attorney in the Southern District of New York and handled Petitioner's case from the grand jury through sentencing. He went on to a long and distinguished career in a variety of capacities during nineteen years in the Justice Department and is now a partner at Cadwalader, Wickersham & Taft LLP.[1]

In explaining why "[Petitioner's clemency] petition should be granted, "Mr. Wainstein points to American drug policy and crime shifts in the past twenty-five years along with Petitioner's own considerable efforts to better himself while incarcerated and the absence of violence in his record. Mr. Wainstein recalls that "[Petitioner] was convicted and sentenced as part of the government's effort to aggressively combat the scourge of drugs in the 1980's and 1990's," but now finds it "only fair that [Petitioner's] mandatory life sentence be reconsidered in light of circumstance since that time." Letter of Support [then AUSA] Kenneth L. Wainstein.

Unfortunately, after serving more than 25 years of imprisonment on a life sentence Petitioner's clemency application was denied on January 6, 2017, without explination.

However, because the sentencing court and [then] prosecutor (Kenneth L. Wainstein) in this case believes that Petitioner's mandatory life sentence is unjust in light of reforms to federal charging policy and current case-law, Petitioner respectfully request the Court and United States Attorney Office exercise its discretion to reopen Petitioner's §2255 proceeding and vacate sentence and allow the government to withdraw the §851 enhancements so that the Court may impose a sentence on Petitioner that better serve the interest of justice. In other words, Petitioner "ask [the] United States Attorney[] for the kind of justice made possible in [Francios Holloway] case, that is, justice administered not by the President but by a judge, on the consent of the Department of Justice, in the same courtroom in which [this] inmate was sentenced." United States v. Holloway, 68 F.Supp.3d 310,

_____

1. During 19 years at the Justice Department, Kenneth L. Wainstein served as: Line AUSA Supervisor interim U.S. Attorney and confirmed U.S. Attorney in the United [cont.]...

317 (E.D.N.Y. 2014)(sometimes called the "Holloway Doctrine").

## STATEMENT OF JURISDICTION

"On motion and upon such terms are just the court may relieve a party or a party's legal representative from a final judgment order or proceeding for the following reasons:... (6) for any reason justifying relief from the operation of the judgment." Fed.R.Civ.P. Rule 60(b). This Rule "confer a broad discretion on the trial court to grant relief when appropriate to accomplish justice,... [and] it constitute a grand reservoir of equitable power to do justice in a particular case... It is properly invoked where there are extraordinary circumstances or when the judgment would work an extreme and undue hardship..." and should be liberally construed when substantial justice will be served. <u>Marrero Pichardo v. Ashcroft</u>, 374 F.3d 46, 55-56 (2nd Cir. 2014)(citation omitted); see also <u>Klapport v. United States</u>, 93 L.Ed. 109 (1949)(finding that Rule 60(b) enables a court to "acomplish justice").

In <u>United States v. Holloway</u>, Judge John Gleeson of the Eastern District of New York recognizing the excessive nature of defendant's sentence on three §924(c) convictions and defendant's effort to better himself while in prison, called on the United States Attorney's Office to agree to an order vacating two of the three §924(c) convictions so that Holloway could face a "more just resentencing." 68 F.Supp.3d 310, 314 (E.D.N.Y. 2014). The United States Attorney under the leadership of [then] United States Attorney Loretta Lynch, ultimately agreed to the Court's vacatur of two of the three §924(c) convictions, and the court proceeded to resentence Holloway on the remaining §924(c) count. This Petitioner believes that a similar exercise of prosecutorial discretion would be just and fair in this case. See also, <u>United States v. Rivera</u>, Nos. 83-00096-01-CR & 83-00138-02-CR

States Attorney Office in D.C.; Director of Executive Office for United States Attorneys; General Counsel and Chief of Staff at the F.B.I. and Assistant Attorney General for National Security.

(4)

(E.D.Okla.), Order of Sept. 15, 2015(granting defendant's motion to vacate and re-sentence after the government agreed to support the motion); United States v. Washington, No. 11-CR-705 (S.D.N.Y.), Judgment of Dec. 19, 2014, ECF No. 130 (dis-missing charge that invoked a mandatory minimum of the government's motion after Judge Sullivan asked the government about "the fairness of the fifty-two year mandatory minimum sentence that Defendant si facing because he opted to forego a ten-year plea offer and go to trial," ECF No. 109 at 12).

Or alternatively, the All Writs Acts empower District Courts to issue all writs necessary in aid of their jurisdiction and agreeable to the usage and prin-ciple of law, 28 U.S.C. §1651. The Writ of Audita Querela and Coram Nobis are two such Writs. See United States v. Morgan, 98 L.Ed.2d 248 (1954).

Audita Querela is a form of petition rooted in commonlaw, specifically avail-able to judgment debtors whose judgment was correct when issued but later rendered incorrect. The Writ has been abolished with respect to civil cases, see Fed.R.Civ.P. 60(b); but it remains available in limited circumstances with respect to criminal convictions. See United States v. Richter, 510 F.3d 103 (2nd Cir. 2007).

Coram Nobis relief is available pursuant to the All Writs Act, 28 U.S.C. §1651(a), to correct "errors of the most fundamental character." Morgan, 98 L.Ed.2d at 512. It gives courts the authority "to attain justice" or "to remedy an invalid sentence. Id. at 507, 513. The Second Circuit has further held that a writ provides sentencing court with authority to correct such errors that "have rendered the proceeding itself irregular and invalid." United States v. Marin-Moreno, 2016 U.S. Dist. LEXIS 30287 (March 9, 2016)(E.D.N.Y.).

## PETITIONER IS CURRENTLY SERVING A SENTENCE
## THAT WOULD BE SUBSTANTIALLY LOWER TODAY

Petitioner sentence would be signficantly lower today because (1) After [then Attorney General] Eric H. Holder's August 12, 2013 Memo on the charging policy regarding mandatory minimums for certain non-violent low-level drug offenders §851 enhancements would not be filed, See Exhibit C, Eric H. Holder Memorandum to the United States Attorneys and Assistant Attorney General for the Criminal Division; (2) he would likely not be a career offender today because only one of his prior convictions [not the two required for career offender status] satisfied the requirements of USSG §4B1.1 and (3) after United States v. Booker, 543 U.S. 220 (2005), the Court would not be required to sentence within the guideline range. Petitioner has already served more time than he would almost certainly be sentenced today.

Judge Patterson sentenced Petitioner to a mandatory term of life in prison in 1991. Petitioner meets every criterion set forth in the Agust 12, 2013 Holder Memo and would therefore receive a substantially lower sentence today. Moreover, the original prosecutor in Petitioner's case plainly states that, "the Section 851 enhancement papers would not be filed" today. Letter of Support, [then AUSA] Kenneth L. Wainstein. Petitioner already has served 300 months in prison.

## I.  COMPONENTS OF THE ORIGINAL SENTENCE IMPOSED IN 1991

Petitioner was convicted of conspiracy to distribute one kilogram of heroin in 1991, see 21 U.S.C. §841(b)(1)(A)(4) & §846, and has been in custody for twenty-five years. The statutory sentence of ten years to life associated with Petitioner's offense was enhanced to a mandatory minimum of life in prison based on two non-violent felony drug prior convictions and the filing of two 21 U.S.C. §851 enhancements by the Assistant United States Attorney. Subsection 851 may be filed for any "felony drug offense" that is punishable by imprisonment for more than one year. The

factual bases for the enhancements listed in the presentence report are two prior non-violent drug offenses?[2]

- In 1984, when Petitioner was nineteen years old, the police raided his family home in pursuit of his cousin and found cocaine. The police arrested Petitioner, his brother and his mother. He recieved a five-year sentence for possession with intent to distribute in Baltimore City Circuit Court. Petitioner served three-years before being paroled.

- In 1987, when Petitioner was twenty-two years old, the police found a very small amount of cocaine residue in a dollar bill and a gun in the trunk of his car. Later that year he was again arrested for possession of cocaine. The cases were consolidated and he received a four-year sentence and five years probation for possession of drugs and possession of a handgun in Baltimore City Circuit Court.

In 1991, the Late Honorable Judge Robert P. Patterson clearly voiced frustration at the mandatory minimum but was required by law to impose a life sentence.

### b. Guideline Range in 1991

The presentence report at ¶46 enumerates two offenses, also listed in the bullet points supra, whereby Petitioner became a career offender. Under the career offender guideline, for an offense with a statutory maximum of life (Petitioner's range was ten years to life) the automatic offense level is 37 and the automatic Criminal History Category is VI. Petitioner's 1991 career offender guideline range was therefore 360 months to life.

In 1991, Petitioner's non-career offender guideline was also 360 months to life. Based on 1991 Drug Quantity Table within USSG §2D1.1(c)(3), Petitioner's base offense level was 32. Petitioner received a 2-level enhancement for possession of a weapon and a 4-level role enhancement based on a preponderance of evidence. Petitioner's Criminal History Category ("CHC") of VI was based on 14 criminal history points. See Exhibit D, Presentence Report.

With an offense level of 38 and a CHC of VI, the guideline range was 360 months to life in prison.

---

2. PSR at 7. (Attached as Exhibit D)

**c. Rule 36 Appeal**

In 2010, Judge Patterson denied Petitioner's appeal but not because it lacked merit. Two years later, the Second Circuit summarized Petitioner's pro-se appeal:

> "Mr. Musa moved in 2010 pursuant to Fed.R.Crim.P. 36 to correct the judgment of conviction to indicate that he was convicted of conspiracy to triffic an unspecified quantity of heroin, rather than one kilogram, because the drug quantity had been found by a preponderance of evidence by the district court rather than beyond a reasonable doubt by the jury. See United States v. Thomas, 274 F.3d 655, 663 (2nd Cir. 2001)(en banc)(holding that where drug quantity triggering mandatory minimums is not found by a jury beyond a reasonable doubt, the defendant must be sentenced under §841(b)(1)(c))."

United States v. Musa, Case No. CR 10-3776 (2nd Cir. 2012)(affirming).

However, Thomas was not retroactive and Petitioner's motion fell outside the scope of a Rule 36 motion, requiring Judge Patterson and the Second Circuit to deny the appeal. Petitioner's dilemma prompted Judge Patterson, who died a few years later, to sua sponte note that Petitioner was an "appropriate applicant" for executive clemency, thereby essentially endorsing clemency application. See Order Denying Request to Correct Clerical Error in Judgment, Case No. CR 90-863 (July 2, 2010).

## II. THE SENTENCE WOULD BE SUBSTANTIALLY LOWER TODAY

**a. Statutory Range Today**

Petitioner's statutory range would drop from life in prison to ten years to life if the two §851 enhancements were not charged today ——— as Petitioner believe they would not be. See 21 U.S.C. §841(b)(1)(A).

The two §851 enhancements are based on predicates that qualify as "felony drug offenses" under current law, but they would not be charged under the Attorney Generals' charging policy because all six factors set forth in the August 12, 2013 Holder Memo Militate against it:

1. Petitioner was not a leader but a member of a loose-knit group which came together haphazardly in a day. In fact, the group was cobbled together by co-defendants David Wray and Sean Brockington. The parties involved were equally culpable participants of a group which existed for a very short time;

2. Petitioner was not involved in the use or threat of violence in connection with the offense;

3. Four of Petitioner's five prior offenses were simple possession of a weapon is no longer a "crime of violence" under current law, and his entire record is non-violent;

4. Petitioner had no ties to large-scale drug trafficking organizations, gangs, or cartels;

5. the filing of the §851 enhancements resulting in a life sentence created a gross disparity with the sentences of his co-defendants: three of those co-defendants served no time (including David Wray who was arguably more culpable than Petitioner), one co-defendant received five years, and one co-defendant received 15 years; and

6. Petitioner was an addict who sold drugs to support his habit.

See, Exhibit C, page 3.

Applying the totality of circumstances test to all the factors in the Holder Memo, it seems abundantly clear that, today an AUSA would not file §851s in Petitioner's case.

Not charging §851s would transform Petitioner's statutory sentence from life in prison to ten years to life. See 21 U.S.C. §841(b)(1)(A).

**b. Guideline Range Today**

Today, it is likely that Petitioner would not be considered a career offender. No combination of the offenses listed in the presentence report as the bases for Petitioner's career offender status, nor his other offenses, provide two "crimes of violence" or "controlled substance offenses" as defined in USSG §4B1.2. He has only one 1984 conviction for possession with intent to sell. See PSR at ¶36. His 1987 conviction for possession of a controlled substance and possession of a handgun is neither a "controlled substance" offense nor a "crime of violence" under §4B1.2. See also, Johnson v. United States, 135 S.Ct. 2551 (2015)(limiting the

definition of "crime of violence"); United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008)(Possession of a weapon is not a "crime of violence" under the career offender guideline). Also, after United States v. Henriquez, 757 F.3d 144 (4th Cir. 2014), held that burglary in Maryland does not constitute a "crime of violence," Petitioner's 1984 conviction for breaking and entering would not count as a "crime of violence."

Thus, because the career offender guideline would no longer apply, Petitioner's base offense level for one kilogram of heroin would today be 30.[3] Assuming that the judge would apply the 2-level increase for presence of a weapon under §2D1.1(b)(1), and the 4-level role based increase, Petitioner's offense level would be 36. For CHC VI, his non-career offender range would thus be 324 to 405 months. Even if the career offender guideline still applies, Petitioner's range of 360 months to life in prison would be profoundly shorter than his current sentence.

### c. The Guidelines Would Be Advisory Today

For the following reasons, a judge would likely conclude that Petitioner's guideline range, like the crack-cocaine guideline at issue in Kimbrough v. United States, 552 U.S. 85 (2007), is "greater than necessary" to serve sentencing purposes —— and that the twenty-five years Petitioner has already served is sufficient. Judges frequently vary downward, and by an average of one-third, from the guideline range.[4] The heroin guideline is not based on emperical evidence or national experience.

---

3. See Drug Quantity Table at USSG §2D1.1(c)(5)(Nov. 1, 2014)(Today Petitioner's Non-career offender guideline woudl be lower than in 1991 because the USSG App. C, Amend. 782 (Nov. 1, 2014) "drug minus two amendment reduced §2D1.1(c) base offense level by two.

4. In fiscal year 2014, judges imposed a sentence below the guideline range in 38% of all federal cases in which the prosecutor did not seek substantial assistance or fast-track departure. See U.S. Sent'g Comm'n, Sourcebook of federal Sentencing Statistic, Tbl.N (2014). Judges sentenced below the range in 58% of all heroin case in which the prosecutor did no seek a substantial assistance or fast track departure. See U.S. Sent'g Comm'n, Quick facts - Heroin Trafficking (FY 2013).

Further, these same two points apply equally to career offender guidelines.[5]

Finally, a sentencing court must now consider 18 U.S.C. §3553(a) sentencing purposes and previously prohibited individualized mitigating circumstances.[6]

**§3553 Sentencing Purposes:** Petitioner's prior crimes were committed because he was a drug addict (not a kingpin) who went through intense periods of abuse and who sold drugs in order to buy drugs.[7] During one costly binge, he was arrested for possession of cocaine in three consecutive months of 1984."This history is charac-teristice of a drug addict whose brain was chemically hijacked." See United States v. Hendrickson, 25 F.Supp.3d 1166 (N.D.Iowa 2014). While sober today, the fact that Petitioner used drugs into his prison sentence strongly demonstrates that Petitioner was, first and foremost, an addict. However, Petitioner's offense,

---

5. First, judges vary downward from the career offender guideline range. In 2012, the most recent year for which statistic are available, judges sentenced below the range in 57% of all career offender cases in which the prosecutor did not seek sub-stantial assistance or fast track departure. See U.S. Sent'g Comm'n, Quick facts - Career Offender (2014)(926 out of 2,232 cases). Second, the career offender guide-line is greater than necessary to serve sentencing purposes. As recognized by the Sentencing Commission, the career offender guideline overstates the seriousness of drug offenses and the risk of reoffending. See United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System (August 1991). A defendant with two prior convictions for selling five kilograms of heroin is sentence the same as one, like Petitioner, whose prior offenses involved relatively small quantities of cocaine. By amending the career offender guidelines at USSG §4B1.1, the Sentencing Commission inflicted sentences intended for "major traffickers" engaged in "extremely lucrative" business, often with "substantial ties outside the United States" upon repeat, smalltime dealers with a record of comparatively minor state offenses. 21 S. Rep. No. 98-225 at 175 (1983). As one sentencing judge observed, "it is not at all uncommon to find the supplier of drugs has a minimal criminal record, and thus, avoids career offender status, precisely becauxe of his distance from street activities, while the street dealer winds up with a substantial" sentence.

6. In Rita v. United States, 551 U.S. 338 (2007), the Supreme Court famously sum marized §3553(a) factors: "(1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) seriousness of the offense "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation..."

7. §3553(a)(1)(history and characteristic of the defendant).

harms caused and culpability do not warrant the minimum sentence recommended by the guideline range (reverse sting where no drugs existed, no violence, involvement for less than a day).[8] See United States v. Hurtado, No. 06-CR-741 (JBW), 2007 WL 4322972 (E.D.N.Y. Dec. 4, 2007)(short involvement in conspiracy results in shorter sentence). Petitioner's lengthy sentence also does not serve the purpose of deterrence.[9] Society does not need protection from Petitioner, especially after twenty-five years in prison, religious conversion and successful rehabilitation and recovery.[10] Petitioner's original sentencing would also be reduced because of the mitigating circumstances of Petitioner's drug addiction that fueled both his current and prior offenses, see United States v. Hendrickson, 25 F.Supp.3d 1166 (N.D. Iowa 2014), and for which he needed treatment, see 18 U.S.C. §3553(a)(2)(D). Further, prisoners released after age 50 recidivate to 0 to 1.4% and Petitioner is now 52 years old.

The need to avoid sentencing disparity is, of course, always due careful consideration. The concern, though, is with those disparities that are unwarranted. United States v. Owens, 464 F.3d 1252, 1256 (11th Cir. 2006); 18 U.S.C. §3553(a)(6) ("...the need to avoid unwarranted sentence disparities...")(emphasis added); United States v. Duncan, 479 F.3d 924, 929 (7th Cir. 2007)("18 U.S.C. §3553(a)(6) does not instruct district courts to avoid all differences in sentencing, only unwarranted disparities."). To impose the same sort of sentence on Petitioner as those being sentenced for far more serious drug offenses, and/or those with a record of violence, is a false equality that ignores the facts. See United States v. Ennis, 468 F.Supp.2d 228, 235 (D. Mass. 2006)("Treating offenders who are not

8. §3553(a)(1)(a)(seriousness of offense).

9. §3553(a)(2)(B) Judge Presnell in United States v. Williams, 481 F.Supp.2d 1298, 1304 (M.D.Fla 2007), echoing the proportionality concern of others, stated that "it seems appropriate to consider the deterrence factor in light of the seriousness of the offense, the deterrent effect of a harsh sentence should be reserved for those serious crimes where society's need for protection is greatest."

10. 18 U.S.C. §3553(a)(2)(C).

equally culpable the same is a false equality, not all consistent with the ad- monition 'to avoid unwarranted sentence disparities among defendants with similar records who have been guilty of similar conduct.'").

Judge John Gleeson in the Eastern District of New York has stated that "[u]n- til the Commission does the job right... it should lower the ranges in drug traf- ficking cases by a third... In the meantime, the current ranges will be given very little weight by this Court." United States v. Diaz, 2013 WL 322243 (E.D.N.Y. Jan. 28, 2013)(Gleeson, J.). Further, in the wake of Kimbrough, a "growing chorus of federal judges... have rejected" the career offender guidelines. The average non- government sponsored reduction in guidelines was 36% in heroin cases, See Sent'g Comm'n, Quick Facts - Heroin Trafficking (2013), 33% in career offender cases. For all these reasons, regardless of which guideline would apply to Petitioner, a judge would almost certainly depart downward.

### III. PETITIONER'S SENTENCING JUDGE WAS CONSTRAINED BY A MANDATORY MINIMUM WHICH WOULD NO LONGER APPLY AND PETITIONER WOULD ALMOST CERTAINLY RECEIVE A SHORTER SENTENCE TODAY.

The [then-Attorney General] Eric H. Holder, Jr. August 12, 2013 Memo directed AUSA's not file §851s when certain criteria are present; all of those six factors militate against Petitioner's current sentence. The balance is overwhemingly clear that Petitioner would not be subjected to 21 U.S.C. §851 today. The sentencing judge in Petitioner's case, Judge Patterson, indicated that he would have sentenced Petitioner to less than his current sentence when he sua sponte called Petitioner an "appropriate applicant" for executive clemency. Even in 1991 at sentencing Judge Patterson expressed frustration with the mandatory sentence:

> "Well there is not much that I can do either Mr. Moses. It is a mandatory sentence under the law, and the judges discretion has been taken away from him... there are questions about whether [members of Congress] have the necessary experience to make those decisions, and nevertheless, they do make them and I have to sentence you accordingly."

Today, unlike in 1991, Judge Patterson's discretion would not be "taken away from him" because, as Jawad's prosecutor now states, "the Section 851 enhancement papers would not be filed. See Letter of Support, [then AUSA] Kenneth L. Wainstein. Therefore, a life sentence would be a statutory maximum for Petitioner, rather than a mandatory minimum. For all of these reasons, it is highly likely that if the Late Hon. Judge Patterson had the opportunity to sentence Petitioner today, would exercise his discretion and impose a much shorter sentence.

Petitioner is fairly categorized as a non-violent offender. Only two of Petitioner's offenses could even remotely be categorized as violent offenses; a gun in a locked trunk of a car, and breaking and entering into his mother house. Because United States v. Henriquez, 757 F.3d 144 (4th Cir. 2014) held Maryland's burglary statute does not constitute a "crime of violence," Petitioner's 1984 conviction in Baltimore, Maryland for breaking and entering would not count as a "crime of violence." Moreover, as [then AUSA] Ken Wainstein writes in his letter of Support, "Mr. Musa has led a life free of violence in prison, which is consistent with the lack of violence in his record prior to incarceration." Letter of Support, [then AUSA] Kenneth Wainstein.

Petitioner was a low-level offender caught in a dry reverse sting operation. Petitioner's co-defendants each equally or (arguably) more culpable than Petitioner, significantly less severe sentences.

- Carmelita Grant: She possessed and supplied the money for transaction and was sentenced to time served;
- Angela Richardson: She supplied a vehicle for the trip to NYC and was sentenced to five years of probation;
- Sean Brockington: He connected his former jail mate, David Charles Wray to Petitioner. He was sentenced to five years of incarceration;
- Norman Ransom: He possessed the money for transaction and possessed a gun. He was sentenced to 180 months incarceration;
- David Wray: He was the person to meet and to agree to pay the CI, he expected drugs and not just a fee, and reportedly said "10 [oz] is too much for $20K." He was sentenced to 5 yrs probation.

Every single one of Petitioner's co-defendants have long-ago been released from prison.

Petitioner received a four point aggravating role adjustment based on a preponderance of evidence standard.[11] That four point enhancement severly punishes Petitioner for his one day of involvement with a group which did not exist the day before the sting operation. Petitioner's offense and history do not justify the extent of the sentencing disparity between himself and his co-defendants.

Petitioner does not have ties to any large-scale criminal organizations, gang or cartels. Petitioner's has served twenty-five years in prison - nearly half his life. The injustice of Petitioner's sentence is further highlighted by the fact that, in Fiscal Year 2014, the average sentence in federal court for <u>murder</u> was just under 23 years - a stark contrast to the sentence of life imprisonment that Petitioner is presently serving for his role in a drug conspiracy in which his direct personal involvement was limited to putting a downpayment on what he thought was 20 ounces of heroin. See <u>U.S. Sentencing Comm'n</u>, 2014 Sourcebook of Federal Sentencing Statistics, tbl. 13 (2014), available at.

### a. Petitioner Does Not Have A Significant Criminal History

Petitioner's history of non-violent drug offenses is not significant. The August 29, 2013, Holder Memo requires prosecutors to "evaluate the facts beyond the number of criminal history points" and emphasizes that this determination "is not a mechanical test".[12] This Holder Memo also states taht "non-violent, low-level drug activity... may not be significant for purposes of [this] policy. Id. Petitioner had six prior arrests for non-violent drug crimes (and two larceny

---

11. See Sentencing Transcript 12-3-1991 at 19-20(asserting that weight and role enhancement were not vigorously litigated because they were irrelevant and superseded by the §851 enhancements).

12. Memorandum from Eric H. Holder, Jr., Attorney General, to the United States Attorneys and Assistant Attorney General for the Criminal Division on Retroactive Application of Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases, at 1 (Aug. 29, 2013).

charges when he was thirteen years old). Petitioner was convicted of five simple possession offenses and one possession with intent to distribute offense. In addition, Petitioner has one conviction for a weapons possession (found in the trunk of his car) and one conviction at age eighteen for breaking and entering into his mother's home. Most or all of Petitioner's offenses stem from his drug addiction.

### b. Petitioner has Demonstrated Good Conduct in Prison

While in Prison, Petitioner has grown as a man worked hard to develop his skills and abilities. He has completed a remarkable number of educational courses, become an impressive legal advocate for himself and been a mentor to younger inmates.[13] The Captain at USP, Florence has also endorsed Petitioner's release and described Petitioner as a "positive force" in the prison. See Exhibit E, Letter of Support, Captain at USP Florence, M. Erwin.

Petitioner's infractions in prison stem from a drug addiction. Petitioner became addicted to heroin when he was thirteen and his addiction continued for many years. Fortunately, through personal strength, fierce determination, and belief in God, Petitioner finally beat his drug addiction four years ago. He has been drug free and sober since 2012.

Petitioner has never had a serious disciplinary infraction in prison except for drug offenses.[14] In the last four years, since becoming sober, Petitioner has had no drug offenses and only two minor infractions.[15]

13. See Progress Report at 2-3 (Petitioner studied for a cumulative 1,212 course hours).

14. Petitioner never received a 100 level infraction for anything other than drug use. For Twenty-years, Petitioner's drug problem has been the sole cause of any significant disciplinary action.

15. In the past four years, Petitioner received only two infractions for very minor offenses. Both took place in the law library on the same day. One cited Petitioner for failing to leave the law library on time and the other was for advertising to do typing work for a fee. Prior to 2012, Petitioner's personal struggle with drug addiction led to his lengthy record. However, Petitioner availed himself of drug treatment options available to him while in prison, including Narcotics Anonomyous.

[Then AUSA] Kenneth Wainstein his his Letter of Support of Petitioner's clemency application believed Petitioner should not have been denied because of his drug history. He wrote, "I would submit that those drug infractions should have limited impact on your assessment of his deservingness for clemency given that (1) it is somewhat understandable that a person facing the prospect of life in prison may turn to drugs and (2) [Jawad] ultimately showed the strength and characater to reject drugs and stay drug free for the past four years." Letter of Support, [then AUSA] Kenneth L. Wainstein.

Petitioner has beat the addiction while incarcerated and has four years of sobriety and drug free living. Petitioner truely regrets having the drug and alcohol violations he incurred during his incarceration, that conduct has been addressed by his clean living since 2012.

However, **Petitioner has no history of violence prior to or during his current prison term.**

In fact, Petitioner will build upon the many positive steps he took while in prison to better himself through his completion of numerous in education, mentoring, recovery programs and legal advocacy.[16] This includes college classes such as business management, marketiing, real estate, and Economics 101. He gained employable skills through a 120-hour course on Microsoft Office and he completed a 442-hour course on building trades. Petitioner participated in the release preparatioin program and took classes such as personal finance and employment skills. Petitioner also took courses on taxes, self-psychology and other subjects. Since 2015, Petitioner completed the Fiar Shake re-entry preparation program, the living planet course, the science fiction review, the cinematic study and critique course, ceramics, and Spanish.

Petitioner does not at all resemble the drug-addicted young Jawad Musa who

16. Letter of Support, Fellow Inmate (Mr. Joseph McKiskey Brown #54782-037 is a fellow inmate with Petitioner at USP Florence for whom Petitioner has become a father figure. Mr. Brown wrote a moving letter to the Office of the Pardon Attorney asking that Petitioner be "reunited with his family and community and also use his experience as a tool, a stepping stone to help others like myself that were once lost, to begin to believe in themselves enough to find themselves."). (See Exhibit G)

stood before Judge Patterson twenty-five years ago. Petitioner is today a Fifty-two year old man who is wiser, better educated, and better prepared to live in society.

If released, Petitioner will enroll (and has already been accepted) into Penn North Recovery Center which will administer drug tests and provide 12-step meetings, counseling, acupuncture, job training, housing and other services.[17] Petitioner has also been accepted by the highly-regarded job training program 2AM Bakery.[18] Further, Jacqueline Robarge, at Power Inside, an additional re-entry program, will offer Petitioner trauma counseling and coordinate services and referrals focused on Petitioner's needs.[19] With the Support of the local programs now available to Petitioner in Baltimore, and with a second opportunity at life, Petitioner will build on his four years of sobriety and integrate successfully as a positive member of my community.

In conclusion, generally, "[i]t is well established... that a 'proper case for Rule 60(b)(6) relief only one of 'extraordinary circumstances,' or extreme hardship.'" Harris v. United States, 367 F.3d 74, 81 (2nd Cir. 2004)(citation omitted). In the instant case, "extraordinary circumstances" and "undue hardship" are clearly presented. Petitioner is serving a sentence of life without the possibility of release, second in severity only to a death sentence, because of the courts' inability to exercise its discretion in sentencing and the unjust charging policy concerning Mandatory Minimums. If this indeed were a capital case, surely the existence of an issue in which the court clearly stated had the court been give any discretion with sentencing, the court would impose a substantially lower sentence, this would constitute extraordinary circumstances sufficient to warrant at least a review to see whether a sentence of life imprisonment in Petitioner's case is just or how such a sentence advances the goals of 18 U.S.C. §3553(a), which requires a court to impose

17. Letter of Support, Penn North Recovery, Steve Dixon (See, Exhibit H)
18. Letter of Support, 2AM Bakery, Gregory Carpenter. (See, Exhibit I)
19. Letter of Support, Power Inside, Jacqueline Robarge. (See, Exhibit J)

a sentence that is "sufficient, but not greater than necessary" to achieve the purpose of sentencing as set forth in that statute. A sentence of life imprisonment without chance of release is not so materially different from a death sentence that teh circumstance of this case are any less extraordinary. Rule 60(b)(6) is to be "liberally construed" and to serve "substantial justice" requires at the very least this Court to call on the appropriate officials in the U.S. Attorney's Office to consider exercising thier power in this case by agreeing to withdraw the §851 information so that this Court may impose a sentence on Petitioner that better serves the interest of justice. See <u>United States v. Martinez-Blanco</u>, No. 06-cr-396 (N.D.Ga. Mar. 31, 2014)(Order granting the joint motion of the parties to reduce Mandatory sentence of life imprisonment imposed pursuant to the government's filing of notice under 21 U.S.C. §851, to a 25 year term.).

Moreover, denial of Petitioner's Rule 60(b)(6) motion would certainly work an undue hardship on him because the sentencing court and the prosecuting attorney believe "justice has been done for [Petitioner's] drug crime in 1991" and yet Petitioner continue to serve an unjust sentence.

The August 12, 2013, Holder Memo directs AUSAs not to file §851 enhancements against drug offenders like Petitioner who satisfy the factors set forth therein. Petitioner's entire history involved no violence or malice of any kind, but rather stemmed from a drug problem. He was a low level dealer and a drug addict (since his teenage years) who joined a hurriedly cobbled together group which existed for a day before getting arrested. Petitioner is a perfect example of the non-violent offender who prompted the Attorney General to reform federal charging policy. He has since made a successful transition to sobriety due to his religious faith and personal strength.

Today an AUSA would not file §851s in Petitioner's case. The AUSA who prosecuted Petitioner in 1991 and who went on to a particularly distinguished career in law enforcement and national security, fully supports this petition. Moreover, Petitioner's sentencing judge the Late Judge Patterson of the S.D.N.Y indicated

that he would sentence Petitioner to less time. Six years passed since Judge Patterson wrote that Petitioner was "an appropriate applicant for executive clemency" and yet Petitioner remains incarcerated. Meanwhile, Petitioner's family maintains a close relationship with him through all these years and they earger to provide Petitioner with housing, employment and the long delayed satisfaction and joy of reunion.

Petitioner a.k.a. Leroy Moses knew nothing but the street when he was sentenced to life. Since then Petitioner a.k.a. Jawad Amir Musa has grown into a mature, rehabilitated man who deserves to join his loving family (including his Daughter, Najah Amirah Musa who was born after Petitioner's arrest) and friends and to build a devout successful and productive path for the rest of life. As the AUSA who prosecuted Petitioner writes "justice has been done for Mr. Musa's drug crime in 1991" and after serving a quarter of Century in prison Petitioner now "deserves [to be release]." Letter of Support, [then AUSA] Kenneth L. Wainstein.

For the foregoing reasons, Petitioner request this Honorable Court to call on the Department of justice to exercise its power to allow this Court to reopen Petitioner's §2255 proceeding, pursuant to Fed.R.Civ.P. 60(b)(6) and United States v. Holloway, 68 F.Supp.3d 310, (E.D.N.Y. 2014), to vacate sentence and allow the Government to withdraw the §851 information so that that Court may resentence Petitioner to a sentence below life imprisonment. Or in the alternative, because Petitioner would not have been subjected to a mandatory life sentence enhancement if he had been prosecuted after August 12, 2013, when the Attorney General changed the charging policy, warrants issuance of a writ of coram nobis, pursuant to the all Writs Act, 28 U.S.C. §1651(a), to relieve Petitioner of the resulting mandatory sentence.

Dated: February 4, 2017

Respectfully Submitted,

Jawad Amir Musa #28075-037
U.S.P. Florence
P.O. Box 7000
Florence, CO. 81226

(20)

# CERTIFICATE OF SERVICE

I  Jawad Musa          do hereby certify and affirm that on the  4th  day of February 2017 I have

sent via United States Postal Service - First Class Mail (postage pre-paid) a true and accurate copy of

Omnibus Motion for Relief From Final Judgment to Reopen §2255 Motion Pursuant

To Fed.R.Civ.P. 60(b)(6) and United States v. Holloway, 68 F.Supp.3d 310

(E.D.N.Y. 2014)...

and that the aforementioned was sent to   United States Attorney Office, S.D.N.Y., One St.
Andrew's Plaza, New York, N.Y. 10007

at the address(es) listed below:

Counsel For Government:
Glen A. Kopp
U.S. ATTORNEY'S OFFICE, SDNY
One St. Andrew's Plaza
New York, N.Y. 10007

/s/ Jawad J Musa

:EXHIBITS

PAGE(S)

A. Order Denying Request to Correct Clerical Error in Judgment, Case No. Cr. 90-863 (July 2, 2010) (A1-2) .................................... 2

B. Letter of Support [then AUSA] Kenneth L. Wainstein (B3-5) ......... 2

C. Eric H. Holder Memorandum to the United States Attorney General for the Criminal Division, (C6-8) .................................... 6

D. Presentence Investigation Report (D9-25) ......................... 7

E. Progress Report, Jawad Amir Musa #28075-037 (E26-67) ............. 16

F. Letter of Support, Captain at USP Florence, M. Erwin (F68) ........ 16

G. Letter of Support, Fellow Inmate Joseph M. Brown #54782-037 (G69-71) 17

H. Letter of Support, Penn North Recovery, Steve Dixon (H72) ......... 18

I. Letter of Support, 2AM Bakery, Gregory Carpenter (I73) ............ 18

J. Letter of Support, Power Inside, Jacqueline Robarge (J74) ......... 18

K. Re-entry Information, Jawad Musa #28075-037 (K75) ................

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAWAD AMIR MUSA
A/K/A "LEROY MOSES,"

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/2/10

Petitioner            90 Cr. 863 (RPP)

- against -
                      ORDER

UNITED STATES,

Defendant-Respondent
------------------------------------------------------------X

ROBERT P. PATTERSON, JR., U.S.D.J.

On June 23, 2010, this Court denied the Petitioner's motion to correct a clerical

error in his judgment and commitment order. On June 28, 2010, the Court received a

reply memorandum of law from petitioner Jawad Amir Musa, apparently written and

mailed before the Petitioner had received a copy of the June 23 order.

The Defendant was convicted by a jury of the crime charged in the indictment,

namely that he conspired to possess with intent to distribute one kilogram or more of

heroin, in violation of 21 U.S.C. § 846. The requested alteration of the judgment and

commitment order would thus be a substantive change, outside the narrow scope of

Federal Rule of Civil Procedure 36. The Court therefore affirms its June 23, 2010

holding denying the Petitioner's motion.

The Court notes, however, that the length of the Petitioner's sentence and time

served thereon makes him an appropriate applicant for executive clemency.

1

Ex. A2

IT IS SO ORDERED.

Dated: New York, New York

July 2, 2010

_(signature)_

Robert P. Patterson, Jr.

U.S.D.J.

Copies of this Order have been sent to:

**Counsel for Government:**
Glen A. Kopp
U.S. Attorney's Office, SDNY (St. Andw's)
One St. Andrew's Plaza
New York , NY 10007
(212) 637 – 2210
(212) 637 – 0086 (fax)

**Defendant:**
Jawad Amir Musa
#28075-037
U.S.P. Lee County
P.O. Box 305
Jonesville, VA 24263

AZ

# CADWALADER

Cadwalader, Wickersham & Taft LLP
700 Sixth Street, N.W., Washington, DC 20001
Tel +1 202 862 2200 Fax +1 202 862 2400
www.cadwalader.com

New York  London  Charlotte  Washington
Houston  Beijing  Hong Kong  Brussels

June 10, 2016

Robert A. Zauzmer, Esq.
Acting Pardon Attorney
United States Department of Justice
145 N Street N.E.
Room 5E.508
Washington, D.C. 20530

Re:  Letter of Support for Petition for Executive Clemency, Jawad Musa f/k/a Leroy
     Moses

Dear Mr. Zauzmer:

I am writing to support the petition of Jawad Musa, formerly known as Leroy Moses, for executive clemency. In 1991, I was an Assistant United States Attorney in the Southern District of New York,[1] and I was assigned to Mr. Musa's case. I handled the grand jury investigation and pretrial proceedings, took the case through trial, and represented the Government at the sentencing hearing in which Mr. Musa received a mandatory life sentence under 21 U.S.C. Section 851.

Last year, upon learning of the work of the Clemency Project 2014, I asked an attorney in my office to look up Mr. Musa's case and determine whether he was seeking clemency. Knowing that the Section 851 enhancement papers would not be filed under today's guidelines, I wanted to make sure his case was being reviewed. My colleague quickly determined that Mr. Musa had filed a clemency petition and that Professor Steve Zeidman and Mr. Jesse Levine were providing counsel in the clemency process.

Since that time, my colleague and I have spent a significant amount of time reviewing the file materials related to Mr. Musa and speaking with Professor Zeidman and Mr. Levine. Having carefully considered Mr. Musa's petition, it is my belief that it should be granted.

---

[1] I went on to serve in numerous other capacities during my 19 years in the Justice Department, including: line AUSA, supervisor, Interim U.S. Attorney and confirmed U.S. Attorney in the U.S. Attorney's Office in D.C.; Director of the Executive Office for United States Attorneys; General Counsel and Chief of Staff of the FBI; and Assistant Attorney General for National Security.

Kenneth L. Wainstein  Tel 202-862-2474  Fax +1 202 862 2400  ken.wainstein@cwt.com

CADWALADER

Thank you for considering my views on this important issue, and please contact me if I can be of any further assistance as you review Mr. Musa's petition.

Very truly yours,

Kenneth L. Wainstein

KLW/ajj

Ex. B5



**Office of the Attorney General**
**Washington, D. C. 20530**

August 12, 2013

MEMORANDUM TO THE UNITED STATES ATTORNEYS AND
ASSISTANT ATTORNEY GENERAL FOR THE CRIMINAL DIVISION

FROM:     THE ATTORNEY GENERAL

SUBJECT:   Department Policy on Charging Mandatory Minimum Sentences
and Recidivist Enhancements in Certain Drug Cases

In *Alleyne v. United States*, 133 S.Ct. 2151 (2013), the Supreme Court held that any fact that increases the statutory mandatory minimum sentence is an element of the crime that must be submitted to the jury and found beyond a reasonable doubt. This means that for a defendant to be subject to a mandatory minimum sentence, prosecutors must ensure that the charging document includes those elements of the crime that trigger the statutory minimum penalty.

The Supreme Court's decision in *Alleyne* heightens the role a prosecutor plays in determining whether a defendant is subject to a mandatory minimum sentence. To be sure, the exercise of discretion over charging decisions has always been an "integral feature of the criminal justice system," *United States v. LaBonte*, 520 U.S. 751, 762 (1997), and is among the most important duties of a federal prosecutor. Current policy requires prosecutors to conduct an individualized assessment of the extent to which charges fit the specific circumstances of the case, are consistent with the purpose of the federal criminal code, and maximize the impact of federal resources on crime. When making these individualized assessments, prosecutors must take into account numerous factors, such as the defendant's conduct and criminal history and the circumstances relating to the commission of the offense, the needs of the communities we serve, and federal resources and priorities.[1] Now that our charging decisions also affect when a defendant is subject to a mandatory minimum sentence, prosecutors must evaluate these factors in an equally thoughtful and reasoned manner.

It is with full consideration of these factors that we now refine our charging policy regarding mandatory minimums for certain nonviolent, low-level drug offenders. We must ensure that our most severe mandatory minimum penalties are reserved for serious, high-level, or violent drug traffickers. In some cases, mandatory minimum and recidivist enhancement statutes have resulted in unduly harsh sentences and perceived or actual disparities that do not reflect our Principles of Federal Prosecution. Long sentences for low-level, non-violent drug offenses do not promote public safety, deterrence, and rehabilitation. Moreover, rising prison costs have resulted in reduced spending on criminal justice initiatives, including spending on law enforcement agents, prosecutors, and prevention and intervention programs. These reductions in public safety spending require us to make our public safety expenditures smarter and more productive.

---

[1] These factors are set out more fully in my memorandum of May 19, 2010 ("Department Policy on Charging and Sentencing") and Title 9 of the U.S. Attorneys' Manual, Chapter 27.

Ex. C-6

For all these reasons, I am issuing the following policy[2]:

**Continuation of Charging and Sentencing Policies:** Pursuant to my memorandum of May 19, 2010, prosecutors should continue to conduct "an individualized assessment of the extent to which particular charges fit the specific circumstances of the case, are consistent with the purpose of the Federal criminal code, and maximize the impact of Federal resources on crime." While this means that prosecutors "should ordinarily charge the most serious offense that is consistent with the nature of the defendant's conduct, and that is likely to result in a sustainable conviction," the charges always should reflect an individualized assessment and fairly represent the defendant's criminal conduct.

**Certain Mandatory Minimum Sentencing Statutes Based on Drug Quantity:** Prosecutors should continue to ascertain whether a defendant is eligible for any statutory mandatory minimum statute or enhancement. However, in cases involving the applicability of Title 21 mandatory minimum sentences based on drug type and quantity, prosecutors should decline to charge the quantity necessary to trigger a mandatory minimum sentence if the defendant meets each of the following criteria:[3]

- The defendant's relevant conduct does not involve the use of violence, the credible threat of violence, the possession of a weapon, the trafficking of drugs to or with minors, or the death or serious bodily injury of any person;

- The defendant is not an organizer, leader, manager or supervisor of others within a criminal organization;

- The defendant does not have significant ties to large-scale drug trafficking organizations, gangs, or cartels; and

- The defendant does not have a significant criminal history. A significant criminal history will normally be evidenced by three or more criminal history points but may involve fewer or greater depending on the nature of any prior convictions.

**Timing and Plea Agreements:** If information sufficient to determine that a defendant meets the above criteria is available at the time initial charges are filed, prosecutors should decline to pursue charges triggering a mandatory minimum sentence. However, if this information is not yet available, prosecutors may file charges involving these mandatory minimum statutes pending further information and a determination as to whether a defendant meets the above criteria. If the defendant ultimately meets the criteria, prosecutors should pursue a disposition that does not require a Title 21 mandatory minimum sentence. For example, a prosecutor could ask the grand jury to supersede the indictment with charges that do not trigger the mandatory minimum, or a defendant could plead guilty to a lesser included offense, or waive indictment and plead guilty to a superseding information that does not charge the quantity necessary to trigger the mandatory minimum.

---

[2] The policy set forth herein is not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding. *See United States* v. *Caceres,* 440 U.S. 741 (1979).

[3] As with every case, prosecutors should determine, as a threshold matter, whether a case serves a substantial federal interest. In some cases, satisfaction of the above criteria meant for low-level, nonviolent drug offenders may indicate that prosecution would not serve a substantial federal interest and that the case should not be brought federally.

**Advocacy at Sentencing:** Prosecutors must be candid with the court, probation, and the public as to the full extent of the defendant's culpability, including the quantity of drugs involved in the offense and the quantity attributable to the defendant's role in the offense, even if the charging document lacks such specificity. Prosecutors also should continue to accurately calculate the sentencing range under the United States Sentencing Guidelines. In cases where the properly calculated guideline range meets or exceeds the mandatory minimum, prosecutors should consider whether a below-guidelines sentence is sufficient to satisfy the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). In determining the appropriate sentence to recommend to the Court, prosecutors should consider whether the defendant truthfully and in a timely way provided to the Government all information the defendant has concerning the offense or offenses that were part of the same course of conduct, common scheme, or plan.

**Recidivist Enhancements:** Prosecutors should decline to file an information pursuant to 21 U.S.C. § 851 unless the defendant is involved in conduct that makes the case appropriate for severe sanctions. When determining whether an enhancement is appropriate, prosecutors should consider the following factors:

- Whether the defendant was an organizer, leader, manager or supervisor of others within a criminal organization;

- Whether the defendant was involved in the use or threat of violence in connection with the offense;

- The nature of the defendant's criminal history, including any prior history of violent conduct or recent prior convictions for serious offenses;

- Whether the defendant has significant ties to large-scale drug trafficking organizations, gangs, or cartels;

- Whether the filing would create a gross sentencing disparity with equally or more culpable co-defendants; and

- Other case-specific aggravating or mitigating factors.

In keeping with current policy, prosecutors are reminded that all charging decisions must be reviewed by a supervisory attorney to ensure adherence to the Principles of Federal Prosecution, the guidance provided by my May 19, 2010 memorandum, and the policy outlined in this memorandum.

EX C8

# IN UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA )

RECEIVED
SDNY DOCKET UNIT

vs.
2017 FEB 14 AM 10: 57  Docket No.

LEROY MOSES )

S3 90 Cr 863 (RPP)

**Prepared For:**
Honorable Robert P. Patterson, Jr.
U.S. District Judge

**Sentence Date:** 10/7/91

---

### PRESENTENCE REPORT

**Offense:** Conspiracy To Possess With Intent To Distribute One Kilogram Or More Of Heroin (21 USC 846)

**Plea/Verdict:** A verdict of guilty to this one count Indictment after a jury trial concluded on July 18, 1991 before the Honorable Robert P. Patterson, Jr.

**Mandatory Minimum:** Mandatory life imprisonment without release

**Date of Arrest:** May 30, 1991

**Release Status:** Remanded

CONFIDENTIAL
PROPERTY OF U.S. COURTS
SUBMITTED FOR OFFICIAL USE OF
U.S. PAROLE COMMISSION AND
FEDERAL BUREAU OF PRISONS. TO BE
RETURNED AT THE CONCLUSION, OR UPON REQUEST.
DISCLOSURE AUTHORIZED ONLY TO
COMPLY WITH 18 USC 4208(b)(2).

**Identifying Data:**

| | | | |
|---|---|---|---|
| Date of Birth: | 10/23/64 | Age: | 26 |
| Race: | Black | S.S.# : | 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 |
| Sex: | Male | FBI # : | 719469AA6 |
| Marital Status: | Single | NYSID#: | unavailable |
| Education: | GED | USM # : | 28075-037 |
| Dependents: | 2 children | Other ID#: | |
| Address: | 2109 Brookfield Ave. | Citizenship: | U.S. |
| | Baltimore, MD 21217 | | |

**Detainers:** Pending charges in Baltimore, Maryland

**Codefendants:** None

**Assistant U.S. Attorney**

Ken Wainstein
One St. Andrew's Plaza
New York, New York 10007
(212)791-1156

**Revised:** October 1, 1991

RECEIVED
DEC 9 1991
COMMUNITY CORRECTIONS
NEW YORK, NEW YORK

**Defense Counsel**

Warren A. Brown (Retained)
200 E. Lexington St.-Suite 909
Baltimore, Maryland 21202
(301)332-4000

Prepared By: HAROLD N. GREENBERG
U.S. Probation Officer
(914) 344-6142
Office Location: Middletown

EX. D9

The Offense Conduct

11. Based upon information provided by a confidential informant ("CI"), confidential source ("CS") and other agents, in or about November 1990, David Charles Wray spoke on the telephone with a confidential informant working under the direction and supervision of the Drug Enforcement Administration and discussed the purchase of three kilograms of heroin from the confidential informant.

12. On November 26, 1990, David Charles Wray and another male met with the confidential informant in the vicinity of 42nd Street and 11th Avenue in Manhattan. At that meeting, the CI and Wray agreed that they would meet at that same location the next day, at which time Wray would give the CI $20,000 as a down payment on one kilogram of heroin.

13. On November 27, 1990, David Charles Wray, Norman Ransom, Douglas Eric Farrow and Leroy Moses travelled from Baltimore, Maryland to Manhattan, New York.

14. On November 27, 1990, the CI met David Charles Wray and Norman Ransom on the corner of 42nd Street and 11th Avenue in Manhattan. Ransom then accompanied the CI to a parked Hyundai automobile, in which was sitting defendant Carmelita Francis Grant. When the CI protested that he did not want to enter the car with both Ransom and Grant, Ransom vouched for defendant Grant, saying that she knew what was going on. After Grant stepped out of the car, Ransom picked up her purse and showed the CI a quantity of cash which Ransom indicated was $20,000. After being shown a bag containing approximately $20,000, the CI gave the prearranged arrest signal and the three individuals were placed under arrest.

15. On November 27, 1990, an agent noticed a black Mercedes-Benz with Maryland license plates pull out from a parking place on 42nd Street. It drove past him and sped down 11th Avenue. The agent noticed that the driver was a black male. In the passenger seat was a black woman. In the back seat was another black male. Surmising that the occupants of the Mercedes were fleeing from the arrest scene, the agent jumped into a passing law enforcement vehicle and gave chase. The Mercedes proceeded south toward the Lincoln Tunnel. After seeing the tunnel blocked off by traffic cones, the driver made a quick turn, driving the wrong way up a one-way street, at which point he turned again and sped out of sight.

16. On November 27, 1990, a CS familiar with the participants in the drug transaction that took place on the corner of 42nd Street and 11th Avenue informed that a black male named "Leroy" was the driver of the Mercedes-Benz and was the ultimate purchaser of the heroin on the day of the arrest.



Ransom, and Angela Richard on November 27, 1990 to go
"shopping". After shopping he claims they made a stop, which
turned out to be a drug transaction". Upon seeing some of his
associates being arrested, the defendant relates he "took
off".

23.  Moses does acknowledge he had eight to ten ounces of heroin
to distribute for $10,000 and this money was to be used by his
associates to purchase a kilogram of heroin in New York.

### Offense Level Computation

24.  Base Offense Level: The guideline for a violation of 21 USC
846 is found in Section 2D1.4(a) of the guidelines. That
Section provides that if a defendant is convicted of a
conspiracy, the offense level shall be the same as if the
conspiracy had been completed. A violation of 21 USC 812,
841(a)(1) and 841(b)(1)(A) (Possession with Intent to
Distribute Heroin) was the object offense listed in the
count of conviction. This offense involved one kilogram of
heroin. Section 2D1.1(a)(3) of the guidelines directs that
the Drug Quantity Table (Section 2D1.1(c)) be utilized to
determine the base offense level. One kilogram of heroin,
pursuant to the Drug Quantity Table results in a base
offense level of 32.                                          <u>32</u>

25.  Specific Offense Characteristics:   Since the defendant
possessed a firearm in this case, Section 2D1.1(b)((1)
requires that an increase of two levels be made.             <u>+2</u>

26.  Adjustment for Role in the Offense:  The defendant is seen
as the leader of this conspiracy, which involved six
people.  Section 3B1.1(a) therefore requires a four level
enhancement.                                                 <u>+4</u>

27.  Victim Related Adjustments:  None                        <u>0</u>

28.  Adjustment for Obstruction of Justice:  None            <u>0</u>

29.  Adjusted Offense Level (Subtotal):                      <u>38</u>

30.  Adjustment for Acceptance of Responsibility:  We do not
believe the defendant has shown recognition of
responsibility for the offense and a reduction of two
levels for Acceptance of Responsibility is not considered
applicable under Section 3E1.1(a).                           <u>0</u>

31.  Total Offense Level:                                     <u>38</u>



| 36. | 9/4/84 (age 19) | Possession of Cocaine with Intent to Distribute, District Court Baltimore, Maryland | 7/2/85: 5 years imprisonment. | 4A1.1(a) | 3 |

The defendant was represented by counsel in this case. Specific details of the offense were unavailable.

| 37. | 10/29/84 (age 20) | Possession of Cocaine, Breaking and Entering, District Court, Baltimore, Maryland | 2/14/85: 6 months imprisonment | 4A1.1(b) | 2 |

It is unknown if the defendant was represented by counsel in this case. Specific details of the offense were unavailable.

| 38. | 7/28/87 (age 22) | Possession , of a Handgun, Possession of a Controlled Substance, Baltimore City Circuit Court, Baltimore, Maryland | 2/22/88: 4 years imprisonment | 4A1.1(a) | 3 |

The defendant was represented by counsel in this case. Specific details of the offense were unavailable.

| 39. | 10/20/87 (age 22) | Possession of a Controlled Dangerous Substance, Baltimore City Circuit Court Baltimore, Maryland | 2/22/88: 4 years imprisonment, and 5 years probation | Section 4A1.2(a)(2) | 0 |

The defendant was represented by counsel in this case. Specific details of the offense were unavailable. This case was consolidated for sentencing purposes with the conviction and sentence resulting from the defendant's arrest on July 28, 1987.

Px= D 15

### Other Criminal Conduct

47.   None known.

### Pending Charges

48.   The defendant was arrested on May 9, 1991 in Maryland and has
      been charged with the following; Criminal Possession of a
      Deadly Weapon/Concealed, Theft (less than $300), Distribution
      of Controlled Dangerous Substance with Firearm, Possession
      with Intent Distribute Controlled Dangerous Substance,
      Possession of Controlled Dangerous Substance, Possession with
      Intent to Use Controlled Dangerous Substance Paraphernalia,
      Possession of Controlled Dangerous Substance.   This case is
      pending in Howard County Circuit Court (case numbers 0J040514
      and 0J0101043).

## PART C.   SENTENCING OPTIONS

### Custody

49.   Statutory Provisions:  The count of conviction would normally
      carry a minimum mandatory term of ten years imprisonment and
      a maximum term of life imprisonment without parole (21 USC 846
      and 21 USC 841(b)(1)(A)).

50.   However, 21 USC 841(b)(1)(A) also states, "If any person
      commits a violation of this subparagraph of this Title after
      two or more prior convictions for a felony drug offense have
      become final, such person shall be sentenced to a mandatory
      term of life imprisonment without release...".

51.   Since the Government has filed a prior felony Information, the
      statutory mandatory term of imprisonment in this case is life
      imprisonment without release (21 USC 846 and 21 USC
      841(b)(A)).   Therefore the mandatory term of imprisonment in
      this case is life without release (21 USC 846, 841(b)(1)(A)).

52.   Guideline Provisions:  Based on an offense level of 38 and a
      criminal history category of VI, the guideline range of
      imprisonment is 360 months to life (Chapter 5, Part A, The
      Sentencing Table).

### Supervised Release

53.   Statutory Provisions:  As the mandatory term of imprisonment
      in this case is life imprisonment without parole, supervised
      release would not appear to apply in this case (21 USC 846 and
      841(b)(1)(A)).

54.   Guideline Provisions:  Not applicable pursuant to statute.



63. The defendant and his current consensual mate, Tamara Smith, produced one child, Najeh Amirah Musa, in 1991. The child resides in Baltimore with Ms. Smith and the defendant's mother. Ms. Smith is receiving public assistance.

64. The probation officer was unable to contact any member of the defendant's immediate family.

## Mental and Emotional Health

65. The defendant reports no history of mental or emotional problems or treatment.

## Physical Condition, Including Drug Dependence &Alcohol Abuse

66. The defendant is five feet ten inches tall and weighs 140 pounds. He has a barely distinguishable tattoo on his lower right arm. He rates his present health as excellent.

67. The defendant relates he snorted heroin and cocaine daily from 1980 to 1988. He also states he smoked marijuana daily from 1972 to 1987. Moses denies any alcohol use. Moses attended a twenty-one day detox program in 1984 administered by the Eastern Baltimore Drug Program. There is no other record of the defendant having ever participated in a drug treatment program.

## Educational and Vocational Skills

68. The defendant reports that he completed the tenth grade at Southwestern Senior High School in Baltimore, Maryland before leaving school at age sixteen in 1980. He left school as the result of a Juvenile Court related placement.

69. Moses claims to have earned a GED while at the Eastern Pre-Release Unit in Maryland in 1986. He also claims to have earned college credits in business administration, a clerical course, and computer class while incarcerated. No verification was provided relative to college attendance.

70. The defendant's primary education was completed within the Baltimore, Maryland public school system.

## Employment Record

71. The defendant commented that he last filed a federal income tax return in 1987 (he could not recall adjusted gross income for that year). The defendant stated that for several years prior to his arrest in the instant offense, he held several clerical positions at different Baltimore, Maryland companies. Moses could not provide the probation officer with any verification of his past employment.



MOSES, LEROY

## ADDENDUM TO PRESENTENCE REPORT

The Probation Officer states that the presentence report has been forwarded to defense counsel and counsel for the Government on _9/19/91_ and that the content of the Addendum has been mailed to counsel on _10/1 /91_ for purposes of review and disclosure to the defendant. The addendum fairly states any objections they have made.



## OBJECTIONS

### By the Government

The Government has no objections.

### By the Defense

The defense has no objections.

Respectfully submitted,

EUNICE R. HOLT JONES
Chief U.S. Probation Officer

BY _Harold N. Grey_
HAROLD N. GREENBERG
U.S. Probation Officer
(914) 344-6142

HNG:vb

Approved:
_Daniel J. Sheridan_ 10/1/91
DANIEL J. SHERIDAN
Supervisor

EX. 821

# United States District Court

SOUTHERN _____ District of _____ NEW YORK

UNITED STATES OF AMERICA

V.

LEROY MOSES
AKA "JAWAD AMIR MUSA"
(Name of Defendant)

## JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

Case Number: sss90 CR 00863-0X (RPP)

WARREN BROWN, ESO. 7
Defendant's Attorney

THE DEFENDANT:

☐ pleaded guilty to count(s) _____
☒ was found guilty on count(s) ~~XXXXXXX~~ _____ after a
~~XXXXXXX~~ plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| T21 USC 846 | CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE ONE KILOGRAM OR MORE OF HEROIN | 5/30/91 | 1 |

DOCKETED AS
A JUDGMENT
ON   12-26-91          91, 2765

DEC 13 1991

The defendant is sentenced as provided in pages 2 through ___4___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984..

☐ The defendant has been found not guilty on count(s) _____ and is discharged as to such count(s).
☐ Count(s) _____ (is)(are) dismissed on the motion of the United States.
☒ It is ordered that the defendant shall pay a special assessment of $ ___50.00___ , which shall be due ☒ immediately ☐ as follows: _____ , for count(s)

IT IS FURTHER ORDERED that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: ___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___

Defendant's Date of Birth: ___10/23/64___

Defendant's Mailing Address:

2109 BROOKFIELD AVENUE
BALTIMORE, MD   21217

Defendant's Residence Address:

SAME AS ABOVE

DECEMBER 13, 1991
Date of Imposition of Sentence

_____ (signature)
Signature of Judicial Officer

HON. ROBERT P. PATTERSON
Name & Title of Judicial Officer

DECEMBER 16, 1991   DEC 17 1991
Date

DISTRICT COURT
FILED
S. D. OF N.Y.

RX D22

Defendant: LEROY MOSES
Case Number: sss90CR 00863-01(RPP)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of ___LIFE IMPRISONMENT WITHOUT RELEASE___

☒ The court makes the following recommendations to the Bureau of Prisons:
-DEFENDANT IS TO RECEIVE VOCATIONAL AND ACADEMIC TRAINING AS SOON AS POSSIBLE.

-DEFENDANT IS TO ENGAGE IN A DRUG TREATMENT PROGRAM.

-TO THE DEGREE POSSIBLE, DEFENDANT IS TO BE HOUSED NEAR THE BALTIMORE AREA(ie: PA or VA).

☒ The defendant is remanded to the custody of the United States marshal.
☐ The defendant shall surrender to the United States marshal for this district.
    ☐ at _____ a.m.
           p.m. on _____.
    ☐ as notified by the United States marshal.
☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons.
    ☐ before 2 p.m. on _____.
    ☐ as notified by the United States marshal.
    ☐ as notified by the probation office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____ at

_____ , with a certified copy of this judgment.

_____
United States Marshal

_____
Deputy Marshal

Defendant: LEROY MOSES

Case Number: sss90 CR 00963-01(PPP)

Judgment—Page __4__ of __4__

## STATEMENT OF REASONS

X The court adopts the factual findings and guideline application in the presentence report.

OR

☐ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

---

Guideline Range Determined by the Court:

Total Offense Level: ___38___

Criminal History Category: ___VI___

Imprisonment Range: ___360 /// ////// months to life imprisonment

Supervised Release Range: __NA__ to _____ years

Fine Range: S _____ to S _____

☒ Fine is waived or is below the guideline range, because of the defendant's inability to pay.

Restitution: S _____

☐ Full restitution is not ordered for the following reason(s):

☐ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by application of the guidelines.

OR

☒ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

OR

The sentence departs from the guideline range

☐ upon motion of the government, as a result of defendant's substantial assistance.

☐ for the following reason(s):

RX B.25



| | | | |
|---|---|---|---|
| **Name:** | MUSA, JAWAD AMIR | **Institution:** | FLORENCE HIGH USP |
| **Register Number:** | 28075-037 | | PO BOX 7500 |
| **Security/Custody:** | HIGH/IN | | FLORENCE, CO 81226 |
| **Projected Release:** | / LIFE | **Telephone:** | (719) 784-9454 |

| | | | |
|---|---|---|---|
| **Next Review Date:** | 11-06-2016 | **Driver's License/State:** | / |
| **Next Custody Review Date:** | 05-10-2017 | **FBI Number:** | 719469AA6 |
| **Age/DOB/Sex:** | 51 / 10-23-1964 / M | **SSN:** | 218761917 |
| **CIM Status:** | Y | **DCDC Number:** | |
| | If yes, reconciled: Y | **INS Number:** | |
| | | **PDID Number:** | |
| | | **Other IDs:** | |

| | | | |
|---|---|---|---|
| **Release Residence:** | Geraldine Harris, Mother | **Release Employer:** | [Name] |
| | 2109 BROOKFIELDS AVE | | [Address] |
| | BALTIMORE, MD 21217 | **Contact** | [POC] |
| **Telephone:** | [Phone] | **Telephone:** | |

| | | | |
|---|---|---|---|
| **Primary Emergency Contact:** | Geraldine Harris, Mother | **Secondary Emergency Contact:** | WAYNE GERALD, UNCLE |
| | 2109 Brookfield Ave | | 3907 KITMORE ROAD |
| | Baltimore, MD 21217 | **Telephone:** | (443) 970-1288 |
| **Telephone:** | (410) 483-8277 | | |

**Mentor Information:**

**Controlling Sentence Information:**

| Offense(s)/Violator Offenses | Sentence | Sentencing Procedure | Supervision Term |
|---|---|---|---|
| COUNT 1, CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE ONE KILOGRAM OR MORE OF HEROIN / 21 USC 846 | LIFE | 3559 SRA SENTENCE | 5 YEARS |

**Other Current Offenses:**

NONE

| Controlling Sentence Began | Time Served/Jail Credit/Inoperative Time | Days GCT/EGT/SGT | Days FSGT/WSGT/DGCT | Parole Status | |
|---|---|---|---|---|---|
| 12-13-1991 | 24 YEARS 11 MONTHS 22 DAYS / 198 / 0 | 0 / 0 / 0 | 0 / 0 / 0 | **Hearing Date:** | NOT ENTERED |
| | | | | **Hearing Type:** | |
| | | | | **Last USPC Action:** | |

**Detainers:** N

**Special Parole Term:** NOT ENTERED
**Pending Charges:** None known
**Cim Status:** Y                **Cim Reconciled:** Y

| Financial Responsibility | Imposed | Balance | Case No./Court of Jurisdiction | Assgn/Schedule Payment |
|---|---|---|---|---|
| ASSESSMENT USDC | $50.00 | $0.00 | 90-CR 00863-01(RPP) | FINANC RESP-COMPLETED |

**Financial Plan**
**Active:** N                **Comm Dep-6 mos:** $1819.25
**Financial Plan Date:** [Date]      **Commissary Balance:** $40.67

**Payments**
**Commensurate:** Y

EX. E26

| Course | Date | Hours |
|---|---|---|
| ACE LEGAL RESEARCH | 08-09-2012 | 14 |
| ACE SMALL BUSINESS DEV | 08-12-2012 | 14 |
| UNDERSTANDING THE UNIVERSE 2 | 05-09-2012 | 26 |
| CULTURAL STUDIES 1 | 05-09-2012 | 26 |
| ACE AUTO SALES | 03-27-2012 | 14 |
| VT BUILDING TRADES | 03-13-2012 | 442 |
| COMMERCIAL DRIVERS LICENSE | 01-13-2012 | 30 |
| ACE ASTRONOMY | 10-03-2011 | 30 |
| ACE SCREEN WRITING | 10-03-2011 | 30 |
| ACE GRAMMAR | 10-03-2011 | 30 |
| RPP INFO/COMMUNITY RESOURCES | 09-28-2011 | 2 |
| INTRO TO LEGAL RESEARCH | 05-22-2011 | 24 |
| FUNDAMENTALS OF ALPHA SMART | 05-22-2011 | 24 |
| PARENTING BY HEART DVD | 05-21-2011 | 9 |
| RP6 NON-RES/DRUG TREATMENT | 03-25-2010 | 21 |
| RPP6 PSYCH SELF STUDY | 05-20-2009 | 2 |
| MICROSOFT OFFICE SUITE | 07-27-2007 | 120 |
| RP6 LITERACY IN THE FAMILY | 06-28-2007 | 8 |
| RPP1 AIDS AWARENESS | 10-12-2006 | 1 |
| SWISSBALL FITNESS MON 12:20PM | 04-16-2005 | 0 |
| RPP - PERSONAL FINANCE/CONSUME | 03-18-2005 | 8 |
| RPP - EMPLOYMENT SKILLS | 03-31-2005 | 8 |
| SWISSBALL FITNESS MON 12:20PM | 03-31-2005 | 12 |
| LEISURE ACT/SOFTBALL 2001 | 08-21-2001 | 48 |
| BUS ADMIN&SALES MGT/NEWPORT CO | 05-07-2001 | 40 |
| LEISURE ACT/SOFTBALL 2000 | 09-09-2000 | 48 |
| PARENTING II | 01-28-2000 | 24 |
| REAL ESTATE/NEWPORT COLLEGE | 12-23-1999 | 40 |
| MARKETING 104/NEWPORT COLLEGE | 12-23-1999 | 40 |
| LEISURE ACTIVITY/SOFTBALL | 09-10-1999 | 58 |
| PARENTING CLASS | 10-19-1999 | 24 |
| BUSINESS MGT - 260 | 08-23-1992 | 45 |
| MANAGEMENT | 08-23-1992 | 45 |
| ECONOMICS - 141 | 04-24-1992 | 36 |

E 28

| LEE | U L ORD AM | L UNIT ORDERLY AM | 09-11-2010 | 09-29-2010 |
|-----|-----------|-------------------|------------|------------|
| LEE | WRK PROSCR | WORK PROSCRIPTION | 09-10-2010 | 09-11-2010 |
| LEE | U L ORD AM | L UNIT ORDERLY AM | 07-18-2010 | 09-10-2010 |
| LEE | USP FACL | USP FACILITIES | 06-25-2010 | 07-18-2010 |
| LEE | S COMPD DW | S COMPOUND DW | 12-09-2008 | 06-25-2010 |
| LEE | WRK PROSCR | WORK PROSCRIPTION | 12-08-2008 | 12-09-2008 |
| LEE | S COMPD DW | S COMPOUND DW | 10-02-2008 | 12-08-2008 |
| LEE | WRK PROSCR | WORK PROSCRIPTION | 10-01-2008 | 10-02-2008 |
| LEE | S COMPD DW | S COMPOUND DW | 02-01-2008 | 10-01-2008 |
| LEE | SHU DS | SHU UNASSIGNED DS | 01-04-2008 | 01-31-2008 |
| LEE | SHU AD | SHU UNASSIGNED AD | 12-21-2007 | 01-04-2008 |
| LEE | S COMPD DW | S COMPOUND DW | 12-21-2007 | 12-21-2007 |
| LEE | WRK PROSCR | WORK PROSCRIPTION | 12-20-2007 | 12-21-2007 |
| LEE | S COMPD DW | S COMPOUND DW | 11-06-2007 | 12-20-2007 |
| LEE | USP EDUC P | USP PM EDUCATION | 10-24-2007 | 11-06-2007 |
| LEE | SHU DS | SHU UNASSIGNED DS | 10-02-2007 | 10-23-2007 |
| LEE | SHU AD | SHU UNASSIGNED AD | 09-28-2007 | 10-02-2007 |
| LEE | USP EDUC P | USP PM EDUCATION | 12-28-2006 | 09-28-2007 |
| LEE | USP EDUC A | USP AM EDUCATION | 10-20-2006 | 12-28-2006 |
| | | Gap(s) in employment between assignments: 274 days | | |
| ALP | F ELEC2 AM | 7:40 AM TO 11:30 PM | 12-06-2005 | 01-19-2006 |
| ALP | F ELECT 2 | CMS ELECTRICAL 2 | 12-02-2005 | 12-06-2005 |
| ALP | U ORD IIA | UNIT ORDERLY | 04-13-2005 | 09-20-2005 |
| ALP | F ELEC2 AM | 7:40 AM TO 11:30 PM | 04-12-2005 | 04-13-2005 |
| ALP | F CMSCK AM | CMS CLERK 7:30AM TO 10:30 AM | 04-08-2005 | 04-12-2005 |
| ALP | EDUC 3 | EDUC WRK DET. 5:30P - 8:30P | 03-30-2005 | 04-06-2005 |
| ALP | EDUC 1 | EDUC WRK DET. 7:30A - 10:30A | 04-07-2005 | 03-29-2005 |
| ALP | EDUC 2 | EDUC WRK DET. 12:30P - 3:30P | 11-10-2004 | 04-07-2005 |
| ALP | F CMSCK AM | CMS CLERK 7:30AM TO 10:30 AM | 11-08-2004 | 11-10-2004 |
| ALP | U ORD IIA | UNIT ORDERLY | 09-14-2004 | 10-13-2004 |
| ALP | EDUC 2 | EDUC WRK DET. 12:30P - 3:30P | 07-01-2004 | 08-22-2004 |
| | | Gap(s) in employment during assignment: 31 days | | |
| ALP | U VACATION | VACATION | 06-24-2004 | 07-01-2004 |
| ALP | EDUC 2 | EDUC WRK DET. 12:30P - 3:30P | 02-17-2004 | 06-24-2004 |

E30

| LEW | AM DINE RM | AM DINE ROOM | 04-02-1999 | 05-05-1999 |
|-----|-----------|--------------|------------|------------|
| LEW | FOOD SVC | FOOD SERVICE | 03-27-1999 | 04-02-1999 |
| LEW | AM COOK | AM COOK | 11-10-1998 | 02-10-1999 |
| LEW | BAKERY OFC | FOOD SVC BAKERY OFFICER | 10-23-1998 | 11-10-1998 |
| LEW | DINE ROOM | FOOD SVC DINING ROOM | 10-22-1998 | 10-23-1998 |
| LEW | FOOD SVC | FOOD SERVICE | 10-15-1998 | 10-22-1998 |
| LEW | ASMBLY 8 | ASSEMBLY 8 | 06-19-1998 | 09-10-1998 |
| LEW | DINE ROOM | FOOD SVC DINING ROOM | 06-05-1998 | 06-19-1998 |
| LEW | LAW LIB | LAW LIBRARY | 05-28-1998 | 06-05-1998 |
| LEW | DINE ROOM | FOOD SVC DINING ROOM | 05-24-1998 | 05-28-1998 |
| LEW | FOOD SVC | FOOD SERVICE | 05-15-1998 | 05-24-1998 |
| LEW | ASMBLY 8 | ASSEMBLY 8 | 02-23-1998 | 04-15-1998 |
| LEW | LAW LIB | LAW LIBRARY | 02-19-1998 | 02-23-1998 |
| LEW | ASMBLY 8 | ASSEMBLY 8 | 12-25-1997 | 02-19-1998 |
| LEW | LAW LIB | LAW LIBRARY | 12-23-1997 | 12-25-1997 |
| LEW | ASMBLY 8 | ASSEMBLY 8 | 11-03-1997 | 12-23-1997 |
|  |  | Gap(s) in employment between assignments: 60 days |  |  |
| LEW | UNC PANEL | UNICOR PANEL | 06-26-1997 | 09-04-1997 |
| LEW | LAW LIB | LAW LIBRARY | 04-08-1997 | 06-26-1997 |
| LEW | MECH SVC | MECHANICAL SERVICES | 04-05-1997 | 04-10-1997 |
| LEW | LAW LIB | LAW LIBRARY | 04-05-1997 | 04-05-1997 |
| LEW | CONV | CONVALESCENCE | 04-01-1997 | 04-05-1997 |
| LEW | LAW LIB | LAW LIBRARY | 03-31-1997 | 04-01-1997 |
| LEW | MECH SVC | MECHANICAL SERVICES | 03-24-1997 | 03-24-1997 |
| LEW | CONV | CONVALESCENCE | 03-17-1997 | 03-24-1997 |
| LEW | MECH SVC | MECHANICAL SERVICES | 03-17-1997 | 03-17-1997 |
| LEW | CONV | CONVALESCENCE | 03-12-1997 | 03-17-1997 |
| LEW | ELEC SHOP | ELECTRIC SHOP | 03-12-1997 | 03-12-1997 |
| LEW | CONV | CONVALESCENCE | 03-11-1997 | 03-12-1997 |
| LEW | MECH SVC | MECHANICAL SERVICES | 03-10-1997 | 03-11-1997 |
| LEW | LAW LIB | LAW LIBRARY | 03-03-1997 | 03-07-1997 |
| LEW | AM COOK | AM FOOD SVC COOK | 01-27-1997 | 02-15-1997 |
| LEW | FOOD SVC | FOOD SERVICE | 01-15-1997 | 01-27-1997 |
| LEW | LAW LIB | LAW LIBRARY | 01-08-1997 | 01-15-1997 |

E.32

| LEW | FOOD SVC | FOOD SERVICE | 06-11-1992 | 06-29-1992 |
|-----|----------|--------------|------------|------------|
| LEW | PAINT 1 | PAINT 1 | 05-26-1992 | 06-11-1992 |
| LEW | CONV | CONVALESCENCE | 06-05-1992 | 06-09-1992 |
| LEW | DINE ROOM | FOOD SVC DINING ROOM | 03-31-1992 | 05-26-1992 |
| LEW | FOOD SVC | FOOD SERVICE | 03-28-1992 | 03-31-1992 |

## DISCIPLINE HISTORY

| UDC / DHO | Hearing Date | Report No. | Prohibited Act / Description | Sanction |
|-----------|--------------|------------|------------------------------|----------|
| UDC | 07-23-2015 | 2739478 | 307 - REFUSING TO OBEY AN ORDER | LP VISIT / 30 DAYS / CS<br>COMP: LAW: 30 DAYS LOSS OF VISIT |
| UDC | 07-23-2015 | 2739461 | 334 - CONDUCTING A BUSINESS W/O AUTH | LP VISIT / 15 DAYS / CS<br>COMP: LAW: |
| DHO | 12-13-2012 | 2383040 | 113 - POSSESSING DRUGS/ALCOHOL | LP COMM / 1 YEARS / CS<br>COMP:<br>DS / 60 DAYS / CC<br>COMP:<br>DIS GCT / 41 DAYS / CS<br>COMP: 10   LAW: S |
| DHO | 12-11-2012 | 2383391 | 110 - REFUSING DRUG/ALCOHOL TEST | LP VISIT / 1 YEARS / CS<br>COMP:<br>LP PHONE / 1 YEARS / CS<br>COMP:<br>DS / 60 DAYS / CS<br>COMP:<br>DIS GCT / 41 DAYS / CS<br>COMP: 10   LAW: S |
| DHO | 10-01-2010 | 2072510 | 112 - USE OF DRUGS/ALCOHOL | TRANSFER / 0 / CS<br>COMP: LAW: OVER 10 112'S<br>LP VISITRS / 5 YEARS / CS<br>COMP:<br>LP VISIT / 5 YEARS / CS<br>COMP:<br>DS / 30 DAYS / CS<br>COMP: |
| DHO | 07-27-2010 | 2043957 | 112 - USE OF DRUGS/ALCOHOL | LP OTHER / 120 DAYS / CS<br>COMP: LAW: TRULINCS<br>LP VISIT / 5 YEARS / CS<br>COMP:<br>LP VISITRS / 5 YEARS / CS<br>COMP:<br>DS / 29 DAYS / CS<br>COMP:<br>DS / 1 DAYS / CS<br>COMP: |
| UDC | 06-14-2010 | 2027344 | 316 - BEING IN UNAUTHORIZED AREA | LP VISIT / 30 DAYS / CS<br>COMP: |
| DHO | 05-28-2010 | 2018097 | 112 - USE OF DRUGS/ALCOHOL | LP VISITRS / 3 YEARS / CS<br>COMP:<br>LP VISIT / 3 YEARS / CS<br>COMP:<br>DS / 1 DAYS / CS<br>COMP: |

R34

| | | | | |
|---|---|---|---|---|
| | | | | DIS GCT / 40 DAYS / CS<br>COMP: 10   LAW: S |
| DHO | 01-26-2006 | 1424150 | 112 - USE OF DRUGS/ALCOHOL | LP VISITRS / 60 MONTHS / CS<br>COMP: NON CONTACT. 01-26-2011 THROUGH 01-25-2016.<br><br>LP VISIT / 60 MONTHS / CS<br>COMP:   LAW: THROUGH 01-25-2011.<br><br>LP PHONE / 3 MONTHS / CS<br>COMP:   LAW: THROUGH 04-25-2006.<br><br>DS / 60 DAYS / CS<br>COMP:<br><br>DIS GCT / 40 DAYS / CS<br>COMP: 10   LAW: S |
| DHO | 09-27-2005 | 1384010 | 217 - EXCHANGING MONEY FOR CONTRABND | LP COMM / 6 MONTHS / CS<br>COMP:   LAW: CONCLUDES 03-26-2006.<br><br>DS / 30 DAYS / CS<br>COMP: |
| UDC | 07-06-2005 | 1358132 | 316 - BEING IN UNAUTHORIZED AREA | LP COMM / 30 DAYS / CS<br>COMP:   LAW: 30 DAYS LOSS OF COMMISSARY PRIV. |
| UDC | 04-07-2005 | 1329149 | 310 - BEING ABSENT FROM ASSIGNMENT | LOSE JOB / 0 / CS<br>COMP:   LAW: LOSE JOB IN EDUCATION |
| DHO | 08-02-2004 | 1240883 | 305 - POSSESSING UNAUTHORIZED ITEM | DS / 15 DAYS / CS<br>COMP: |
| UDC | 06-11-2003 | 1112504 | 317 - FAILING TO FOLLOW SAFETY REGS | LP COMM / 30 DAYS / CS<br>COMP: |
| UDC | 01-13-2003 | 1063732 | 328 - GIVING/ACCEPTNG MONEY W/O AUTH | LP COMM / 30 DAYS / CS<br>COMP: |
| DHO | 07-09-2002 | 1004961 | 112 - USE OF DRUGS/ALCOHOL | LP VISIT / 1 YEARS / CS<br>COMP:   LAW: CONCLUDES 5/21/2004.<br><br>LP COMM / 6 MONTHS / CS<br>COMP:   LAW: CONCLUDES 1/8/2003.<br><br>DS / 60 DAYS / CS<br>COMP:<br><br>DIS GCT / 40 DAYS / CS<br>COMP: 10   LAW: S |
| UDC | 05-22-2002 | 994010 | 307 - REFUSING TO OBEY AN ORDER | LP COMM / 30 DAYS / CS<br>COMP: |
| DHO | 05-22-2002 | 992690 | 297 - PHONE ABUSE-DISRUPT MONITORING | LP PHONE / 9 MONTHS / CS<br>COMP:   LAW: CONCLUDES 6/17/2003.<br><br>DS / 30 DAYS / CS<br>COMP: |
| DHO | 03-19-2002 | 972856 | 112 - USE OF DRUGS/ALCOHOL | LP PHONE / 6 MONTHS / CS<br>COMP:   LAW: CONCLUDES 9/18/2002.<br><br>LP VISIT / 1 YEARS / CS<br>COMP:   LAW: PENDING CLEAR CONDUCT.<br><br>DS / 45 DAYS / CS<br>COMP:<br><br>DIS GCT / 40 DAYS / CS<br>COMP: 10   LAW: S |
| DHO | 08-06-2001 | 906824 | 112 - USE OF DRUGS/ALCOHOL | DIS GCT / 41 DAYS / CS<br>COMP: 10   LAW: S<br><br>LP PHONE / 90 DAYS / CS<br>COMP:<br><br>DS / 60 DAYS / CS<br>COMP:<br><br>TRANSFER / 0 / CS |

E36

| | | | | |
|---|---|---|---|---|
| DHO | 02-19-1997 | 472063 | 219 - STEALING | MON REST / 2 DOLLARS / CS<br>COMP: LAW: FREEZE INMATE'S COMMISSARY ACCOUNT PENDING LAW:<br>MONETARY RESTITUTION IN THE AMOUNT OF $2.28<br><br>LOSE JOB / 0 / CS<br>COMP: LAW: REMOVE INMATE FROM FOOD SERVICE<br><br>DIS GCT / 27 DAYS / CS<br>COMP: |
| UDC | 02-10-1997 | 470010 | 305 - POSSESSING<br>UNAUTHORIZED ITEM | LOSE PRIV / 1 MONTHS / CS<br>COMP: LAW: FOUND INMATE GUILTY AND SANCTIONED HIM TO ONE MO. LAW:<br>COMM RESTR. |
| DHO | 11-06-1996 | 445634 | 305 - POSSESSING<br>UNAUTHORIZED ITEM | MON REST / 5 DOLLARS / CS<br>COMP: LAW: FREEZE INMATE'S COMMISSARY PENDIND MONETARY REST.<br><br>DS / 15 DAYS / CS<br>COMP: |
| DHO | 09-05-1996 | 430263 | 109 - POSSESSING DRUGS OR<br>DRUG ITEMS | DS / 30 DAYS / CS<br>COMP: LAW: SUSPEND D/S PENDING 180 DAYS CLEAR CONDUCT<br><br>LOSE PRIV / 365 DAYS / CS<br>COMP: LAW: SOCIAL VISITS/<br><br>LOSE PRIV / 90 DAYS / CS<br>COMP: LAW: COMMISSARY |
| DHO | 07-29-1996 | 419770 | 109 - POSSESSING DRUGS OR<br>DRUG ITEMS | LOSE PRIV / 180 DAYS / CS<br>COMP: LAW: SOCIAL VISITS<br><br>DS / 30 DAYS / CS<br>COMP: |
| DHO | 01-03-1996 | 372409 | 203 - THREATENING BODILY<br>HARM | LOSE PRIV / 90 DAYS / CS<br>COMP: LAW: COMMISARY<br><br>DS / 15 DAYS / CS<br>COMP: |
| DHO | 08-04-1995 | 334642 | 109 - POSSESSING DRUGS OR<br>DRUG ITEMS | LOSE PRIV / 3 MONTHS / CS<br>COMP: LAW: COMMISSARY<br><br>LOSE PRIV / 1 YEARS / CS<br>COMP: LAW: VISIT<br><br>DS / 30 DAYS / CS<br>COMP:<br><br>DIS GCT / 27 DAYS / CS<br>COMP: |
| UDC | 05-02-1995 | 312114 | 320 - FAILING TO STAND<br>COUNT | LOSE PRIV / 90 DAYS / CS<br>COMP: LAW: 90 DAYS LOSS OF COMMISSARY SUSPENDED PENDING LAW: 180<br>DAYS CLEAR CONDUCT<br><br>LOSE PRIV / 15 DAYS / CS<br>COMP: LAW: 15 DAYS EXTRA DUTY |
| DHO | 04-20-1995 | 308058 | 307 - REFUSING TO OBEY AN<br>ORDER | LOSE PRIV / 90 DAYS / CS<br>COMP: LAW: COMMISSARY<br><br>DS / 7 DAYS / CS<br>COMP: |
| UDC | 03-01-1995 | 295899 | 305 - POSSESSING<br>UNAUTHORIZED ITEM | EXTRA DUTY / 14 DAYS / CS<br>COMP: LAW: 14 DAYS EXTRA DUTY |
| DHO | 06-21-1994 | 235289 | 317 - FAILING TO FOLLOW<br>SAFETY REGS | LOSE JOB / 0 / CS<br>COMP: LAW: FROM KITCHEN<br><br>DS / 7 DAYS / CS<br>COMP: |
| UDC | 02-04-1994 | 203469 | 306 - REFUSING WORK/PGM<br>ASSIGNMENT | EXTRA DUTY / 14 DAYS / CS<br>COMP: LAW: 14 DAYS EXTRA DUTY WITHIN THE UNIT<br><br>LOSE PRIV / 30 DAYS / CS<br>COMP: LAW: LOSS OF COMMISSARY FOR 30 DAYS |
| UDC | 02-04-1994 | 203620 | 306 - REFUSING WORK/PGM | LOSE PRIV / 30 DAYS / CS<br>COMP: LAW: LOSS OF COMMISSSARY FOR 30 DAYS |

E38

| LEW | DESIGNATED, AT ASSIGNED FACIL | 01-09-1992 | 08-12-1992 |
|-----|-------------------------------|------------|------------|

### CASE MANAGEMENT ASSIGNMENTS

| Facility | Assignment | Description | Start Date | Stop Date |
|----------|------------|-------------|------------|-----------|
| FLP | RPP NEEDS | RELEASE PREP PGM NEEDS | 06-11-1999 | CURRENT |
| FLP | V94 CDB913 | V94 CURR DRG TRAF BEFORE 91394 | 05-29-1996 | CURRENT |

### MEDICAL DUTY STATUS ASSIGNMENTS

| Facility | Assignment | Description | Start Date | Stop Date |
|----------|------------|-------------|------------|-----------|
| FLP | YES F/S | CLEARED FOR FOOD SERVICE | 06-02-2014 | CURRENT |
| FLP | REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 06-02-2014 | CURRENT |

E. 4()

## ACADEMIC  *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
|---|

PREVIOUS PROGRESS REPORT: 20121009

PREVIOUS PROGRESS REPORT: 20090726

PREVIOUS TEAM: 20090430

Recommend Computer VT and/or Building Trades, as well as participation in Parenting, RPP, ACE, or Apprenticeship

PREVIOUS TEAM: 20100401

PREVIOUS TEAM: 20100908

PREVIOUS TEAM: 20110204

Progress: Good

Recommendations:

Short Term Goal: Continue participating in recommended programs while in the Special Housing Unit.  Work on Self-study courses that will aid you upon release.

Long Term Goals: Participate in at least one ACE course every six months.

PREVIOUS TEAM: 20110629

Progress: Good

Recommendations:

Short Term Goals: Participate in an apprenticeship, vocational training course, or a computer class.

Long Term Goal:  Complete the Computer VT and/or Building Trades, as well as participation in Parenting, RPP, ACE, or Apprenticeship

PREVIOUS TEAM: 20111223

Progress: Good

Recommendations:

Short Term Goals: Participate in an apprenticeship, vocational training course, or a computer class.

Long Term Goal: Complete the Computer VT and/or Building Trades, as well as participation in Parenting, RPP, ACE, or Apprenticeship

PREVIOUS TEAM: 20120619

Progress: Good, Participates in programming

Recommendations:

Short Term Goals: Enroll in an Adult Continuing Education class in the next three months.

Long Term Goals:  Complete ACE class by 3-2013.

PREVIOUS TEAM: 20121214

Progress: Good, currently enrolled in two courses.

E-42

## VOCATIONAL/CAREER   *** Disregard Response Summary and utilize only the Progress & Goals section ***

> **① POST INCARCERATION EMPLOYMENT**
> ⊖ post-incarceration employment not secured
> ① other: Life Sentence
>
> ⊖ no release documents obtained to date

Ex E44

## VOCATIONAL/CAREER   *** Disregard Response Summary and utilize only the Progress & Goals section ***

PREVIOUS TEAM: 20121214

Currently housed in the Special Housing Unit. No current work ratings. Recommend when released from SHU secure a work assignment and receive good to outstanding work ratings.

PREVIOUS TEAM: 20130607

Progress:  Unable to track progress with no goals set at last team

Short Term Goal:  Enroll in an apprenticeship program such as HVAC, Electric, Teacher#s Aide or Cook by 06/13.

Long Term Goal:  Complete the apprenticeship program by 06/15.

PREVIOUS TEAM: 20131122

Progress:  Inmate has not enrolled in an apprenticeship program

Short Term Goal: Enroll in an apprenticeship program such as HVAC, Electric, Teacher#s Aide or Cook by 12/13.

Long Term Goal: Complete the apprenticeship program by 12/15.

PREVIOUS TEAM: 20140507

Progress:  Inmate has not enrolled in an apprenticehip program

Short Term Goal: Enroll in an apprenticeship program such as HVAC, Electric, Teacher#s Aide or Cook by 06/14.

Long Term Goal: Complete the apprenticeship program by 06/16.

PREVIOUS TEAM: 20140624

Obtain an Orderly Position when available, and thrive to receive outstanding evaluations through 11-2014.

PREVIOUS TEAM: 20141207

ATTAINED WORK DETAIL ASSIGNMENT IN RECREATION AND ERANING GOOD WORK REPORTS FROM DETAIL SUPERVISORS.  CONTINUE WITH CURRENT WORK DETAIL AND CONTINUE GOOD WORK EVALUATIONS THRU 6-2015

PREVIOUS TEAM: 20150520

Previous:  Working as a Orderly with good work evaluations.

PREVIOUS TEAM: 20151118

PREVIOUS TEAM: 20160511

## INTERPERSONAL       *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|---|---|
| (!) | **RELATIONSHIPS** |
| | ⊖ victim of neglect/abandonment as a child |
| | ⊖ lack of stable residence during childhood |
| | ⊖ residence in a high crime neighborhood during childhood |
| | ⊖ negative peer influences prior to incarceration |
| | ① criminal associates |
| | ① substance abuser associates |

E 46

## INTERPERSONAL   *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
| --- |

PREVIOUS PROGRESS REPORT: 20121009

PREVIOUS PROGRESS REPORT: 20090726

PREVIOUS TEAM: 20090430

No problems in this area.
| LEE | RP6 LITERACY IN THE FAMILY | 05-02-2007 06-28-2007 | P C P | 8 |
| LEW | PARENTING II | 10-26-1999 01-28-2000 | P C P | 24 |
| LEW | PARENTING CLASS | 05-17-1999 10-19-1999 | P C P | 24 |

PREVIOUS TEAM: 20100401

PREVIOUS TEAM: 20100908

PREVIOUS TEAM: 20110204

Progress: None

Recommendations:

Short Term Goals:  Maintain clear conduct through December 2011.

Long Term Goals:  Maintain clear institutional conduct and work with your Unit Team to develop future plans, such as participating in recommended programs.  Strive to get into the Challenge Program

PREVIOUS TEAM: 20110629

Progress: Average

Recommendations:

Short Term Goals: Maintain clear conduct through December 2011.

Long Term Goals: Maintain clear institutional conduct and work with your Unit Team to develop future plans, such as participating in recommended programs. Strive to get into the Challenge Program

PREVIOUS TEAM: 20111223

Progress: Average

Recommendations:

Short Term Goals: Maintain clear conduct through December 2012.

Long Term Goals: Maintain clear institutional conduct and work with your Unit Team to develop future plans, such as participating in recommended programs.

PREVIOUS TEAM: 20120619

Short/Long Term Goals: No current recommendation in this skill set required at this time. It is recommended that you focus your attention to other skill sets. Your unit team will review your current plan and reassess at sub-sequential teams.

PREVIOUS TEAM: 20121214

Progress: Has previously completed Parenting Program.

Short/Long Term Goals: No current recommendation in this skill set required at this time. It is recommended that you focus your attention to other skill sets.

E 48

# WELLNESS

**\*\*\* Disregard Response Summary and utilize only the Progress & Goals section \*\*\***

| Status | Response Summary |
|---|---|
| ❗ | **HEALTH PROMO/DISEASE PREVENT**<br>⊕ within acceptable weight range<br>ⓘ height 5 ft. 11 in.<br>ⓘ weight (lbs) 160<br>ⓘ BMI Score 22.3<br>ⓘ date calculated 03-02-2012<br><br>⊕ maintains physical fitness thru regular exercise;<br>ⓘ aerobic exercise<br><br>⊕ no evidence of behaviors associated with increased risk of infectious disease<br><br>⊕ does not use tobacco (cigarettes, cigars, and/or smokeless tobacco)<br><br>⊖ did not have a primary care provider or clinic (prior to incarceration)<br>⊖ does not have health insurance coverage upon release |
| ✔ | **DISEASE/ILLNESS MANAGEMENT**<br>⊕ complies with treatment recommendations and/or takes medications as prescribed, or none required<br><br>⊕ healthy - No current health concerns<br>⊕ no dental problems<br>⊕ no non-routine services/assistance devices needed |
| ✔ | **TRANSITIONAL PLAN**<br>⊕ does not require medication upon release from custody<br>⊕ does not require on-going treatment or follow-up after release from custody<br>ⓘ TB Clearance Complete - See Exit Summary<br>ⓘ RRC placement is not applicable |
| ⊘ | **GOVERNMENT ASSISTANCE**<br>ⓘ has not previously received Social Security assistance<br>ⓘ inmate indicates he/she may not be eligible for Social Security assistance after release<br><br>ⓘ has not served in the U.S. Armed Forces, U.S. Military Reserves, AND/OR U.S. National Guard<br>ⓘ spouse or a parent has not served in the U.S. Armed Forces, U.S. Military Reserves, AND/OR U.S. National Guard |

E50

## WELLNESS     *** Disregard Response Summary and utilize only the Progress & Goals section ***

PREVIOUS TEAM: 20131122

Progress:  Inmate did not complete Wellness class

Short Term Goal:  Enroll in the Wellness class through Recreation by 12/13.

Long Term Goal:  Complete the Wellness class by 12/14.

PREVIOUS TEAM: 20140507

Progress:  Inmate did not complete Wellness

Short Term Goal: Enroll in the Wellness class through Recreation by 06/14.

Long Term Goal: Complete the Wellness class by 06/15

PREVIOUS TEAM: 20140624

Make contact with the Health Services in order to achieve healthy choices food information through 11-2014.

PREVIOUS TEAM: 20141207

ENROLL IN A RECREATION WELLNESS PROGRAM OF CHOICE BY 1-2015 AND COMPLETE BY 06-2015 TO MAINTAIN HEALTH AND FITNESS

PREVIOUS TEAM: 20150520

Has no military service.

Progress: Has not enrolled in Recreation Wellness program of choice or completed such.

PREVIOUS TEAM: 20151118


PREVIOUS TEAM: 20160511

## MENTAL HEALTH     *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|--------|------------------|
| (!) | **SUBSTANCE ABUSE MANAGEMENT**<br>⊖ evidence of inappropriate use of alcohol, prescription medications and/or illegal drugs in the year prior to arrest<br>heroin: Weekly<br><br>ⓘ history of substance abuse treatment<br>⊖ unsuccessful substance abuse treatment:<br>correctional facility-based outpatient treatment: Complete<br>ⓘ not currently participating in substance abuse treatment |
| (✓) | **MENTAL ILLNESS MANAGEMENT**<br>⊕ no history of mental health diagnosis prior to incarceration<br><br>⊕ no mental health diagnosis during incarceration<br><br>⊕ no history of serious suicidal ideation or attempts |

# MENTAL HEALTH    *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
|---|

PREVIOUS PROGRESS REPORT: 20121009

PREVIOUS PROGRESS REPORT: 20090726

PREVIOUS TEAM: 20090430

No program/treatment recommendations at time of intake screening.

PREVIOUS TEAM: 20100401

PREVIOUS TEAM: 20100908

PREVIOUS TEAM: 20110204

PREVIOUS TEAM: 20110629

PREVIOUS TEAM: 20111223

PREVIOUS TEAM: 20120619

Short/Long Term Goals: No current recommendation in this skill set required at this time. It is recommended that you focus your attention to other skill sets. Your unit team will review your current plan and reassess at sub-sequential teams. Seek Psychology department if you have any mental health issues or concerns.

PREVIOUS TEAM: 20121214

Short/Long Term Goals: No current recommendation in this skill set required at this time. It is recommended that you focus your attention to other skill sets. Your unit team will review your current plan and reassess at sub-sequential teams. Seek Psychology department if you have any mental health issues or concerns.

PREVIOUS TEAM: 20130607

Progress:  Unable to track progress with no goals set at last team

Short Term Goal:  Submit a copout to Psychology to enroll in the 40 hour Non-residential Drug Program by 06/13.

Long Term Goal:  Complete the NRDAP by 06/15.

PREVIOUS TEAM: 20131122

Progress: INmate did not enroll in the NRDAP

Short Term Goal: Submit a copout to Psychology to enroll in the 40 hour Non-residential Drug Program by 12/13.

Long Term Goal: Complete the NRDAP by 12/15.

PREVIOUS TEAM: 20140507

Progress:  Inmate did not enroll in NRDAP

Short Term Goal: Submit a copout to Psychology to enroll in the 40 hour Non-residential Drug Program by 06/14.

Long Term Goal: Complete the NRDAP by 06/16.

P-54

# COGNITIVE          *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
|---|
| PREVIOUS PROGRESS REPORT: 20121009 |

PREVIOUS PROGRESS REPORT: 20121009

PREVIOUS PROGRESS REPORT: 20090726

PREVIOUS TEAM: 20090430

Do not incurr any 100 series incident reports.

PREVIOUS TEAM: 20100401

He has maintained clear conduct.  Continue to maintain clear conduct through 4-2011.

PREVIOUS TEAM: 20100908

He has received 1-300 and 3-100 series incident reports since last team.  Do not incur any 100 or 300-series incident reports through 9-2010.

PREVIOUS TEAM: 20110204

Progress: None

Recommendations:

Short Term Goals:  Submit Cop-Out to Challenge Specialists/Psychology Dept to establish eligibility for participation in Challenge Program

Long Term Goals:  Identify past criminal thinking that lead to behaviors which have resulted in arrests and negative consequences by September 2011.

PREVIOUS TEAM: 20110629

Progress: None

Recommendations:

Short Term Goals: Submit Cop-Out to Challenge Specialists/Psychology Dept to establish eligibility for participation in Challenge Program

Long Term Goals: Identify past criminal thinking that lead to behaviors which have resulted in arrests and negative consequences by September 2011

PREVIOUS TEAM: 20111223

Progress: Good

Recommendations:

Short Term Goals: Submit Cop-Out to Challenge Specialists/Psychology Dept to establish eligibility for participation in Challenge Program, completed

Long Term Goals: Identify past criminal thinking that lead to behaviors which have resulted in arrests and negative consequences by September 2011

PREVIOUS TEAM: 20120619

Progress: None

Recommendations:

Short Term Goals:  Demonstrate responsibility for your criminal behavior and the consequences that stem from your behavior, IE Prison sentence.  Participate in a Victim Awareness Program by 12-2012.

Long Term Goals:  Complete Victim Awareness Program by 12-2013.

B.56

# CHARACTER          *** Disregard Response Summary and utilize only the Progress & Goals section ***

PREVIOUS TEAM: 20121214

Progress: Good, currently on Challenge Program waiting list.

Recommendations:

Long Term Goal: Complete the Challenge Program by March 2015.

PREVIOUS TEAM: 20130607

Progress: Inmate is not on wait list for Challenge

Short Term Goal: Submit a copout to Counselor Daniel to enroll in the Personal Growth class by 06/13.

Long Term Goal: Complete the Personal Growth class by 06/14.

PREVIOUS TEAM: 20131122

Progress: Inmate diod not complete Personal Growth class

Short Term Goal: Submit a copout to Counselor Daniel to enroll in the Personal Growth class by 12/13.

Long Term Goal: Complete the Personal Growth class by 12/14.

PREVIOUS TEAM: 20140507

Progress: Inmate did not complete Personal Growth

Short Term Goal: Submit a copout to Counselor Daniel to enroll in the Personal Growth class by 06/14.

Long Term Goal: Complete the Personal Growth class by 06/15.

PREVIOUS TEAM: 20140624

Participate in Psychology and Religious Programming to promote development of positive character traits through 11-2014.

PREVIOUS TEAM: 20141207

CONTINUE TO PARTICIPATE IN RELIGIOUS ACTIVITIES/PROGRAMS THRU 06-2015

PREVIOUS TEAM: 20150520

Progress: Participated in Religious activities.

PREVIOUS TEAM: 20151118

IM interested in Threshold with CH Satterfield

PREVIOUS TEAM: 20160511

# LEISURE          *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|---|---|
| ✓ | **USE OF LEISURE TIME** |
| | ⊕ activities indicative of positive use of leisure time; |
| | ⊕ sports/exercise |
| | ⊕ reading |
| | ⊕ education (student) |
| | ⊕ library |
| | ⊕ self help groups (AA, NA, GA) |

F 6O

## LEISURE        *** Disregard Response Summary and utilize only the Progress & Goals section ***

Progress: Poor, returned to SHU due to I/R

Recommendations: Same

Short Term Goal: While in the Special Housing Unit, read at least three books per week.

Long Term Goals: Continue positive use of leisure time by participating in classes or activities sponsored by the Recreation Department complete at least three classess/activities by 12-2013.

PREVIOUS TEAM: 20130607

PREVIOUS TEAM: 20131122

PREVIOUS TEAM: 20140507

PREVIOUS TEAM: 20140624

Participate in group recreation when possible through 11-2014.

PREVIOUS TEAM: 20141207

ENROLL IN A RECREATION LEISURE PROGRAM (HOBBY CRAFT) BY 1-2015 AND COMPLETE BY 6-2015 TO MAKE EFFECTIVE/POSITIVE USE OF FREE TIME

PREVIOUS TEAM: 20150520

Progress: Has not enrolled in Recreation Leisure program.

PREVIOUS TEAM: 20151118

PREVIOUS TEAM: 20160511

## DAILY LIVING        *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|--------|------------------|
| (!) | **FINANCIAL MANAGEMENT**<br>⊖ no knowledge in maintaining checking account<br>⊖ no knowledge in maintaining savings account<br>⊕ knowledge in utilizing an ATM debit card<br>⊖ no knowledge in obtaining loans?<br>⊖ no positive credit history<br>⊖ did not live within financial means<br>⊖ does not pay monthly bills on time |
| (!) | **FOOD MANAGEMENT**<br>⊖ does not possess grocery shopping/consumer skills<br>⊕ makes good nutritional choices to maintain health<br>⊕ possesses basic food preparation skills<br>⊖ no knowledge in accessing community resources to obtain food |

E62

## DAILY LIVING          *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
|---|

PREVIOUS PROGRESS REPORT: 20121009

PREVIOUS PROGRESS REPORT: 20090726

This is Musa's tri-annual progress report.
PREVIOUS TEAM: 20090430

No issues in this area.
LEE     MICROSOFT OFFICE SUITE        04-09-2007 07-27-2007  P  C  C  120
ALP CODE  RPP - PERSONAL FINANCE/CONSUME 03-18-2005 03-18-2005  P  C  P   8
ALP CODE  RPP - EMPLOYMENT SKILLS       03-31-2005 03-31-2005  P  C  P   8
LEW     BUS ADMIN&SALES MGT/NEWPORT CO 01-22-2001 05-07-2001  P  C  P  40
LEW     REAL ESTATE/NEWPORT COLLEGE  09-14-1999 12-23-1999  P  C  P  40
LEW     MARKETING 104/NEWPORT COLLEGE 09-14-1999 12-23-1999  P  C  P  40
LEW     BUSINESS MGT - 260           05-11-1992 08-23-1992  P  C  P  45
LEW     MANAGEMENT                   05-11-1992 08-23-1992  P  C  P  45
LEW     ECONOMICS - 141              01-13-1992 04-24-1992  P  C  P  36

PREVIOUS TEAM: 20100401

Completed RP6 NON-RES/DRUG TREATMENT   12-02-2009 03-25-2010  P  C  P  21.

Complete two programs of choice from either Education, Psychology or Recreation Departments.

PREVIOUS TEAM: 20100908

He did not complete any programs.  Complete two programs of choice from either Education, Psychology or Recreation Departments.

PREVIOUS TEAM: 20110204


PREVIOUS TEAM: 20110629


PREVIOUS TEAM: 20111223


PREVIOUS TEAM: 20120619

Short/Long Term Goals: Establish stable communication with your Unit Team, Psychological Services, Family, Friends and outside resources by 12-2012.  Submit your Social Security Card, Birth Certificate, and your State Identification Card to your Unit Team to maintain original documentation in your Central File by 12-2013.

PREVIOUS TEAM: 20121214

Short/Long Term Goals: Establish stable communication with your Unit Team, Psychological Services, Family, Friends and outside resources by 12-2012. Submit your Social Security Card, Birth Certificate, and your State Identification Card to your Unit Team to maintain original documentation in your Central File by 12-2013.

PREVIOUS TEAM: 20130607

Progress:  Inmate has not received his birth certificate

Short Term Goal:  Enroll in a Financial Management class through Education by 06/13.

Long Term Goal:  Complete a Financial Management class by 06/14.

PREVIOUS TEAM: 20131122 .

## INMATE SKILLS STATUS

| Status | Initial Assessment 04-30-2009 | Previous Assessment 05-11-2016 | Current Assessment 05-20-2016 |
|---|---|---|---|
| ⊙ Attention Required | 19.4% | 38.3% | 38.3% |
| ⊡ Mitigating Issues | 0% | 0% | 0% |
| ? Unanswered | 26.7% | 2.8% | 2.8% |
| ✓ Satisfactory | 51.7% | 55.6% | 55.6% |
| ⊘ Not Applicable | 2.2% | 3.3% | 3.3% |

| Skill Area | Attention Required ⊙ | Mitigating Issues ⊡ | Unanswered ? | Satisfactory ✓ | Not Applicable ⊘ |
|---|---|---|---|---|---|
| Academic | 0% | 0% | 0% | 100% | 0% |
| Vocational/Career | 75% | 0% | 25% | 0% | 0% |
| Interpersonal | 25% | 0% | 0% | 65% | 10% |
| Wellness | 5% | 0% | 0% | 75% | 20% |
| Mental Health | 25% | 0% | 0% | 75% | 0% |
| Cognitive | 50% | 0% | 0% | 50% | 0% |
| Character | 80% | 0% | 0% | 20% | 0% |
| Leisure | 0% | 0% | 0% | 100% | 0% |
| Daily Living | 85% | 0% | 0% | 15% | 0% |

Captain M. Earwin
U.S.P. Florence
P.O. Box 7500
Florence, CO. 81226

Office of the Pardon Attorney
145 N Street, N.E.
Room 5E, 503
Washington, D.C. 20530

RE: Jawad Amir Musa, Reg. No. 28075-037

To Whom It May Concern:

    I am the Captain of U.S.P. Florence and I am writing in support of Jawad's application for clemency. I know Jawad to be a mature, middle aged man who has lived according to the prison rules for a long time. He is a positive force here, mentoring younger prisoners, and participating in many educational and vocational programs. He spends most of his time in the law library. I am confident that if granted clemency Jawad would quickly become a productive member of society. He has served a sufficiently long sentence and deserves the chance to re-unite with his family.

Yours,

Captain M. Earwin

Ex F.68