**Debevoise
& Plimpton**

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

John Gleeson
Partner
jgleeson@debevoise.com
Tel   +1 212 909 7281
Fax   +1 212 909 6836

May 26, 2017

Joon H. Kim
Acting United States Attorney
U.S. Attorney's Office for the Southern District of New York
1 St. Andrew's Place
New York, NY   10007

Dear Mr. Kim,

*U.S. v. Jawad Musa (f/k/a Leroy Moses), 90 CR. 863 (RJS)*

I write about Jawad Musa, also known as Leroy Moses, who was sentenced by Judge Patterson in 1991 to a mandatory term of life in prison following Musa's conviction for a non-violent, low-level drug offense. The ultraharsh mandatory sentence was imposed as a result of the filing of a prior felony information, which itself was filed for the simple reason that Musa exercised his right to trial by jury. As of May 30, Musa will have served twenty-six years of his term.

Quite a few United States Attorneys and United States District Judges have acted to remedy the grossly unjust prison terms – like Musa's – that mandatory sentencing provisions produced in years past. I write to respectfully ask you to join them. Specifically, I ask you to consider agreeing to an order vacating Musa's sentence and prior felony information, so that Judge Sullivan, if he deems it appropriate, can resentence Musa to a more just term of imprisonment.

Kenneth Wainstein, the Assistant U.S. Attorney who prosecuted Musa and went on to serve for 19 years in the Justice Department, fully supports this application. If Judge Patterson were still with us, so would he, as he *sua sponte* wrote in 2010 that Musa deserved clemency.[1] Unfortunately, Mr. Musa's recent clemency application was not granted.

Set forth below are the reasons for my request. Once you have had an opportunity to review and consider them, I and my colleague, Emily Johnson, would appreciate an opportunity to speak to you personally in support of my request. If in your judgment it would be useful to seek a conference with Judge Sullivan, I would welcome that as well.

---

[1]    *United States v. Musa*, No. 90-CR-863, Order, ECF No. 259 (S.D.N.Y. July 2, 2010).

*A. Offense of Conviction*

Musa and five co-defendants were charged in a one-count indictment with conspiring to possess with the intent to distribute more than one kilogram of heroin. The conduct underlying the offense spanned just two days. On November 26, 1990, David Charles Wray discussed the purchase of heroin with a confidential informant ("CI"), and agreed to meet at 42nd Street and 11th Avenue in Manhattan the next day, when Wray would pay $20,000 to the CI as a down payment. After reaching this agreement, Wray returned to Baltimore, Maryland to raise the money, where he approached Sean Brockington, with whom Wray had previously been arrested. Brockington then reached out to Musa for funds to facilitate the purchase.

The next day, Wray, Brockington, Musa, and three others travelled from Baltimore to Manhattan, where Wray and Norman Ransom met the CI at the designated corner. Ransom accompanied the CI to a parked car, where Carmelita Francis Grant was sitting. Grant stepped out of the car and showed the CI the cash in her purse, which Ransom indicated was approximately $20,000. The CI gave a prearranged signal, and Wray, Ransom, and Grant were placed under arrest. At that point, a black Mercedes-Benz with Maryland license plates, driven by Musa and carrying Brockington and Angela Richard, pulled out from a parking place on 42nd Street and turned down 11th Avenue. Agents at the scene, assuming that the Mercedes was fleeing the arrest, gave chase but were unable to catch the Mercedes. Musa, Brockington, and Richard were later apprehended in Baltimore.

*B. Procedural History of the Case*

While his co-defendants all pled guilty, Musa chose to go to trial. It was a costly choice. As AUSA Wainstein writes in the attached letter, Musa would not have faced the mandatory life sentence had he pled guilty. He was convicted by a jury on July 18, 1991, and sentenced by Judge Patterson to life imprisonment on December 13, 1991. The prior felony information that turned Musa's ten-year mandatory minimum into mandatory life listed two non-violent drug convictions. [2]

---

[2] In 1984, at age 19, Musa, his brother, and his mother were arrested in the family home after a police raid found cocaine. Musa received a five-year sentence for possession with intent to distribute in Baltimore District Court and served three years before being paroled. In 1987, when Musa was 22, the police found a small amount of cocaine residue and a gun in the trunk of his car. Later in the year he was arrested again for possession of cocaine. The cases were consolidated, and Musa received a four-year sentence for possession of drugs and a firearm in Baltimore City Circuit Court. When Musa was sentenced in 1991, these two prior offenses also qualified Musa as a career offender under Section 4B1.1 of the U.S. Sentencing Guidelines.

At Musa's sentencing in 1991, Judge Patterson voiced frustration at the mandatory life sentence:

> Well, there is not much that I can do . . . It is a mandatory sentence under the law, and the judge's discretion has been taken away from him. . . . I suppose there are questions about whether [Congress] [has] the necessary experience to make those decisions, and, nevertheless, they do make them. They have made them, and I have to sentence you accordingly.

Judge Patterson concluded the proceeding by telling Musa as follows: "I know, we all make mistakes, especially when we're young. Maybe something will come along. Don't give up hope. Do the best you can. Put it behind you the best you can. Maybe something will come along."[3]

Nothing has come along for Musa. There have been some retroactive reductions to drug trafficking sentences, but not for those subjected to mandatory minimums. The clemency process afforded relief to many, but the number of eligible applicants was so great that large numbers of nonviolent, low-level drug offenders who were essentially indistinguishable from the grantees were disappointed. Musa was among them.

As mentioned, all of Musa's co-defendants pleaded guilty, some pursuant to cooperation agreements, and they received significantly lighter sentences. Only two were sentenced to prison; Brockington (five years) and Ransom (fifteen years and ten months) were both been released from prison long ago. Grant received time-served, and Wray and Richardson received probation.

Musa was convicted and sentenced at a time when the government routinely used § 851 enhancements to pressure defendants into pleading guilty and to punish those who refused to do so.[4] Thankfully, those days are gone. Indeed, there is good reason to

---

[3]  Musa's conviction was affirmed on appeal on April 13, 1994. *United States v. Wray*, 23 F.3d 396 (2d Cir. 1994). The Supreme Court of the United States denied review on October 3, 1994. *Moses v. United States*, 513 U.S. 886 (1994). On May 8, 1997, Musa filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, which was denied on May 20, 1998. *United States v. Musa*, No. 90-CR-863, Order, ECF No. 175 (S.D.N.Y. May 20, 1998). Musa filed a successive § 2255 petition, which was denied on March 7, 2002. *United States v. Musa*, No. 90-CR-863, Order, ECF No. 190 (S.D.N.Y. Mar. 7, 2002). Musa has also filed a number of other petitions for post-conviction relief, including a motion for a writ of *audita querela*, which was denied on January 27, 2009, *United States v. Musa*, No. 90-CR-863, Opinion & Order, ECF No. 246 (S.D.N.Y. Jan. 27, 2009), and a pending motion to reopen his § 2255 petition, *United States v. Musa*, No. 90-CR-863, Omnibus Motion, ECF No. 276 (S.D.N.Y. Feb. 10, 2017).

[4]  *See e.g.*, *United States v. Kupa*, 976 F. Supp. 2d 417 (E.D.N.Y. 2013) (criticizing the use of recidivism-based enhancements of the drug offense mandatory minimum sentences to coerce guilty

believe that Musa would not even face a mandatory minimum today, let alone an § 851 enhancement of that minimum merely for going to trial. He did not have an aggravated role in his offense, and he has no ties to any drug trafficking organizations, gangs, or cartels. His loose-knit group of co-defendants was hastily assembled in one night, and Wray and Brockington put it together. There was no use or threat of violence in connection with the offense. Musa's criminal history stems from his drug addiction, and the majority of his prior convictions are for simple possession offenses. He has no prior history of violent conduct or serious offenses.

C.     *The Relief We Seek and the Basis for It*

We ask you to agree to an order vacating Musa's sentence and the prior felony information that triggered his mandatory minimum life sentence. If you do, we will ask Judge Sullivan to resentence Musa to a sentence that is more just. Musa – a non-violent, low-level offender– has already served far more time than last year's average federal sentence for murder.[5]

The court will have jurisdiction to grant the relief we seek if you agree to it. As mentioned above, quite a few United States Attorneys have done what we ask of you, and quite a few sentencing judges have acted on their decisions to correct miscarriages of justice. The former Attorney General of the United States herself appears to have been the first to agree to it when she was the United States Attorney in the Eastern District of New York. *United States v. Holloway* involved a defendant who was found guilty in 1995 of three carjackings and three 18 U.S.C. § 924(c) counts.[6] He refused a plea offer that would have resulted in the dismissal of two of the § 924(c) counts and was sentenced after trial to 57 years and 7 months, with the stacked § 924(c) charges accounting for 45 years of that sentence. In 2012, the sentencing judge[7] recognized that although there were good reasons to revisit Holloway's unjust sentence, there were no legal avenues for vacating it. So he asked the United States Attorney to consider exercising her discretion to agree to an order vacating two or more of Holloway's 18 U.S.C. § 924(c) convictions."[8] Ms. Lynch initially declined the court's invitation on the ground that

pleas and to punish those who refuse to plead guilty) (full disclosure: I was the author of *Kupa*); Human Rights Watch Report, An Offer You Can't Refuse, How US Federal Prosecutors Force Drug Defendants to Plead Guilty (Dec. 5, 2013), https://www.hrw.org/report/2013/12/05/offer-you-cant-refuse/how-us-federal-prosecutors-force-drug-defendants-plead.

[5]     The mean and median federal sentences for murder in FY 2016 were 241 and 210 months, respectively. *See* United States Sentencing Commission, Interactive Sourcebook of Federal Sentencing Statistics, Fiscal Year 2016, Table 13.

[6]     *Holloway v. United States*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014).

[7]     Full disclosure: I was the sentencing judge in *Holloway*. I left the bench in March 2016.

[8]     *Holloway v. United States*, No. 01-CV-1017, Order, ECF No. 36 (E.D.N.Y. Feb. 25, 2013).

Holloway could seek clemency. After the court pointed out to her that DOJ's own criteria for a successful clemency application would almost certainly disqualify Holloway, Ms. Lynch reconsidered, withdrew her objection, and agreed to vacate two of Holloway's § 924(c) counts.[9]

*Holloway* stands for a simple proposition: even when there is no defect in the conviction, a United States Attorney "can do justice by the simple act of going back into court and agreeing that justice should be done."[10] The Department of Justice "has the power to walk into courtrooms and ask judges to remedy injustices" in the rare and unique circumstances when it chooses to exercise this authority.[11] *Holloway* is no outlier. Numerous other United States Attorneys have agreed to such relief, and numerous other judges have granted it based on that agreement. The contexts include stacked § 924(c) sentences as in *Holloway* but also the extremely harsh sentences mandated by the drug trafficking statutes, as in Musa's case.

Thus, for example, Judge Jan DuBois relied on *Holloway* in asking the United States Attorney in Philadelphia to agree to withdraw the prior felony information that mandated a life sentence for a low-level street dealer in *United States v. Trader*.[12] In his opinion he cataloged some other cases in which "[p]rosecutors have exercised this power to do justice."[13] In comparison Trader's co-defendants who had already been released from prison, Judge DuBois called Trader's life sentence "disproportionate" and questioned how it was "just" or how it advanced the goals of 18 U.S.C. §3553(a), requiring a sentence that is "sufficient, but not greater than necessary."[14]

Judge Timothy C. Batten, Sr. in the Northern District of Georgia granted similar relief to Olivar Martinez-Blanco, who – like Musa – was a non-violent offender with only a small role in a drug conspiracy. Mr. Martinez-Blanco was acquitted of two of four counts and trial, but Judge Batten nevertheless had to impose a mandatory minimum of

---

[9]   68 F. Supp. 3d at 315.

[10]   *Id.* at 311.

[11]   *Id.* at 316.

[12]   No. 04-680-06, 2015 WL 4941820, at *16 (E.D. Pa. Aug. 19, 2015).

[13]   *Id.* at *16 n. 12. In *United States v. Williams*, No. 12-cr-8, a sentencing judge in the District of Montana, with the Government's consent, dismissed three of four § 924(c) counts of which the defendant had been convicted at trial. In the same district, in *United States v. Hungerford*, No. 03-cr-74, the Government moved to dismiss all but two counts of conviction, including seven § 924(c) counts

[14]   *Id.* at *15.

life imprisonment because the Government had filed prior felony information.[15] At sentencing, Judge Batten expressed frustration with the required sentence:

> I do not believe this is a fair and just sentence. I do not believe it takes into consideration the nature and circumstances of the offense and the history and characteristics of the defendant or for the most part any of the other six characteristics in [18 U.S.C. § 3553(A)(2)]. . . . I think the record should reflect that the defendant should be severely punished . . . and, therefore, I would be comfortable sentencing this man to a very significant sentence, one that I think most disinterested observers would characterize as severe, most defense attorneys would probably think was unreasonable. . . . However, I can't characterize this sentence as anything but savage, and I think it is a – I think it's savage, cruel and unusual.[16]

In 2014, in exchange for dismissal of Mr. Martinez-Blanco's pending motion pursuant to 28 U.S.C. § 2255, the Government requested that the Court issue an order reducing the sentence to 25 years,[17] which Judge Batten granted.[18]

In May 2015, at the request of *pro bono* counsel, the United States Attorney in the Eastern District of Oklahoma relied expressly on *Holloway* in agreeing to vacate a life sentence imposed pursuant to 21 U.S.C. § 848(b). Luis Rivera had been the central figure in a cocaine smuggling operation that used private airplanes to smuggle hundreds of kilograms of cocaine from Colombia to Oklahoma. Thirty years into his life sentence, the United States Attorney granted what he called a "*Holloway* request" by agreeing to an order vacating the conviction on the § 848(b) count and to sentences amounting to time served on the remaining counts. "Such action is not without precedence," the United States Attorney informed the court, in a submission quoting from *Holloway*.[19] On

---

[15] *United States v. Martinez-Blanco*, No. 06-CR-396, Transcript of Sentencing Hearing at 3, 12, ECF No. 133 (N.D. Ga. Dec. 3, 2008).

[16] *Id.* at 11-12.

[17] *United States v. Martinez-Blanco*, No. 06-CR-396, Joint Motion to Reduce Sentence and Dismiss § 2255 Motion at ¶¶ 3(b), 3(c), ECF No. 220 (N.D. Ga. Mar. 26, 2014).

[18] *United States v. Martinez-Blanco*, No. 06-CR-396, Order Amending the Judgment and Commitment, ECF No. 224 (N.D. Ga. Mar. 31, 2014).

[19] *United States v. Rivera*, Nos. 83-00096-01-CR & 83-00138-02-CR, Government's Response to Defendant's Motion to Vacate Count 7 in No. 83-00096-01-CR (E.D. Okla. Sept. 15, 2015). , Order of Sept. 15, 2015.

September 15, 2015, Judge Frank Seay, who had imposed the life sentence on Rivera 30 years earlier, granted the relief requested, and Rivera was immediately released.[20]

Like Judge DuBois in Philadelphia, Judge Sullivan himself – the district judge currently assigned to this case – endorsed *Holloway* in asking your predecessor to agree to vacate a § 924(c) conviction prior to sentencing.[21] Randy Washington was charged with a variety of robbery, narcotics, and firearm crimes. He rejected the Government's ten-year plea offer, was found guilty on all counts at trial, and faced a mandatory minimum sentence of 52 years in prison. Judge Sullivan rejected Washington's legal challenges to his convictions, but in a section of his written opinion called "Final Thoughts," he addressed the fundamental injustice of the mandatory sentence. Specifically, he wrote that "a serious question posed by the facts of this case – and perhaps the elephant in the room – is the fairness of the fifty-two year mandatory minimum sentence that Defendant is facing because he opted to forego a ten year plea offer and go to trial."[22] Judge Sullivan added that "[n]ot all that is constitutional is just and it is difficult to see how a forty-two year trial penalty for a twenty-seven-year-old defendant who is not alleged to have fired a weapon, much less killed anyone, could be 'the right thing' – no matter how that vague term is defined."[23] "Here the Court is left with the definite impression that a fifty-two-year sentence is unnecessary and unjust. Nevertheless in this regard, the Court is powerless to do more than admonish, and can merely ask that the prosecutors involved in this case – at all levels – consider whether this is a sentence and an exercise of prosecutorial discretion worthy of the public's trust and confidence."[24] Mr. Bharara listened, and, on December 18, 2014, he moved to dismiss one of the § 924(c) counts.[25]

The cases above are illustrative of a significant number of cases in which United States Attorneys have acted to empower courts to remedy unjust mandatory sentences. I have spoken on this and related topics many times, both while a judge and since leaving the bench in March 2016. Prosecutors, defense counsel, judges, and defendants

---

[20] *United States v. Rivera*, Nos. 83-00096-01-CR & 83-00138-02-CR, Order (E.D. Okla. Sept. 15, 2015) (granting defendant's motion to vacate and resentence after the Government agreed to support the motion).

[21] *See United States v. Washington*, No. 11-cr-605 (RJS), Order, ECF No. 109 (S.D.N.Y. July 31, 2014).

[22] *Id.* at 12.

[23] *Id.*

[24] *Id.*

[25] *United States v. Washington*, No. 11-cr-605 (RJS), Nolle Prosequi, ECF No. 129 (S.D.N.Y. Dec. 18, 2014).

themselves have described for me many more cases in which *Holloway*-type relief has been granted without opinions being written that memorialize the basis for the relief.

### D.    *Musa is Deserving of Mercy*

Musa was born in Baltimore, Maryland and raised in the Lexington Terrace Projects, one of the worst neighborhoods in West Baltimore, known for rampant drug use, extreme poverty, and violence. Musa's mother worked full-time at a clothing factory to support Musa and his younger brother. Musa's father was not involved in the family and contributed no financial support. Musa began using marijuana daily at age eleven or twelve. He also witnessed acts of extreme violence at a very young age, as shootings in his neighborhood were a daily occurrence. The first death he recalls as a child was a close friend dying from a gunshot wound at approximately age eleven. A few years later, another friend died of a heroin overdose, and Musa remembers a group of teens disposing of her body in a dumpster. Overwhelmed by the violence and drugs in the Terraces, Musa dropped out of high school at sixteen and fell into drug addiction. He started using heroin daily, and occasionally cocaine, beginning around age thirteen, and his criminal conduct – nearly all of which relates to drugs – stemmed from his addiction.

Musa was sentenced at age twenty-seven, and he has now served nearly half of his life in prison on this case. His drug addiction continued during his initial years of incarceration, and his prison infractions primarily relate to drugs. Musa ultimately overcame his addiction in 2012 through drug treatment and Narcotics Anonymous. He has now been sober for over four years. He has only had two minor disciplinary infractions during that period.[26] While incarcerated, Musa has worked hard to develop his skills and abilities. He has completed over 1500 hours of educational courses, become an impressive legal advocate for himself, and served as a mentor to younger inmates. Captain M. Earwin at USP Florence, where Musa is housed, supported Musa's petition for clemency, describing him as a "mature, middle aged man who has lived according to the prison rules for a long time." Captain Earwin called Musa a "positive force" in the facility, stated that he was confident that Musa would quickly become a productive member of society if released, and described the time Musa has served to date as "sufficiently long." A copy of Captain Earwin's letter is also attached.

Musa is no longer the drug-addicted young man who broke the law in furtherance of his addiction. He is a mature and devoutly religious man who seeks out educational opportunities and mentors young inmates. Despite a sentence that offers no hope of release, he has overcome his addiction and now has a positive and forward-looking attitude. In short, Musa's rehabilitation is complete, and he is prepared to reenter society.

---

[26]    The two infractions were written on the same day (July 23, 2015) by a new corrections officer. One was for failure to leave the law library on time, and the other related to Musa's advertisements for free typing work.

*E.*     *Release Plan*

If released, Musa has strong family and community support to help him achieve his goal of becoming a productive citizen. His elderly mother, his brother's family, and Musa's daughter will welcome him home to Baltimore. While incarcerated, Musa has maintained particularly close contact with his mother and brother Kevin. In Baltimore, Musa will reside with his mother, and Kevin will assist in helping Musa secure employment at Baltimore's Department of Public Works, where Kevin has worked for over fifteen years. Musa's completion of a 442-hour course in building trades, and his knowledge of construction and repair, have prepared him for a position there. In the event he is not able to obtain employment at the Department of Public Works, Musa has also been accepted by 2AM Bakery, a program providing culinary training and an industry-recognized certificate in food preparation to formerly incarcerated individuals.

Musa also has the support of several community organizations that support reentry. Musa has already been accepted and will enroll in Penn North Recovery Center, which will provide substance abuse treatment and counseling. Penn North's eighteen-month treatment program also provides wrap-around services, including mental health evaluation and treatment, employment development services, educational offerings, and life skills training. At Penn North, Musa will be required to submit to random drug tests to verify his substance-free status and attend fourteen 12-Step meetings, as well as attend and participate in other services tailored to his recovery as determined by Penn North's substance abuse counselors, social workers, and mental health professionals. Musa will also work with Power Inside, a Baltimore program providing trauma support services and peer mentoring to aid reintegration.

If released, Musa has secured the emotional and social support he needs to effectively transition to a law-abiding life. With his family and community by his side, Musa can take advantage of the opportunities he missed became of his criminal conduct. He has taken responsibility for his past and has worked as hard as he can with no hope of release to better himself through education, sobriety, and religious devotion. If given the opportunity for another chance, Musa will reintegrate as a positive citizen who contributes to his community.

*F.*     *Conclusion*

When Judge Patterson was forced to impose on Musa a sentence no reasonable person could defend, he told Musa not to give up hope because maybe something would come along. More than a quarter century later, Musa still has that hope. He will turn 53 years old this year. All the relevant social science tells us that he has almost certainly

"aged out" of crime,[27] and, more specifically, he has made something of himself while incarcerated. You have the wisdom, the compassion, and the authority to empower Judge Sullivan to correct an egregious injustice. Your decision on this application can be the "something" that finally comes along to save Musa from having to die in prison because he committed a nonviolent, low-level drug trafficking crime all those years ago and had the temerity to exercise his right to a jury trial.

Ms. Johnson and I request an opportunity to speak to you personally in support of our request. If in your judgment it would be useful to seek a conference with Judge Sullivan, we would welcome that as well.

Sincerely,

John Gleeson

cc.     Hon. Richard J. Sullivan

---

[27]  *See, e.g.,* BJ Casey, et al., "How Should Justice Policy Treat Young Offenders?," MacArthur Foundation Research Network on Law and Neuroscience (February 2017), at 2, *available at* *https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2881607.*