TO: WARDEN/EXECUTIVE STAFF
FROM: JAWAD AMIR MUSA (AKA LEROY MOSES)
REG NO: 28075-037
WKR: UNIT ORDERLY C/B
INST: U.S.P. FLORENCE-HIGH
ADDRESS: P.O. BOX 7000
STATE/ZIP: FLORENCE, CO. 81226
DATE: APRIL 12, 2019

Case NO. 90 Cr. 863-01 (RPP)

I. REQUEST FOR COMPASSIONATE RELEASE/REDUCTION IN SENTENCE (RIS)
PURSUANT TO 18 U.S.C. §3582(C)(1)(A)

A. INITIATION OF REQUEST - EXTRAORDINARY OR COMPELLING CIRCUMSTANCES

A request for a motion under 18 U.S.C. § 4205(g) or §3582(c)(1)(A) shall
be submitted to the Warden. Ordinarily, the request shall be in writing, and
submitted by the inmate. An inmate may initiate a request for consideration
under 18 U.S.C. §4205(g) or §3582(c)(1)(A) only when there are particularly
extraordinary or compelling circumstances which could not reasonably have been
foreseen by the court at the time of sentencing. The inmate's request shall
at a minimum contain the following information:

(1) The extraordinary or compelling circumstances that the inmate believes
warrant consideration.

(2) Proposed release plans, including where the inmate will reside, how the
inmate will support himself/herself, and if the basis for the request involves the
inmate's health, information on where the inmate will receive medical treatment,
and how the inmate will pay for such treatment.

In deciding whether to file a motion under either 18 U.S.C. §4205(g) or
18 U.S.C. §3582(c)(1)(A), the Bureau of Prison (BOP) should consider whether the
inmate's release would pose a danger to the safety of any other person or the
community.

REASONS FOR GRANTING INMATE'S REQUEST

B. INMATE JAWAD MUSA MEETS THE TEST SET FORTH FOR A COMPASSIONATE
RELEASE/REDUCTION IN HIS SENTENCE (RIS).

In 2016, this Inmate submitted a petition for Executive Clemency requesting
a reduction of sentence. However, despite this Inmate meeting all the criterios

for executive clemency as set forth by [then Deputy Attorney General] James Cole,
his petition was denied by President Obama in Janaury 2017. In April 2017, this
inmate filed an Omnibus Motion requesting a reduction of sentence pursuant to
United States v. Holloway, 68 F.Supp.2d 310 (E.D.N.Y. 2014). In April 2017,
Attorney John Gleeson — Ex-Federal Judge — entered his appearance to represent
this Inmate. Attorney Gleeson submitted a letter to the United States Attorney
Office of the Southern District of New York (SDNY) requesting they consider agree-
ing to an order vacating this Inmate sentence and prior felony Information so that
the sentencing judge (then-District Judge Richard Sullivan) could resentence this
Inmate to a more just term of imprisonment. On November 10, 2017, the SDNY submitted
a letter to the court in response to this Inmate motion stating, while being
"sympathic to the spirit of Petitioner's request" they could not agree to an order
to reduce this inmate sentence because there were no legal grounds that justify
granting the relief this inmate sought.

On December 21, 2018, the President signed into law the FIRST STEP ACT of
2018. Including in this bill was an amendment to the Compassionate Release/Reduction
of Sentence, which reiterate the Bureau of Prisons (BOP) authority to motion the
sentencing court to reduce inmates sentence for "extraordinary or compelling" reasons
and gave sentencing court the authority to reduce sentence under 18 U.S.C. 4205 or
§3582(c)(1)(A).

This Inmate who was sentenced by the Late Honorable Robert P. Patterson, in
1991 to a mandatory term of life in prison following Inmate Musa's conviction for a
non-violent, low-level offense. The ultraharsh mandatory sentence was imposed as a
result of the filing of a prior felony information, which itself was filed for the
simple reason that Inmate Musa exercised his right to trial by jury. As of May 30,
2108, this Inmate has served twenty-seven years (27yrs) of his term.

Quite a few Department of Justice employees have acted to remedy the grossly
unjust prison terms — Like Inmate Musa's — that mandatory sentencing provisions
produced in years past. I write to respectfully ask you to join them. Specifically,
I ask you to motion the court to reduce this Inmate sentence based on extraordinary
and compelling reasons that could not reasonably have been forseen by the Court at
the time of sentencing.

Kenneth Wainstein, the Assistant U.S. Attorney who prosecuted Inmate Musa and
went on to serve 19 years in the Justice Department, fully supports this Inmate Request.

See Attached Exhibit "A" (Letter from Kenneth Wainstein). If Judge Patterson were still with us, so would he, as he sua sponte wrote in 2010 that Inmate Musa deserved clemency. See United States v. Musa, No. 90 Cr-863, Order, ECF No. 259 (SDNY July 2, 2010). Unfortunately, Inmate Musa's recent clemency application was not granted.

Set forth below are the reasons for this Inmate's request. Once you have had an opportunity to review and consider them, I would appreciate if my Attorney and I was given an opportunity to speak with you via a conference call in support of my request.

## C. INMATE MUSA'S SENTENCING JUDGE WAS CONSTRAINED BY A MANDATORY MINIMUM WHICH NO LONGER APPLY AND INMATE MUSA WOULD ALMOST CERTAINLY RECEIVE A SHORTER SENTENCE TODAY.

I. Offense of Conviction

Musa and five co-defendants were charged in a one-count indictment with conspiring to possess with the intent to distribute more than one kilogram of heroin. The conduct underlying the offense spanned just two days. On November 26, 1990, David Charles Wray discussed the purchase of heroin with a confidential informant ("CI"), and agreed to meet at 42nd Street and 11th Avenue in Manhattan the next day, when Wray would pay $20,000 to the CI as a down payment. After reaching this agreement, Wray return to Baltimore, Maryland to raise the money, where he approached Sean Brockington, with whom Wray had previously been arrested. Brockington then reached out to Inmate Musa for funds to facilitate the purchase.

The next day, Wray, Brockington, Musa, and three others travelled from Baltimore to Manhattan, where Wray and Norman Ransom met the CI at the designated corner. Ransom accompanied the CI to a parked car, where Carmelita Francis Grant was sitting. Grant stepped out of the car and showed the CI the cash in her purse, which Ransom indicated was approximately $20,000. The CI gave a prearranged signal, and Wray, Ransom, and Grant were placed under arrest. At that point, a black Mercedes-Benz with Maryland license plates, driven by Inmate Musa and carrying Brockington and Angela Richardson, pulled out from a parking place on 42nd Street and turned down 11th Avenue. Agents at the scene, assuming that the Mercedes was fleeing the arrest, gave chase but were unable to catch the Mercedes. Musa, Brockington, and Richard were later apprehended in Baltimore.

II. Procedural History of Case

While his co-defendants all pled guilty, Inmate Musa chose to go to trial. It was a costly choice. As AUSA Wainstein writes in the attached letter, Inmate Musa would not have faced the mandatory life sentence had he pled guilty. He was convicted by a jury on July 18, 1991, and sentenced by Judge Patterson to life imprisonment on December 13, 1991. The prior felony information that turned Inmate Musa's ten-year mandatory minimum into mandatory life listed two non-violent drug convictions. See Presentence Investigation Report ("PSR").

At Musa's sentencing in 1991, Judge Patterson voiced frustration at the mandatory life sentence:

> "Well, there is not much that I can do... It is mandatory
> sentence under the law, and the judge's discretion has
> been taken away from him... I suppose there are questions
> about whether [Congress] [has] the necessary experience
> to make those decisions, and, nevertheless, they do make
> them. They have made them, and I have to sentence you
> accordingly."

Judge Patterson concluded the proceeding by telling Musa as follows: "I know,
we all make mistakes, especially when we're young. Maybe something will come along.
Don't give up hope. Do the best you can. Put it behind you the best you can. Maybe
something will come along."

Nothing has come along for Inmate Musa. There have been some retroactive reduc-
tions to drug trafficking sentences, but not for those subjected to mandatory minimums.
The clemency process afforded relief to many, but the number of eligible applicants
was so great that large numbers of nonviolent, low-level drug offenders who were
essentially indistinguishable from the grantees were disappointed. Inmate Musa was
among them.

As mentioned, all of Musa's co-defendants pleaded guilty, some pursuant to
cooperation agreements, and they received significantly lighter sentences. Only two
were sentenced to prison; Brockington (five years) and Ransom (fifteen years and
ten months) have both been releases from prison long ago. Grant received time-served,
and Wray and Richardson received probation.

This Inmate was convicted and sentenced at a time when the government routinely
used §851 enhancements to pressure defendants into pleading and to punish those who
refused to do so. Thankfully, those days are gone. Indeed, there is good reason to
believe that Inmate Musa would not even face a mandatory minimum today, let alone an
§851 enhancement of that minimum merely for going to trial . He did not have an aggra-
vated role in his offense, and he has no ties to any drug trafficking organizations,
gangs or cartels. His loose-knit group of co-defendants was hastily assembled in one
night, and Wray and Brockington put it together. There was no use or threat of violence
in connection with the offense.  Musa's criminal history stems from his drug addiction,
and the majority of his prior convictions are for simple possession offenses. Inmate
Musa has no prior history of violent conduct or serious offenses.

III. The Relief Inmate Musa Seek and the Basis For It

Inmate Musa respectfully ask you to motion the court, pursuant to 18 U.S.C. §3582
(c)(1)(A), to reduce his sentence based on extraordinary and compelling circumstances
which could not reasonably have been foreseen by the court at the time of sentencing.
If you do, my lawyer and I will ask the sentencing judge to resentence Me to a sentence
that is more just. Inmate Musa — a non-violent, low-level offender — has already
served far more time than last year's average federal sentence for murder.[1]

---

1. The mean and median federal sentences for murder in FY 2016 were 241 and 210 months, respectively. See
United States Sentencing Commission, Interactive Sourcebook of Federal Sentencing Statistics, Fiscal
Year 2016, Table 13.

The court will have jurisidiction to grant the relief my lawyer and I seek if you agree to it. As mentioned above, quite a few Department of Justice employees have done what we ask of you, and quite a few sentencing judges have acted on their decisions to correct miscarriage of justice. The former Attorney General of the United States herself (Mrs. Lorreta Lynch) appears to have been the first to agree to it when she was the United States Attorney in the Eastern District of New York. United States v. Holloway, 68 F.Supp.3d 310 (E.D.N.Y. 2014), involved a defendant who was found guilty in 1995 of three carjackings and three 18 U.S.C. §924(c) counts. He refused a plea offer that would have resulted in the dismissal of two of the §924(c) counts and was sentenced after trial to 57 years and 7 months, with the stacked §924(c) charges accounting for 45 years of that sentence. In 2012, the sentencing judge recognized that although there were good reasons to revisit Holloway's unjust sentence, there were no legal avenues for vacating it. So he asked the United States Attorney to consider exercising her discretion to agree to an order vacating two or more of Holloway's 18 U.S.C. §924(c) convictions. Mrs. Lynch initially declined the court's invitation on the ground that Holloway could seek clemency. After the court pointed out to her that DOJ's own criteria for a successful clemency application would almost certainly disqualify Holloway, Mrs Lynch reconsidered, withdrew her objection, and agreed to vacate two of Holloway's §924(c) counts. Id. at 315.

Holloway stands for a simple proposition: even when there is no defect in the conviction, the USP Warden "can do justice by the simple act of going back into court and agreeing that justice should be done." Id. at 311. The Warden of USP Florence "has the power to walk into courtrooms and ask judges to remedy injustices" in the rare and unique circumstances when it chooses to exercise this authority. Id. at 316. Holloway is no outlier. Numerous other United States Attorneys (Department of Justice Employees) have agreed to such relief, and numerous other judges have granted it based on that agreement. The contexts include stacked §924(c) sentences as in Holloway but also the extremely harsh sentences mandated by the drug trafficking statutes, as in Inmate Musa's case.

Thus, for example, Judge Jan DuBois relied on Holloway in asking the United States Attorney in Philadelphia to agree to withdraw the prior felony information that mandated a life sentence for a low-level street dealer in United States v. Trader, No. 04-680-06, 2015 WL 4941820, at *16(E.D.Pa. Aug. 19, 2015). In his opinion he cataloged some other cases in which "[p]rosecutors have exercised this power to do justice." Id. at *16 n12. In comparison Trader's co-defendants who had already been released from prison, Judge DuBois called Trader's life sentence "disproportionate" and questioned how it was "just" or how it advanced the goals of 18 U.S.C. §3553(a), requiring a sentence that is "sufficient, but not greater than necessary." Id. at *15

In May 2015, at the request of pro bono counsel, the United States Attorney in the Eastern District of Oklahoma relied expressly on Holloway in agreeing to vacate a life sentence imposed pursuant to 21 U.S.C. §848(b). Luis Rivera had been the central figure in a cocaine smuggling operation that used private airplanes to smuggle hundreds of kilograms of cocaine from Colombia to Oklahoma. Thirty years into his life sentence, the United States Attorney granted what he called a "Holloway request" by agreeing to an

2. Full disclosure: The sentencing judge in the Holloway was John Gleeson, who is currently representing this Inmate. Judge Gleeson left the bench in March 2016.

ences amounting
ecedence," the
om Holloway. On
on Rivera 30 ye

ub

currently assigned to this Inmate case —— en
the prosecutor in the case to vacate §924(c)
States v. Washington, No. 11-cr-605' (RJS), O
Judge Sullivan rejected Washington's legal ch
section of his written opinion called "Final

e —— have spoken on th
leaving the bench in M
judges, and defendant
mpassionate/Mercy-type

Inmate Musa sentenced at age twenty-seven, and he has now served nearly half of his life in prison on this case. His drug addiction continued during his initial years of incarceration, and his prison infractions primarily relate to drug use. Musa ultimately overcame his addiction in 2012 through drug treatment and Narcotics Anonymous. He has now been sober for over six years. He has only had two minor disciplinary infractions during that period.[3] While incarcerated, Musa has worked hard to develop his skills and abilities. He has completed over 1500 hours of Educational courses and become an impressive legal advocate for himself, and served as a mentor to younger inmates.

Inmate Musa is no longer the drug-addicted young man who broke the law in furtherance of his addiction. He is a mature and devoutly religious man who seeks out educational opportunities and mentor young inmates. Despite a sentence that offers no hopes of release, he has overcame his addiction and now has a positive and forward-looking attitude. In short, Inmate Musa's rehabilitation is complete, and he is prepared to reenter society.

### V. RELEASE PLAN

If released, Inmate Musa has strong family and community support to help him achieve his goal of becoming a productive citizen. His elderly mother, his brother's family, and Musa's daughter will welcome him home to Baltimore. While incarcerated, Musa has maintained particularly close contact with his mother and brother Kevin. In Baltimore, Musa will reside with his mother, Geraldine Harris, at 2109 Brookfield Avenue, Baltimore, Maryland 21217 (home phone: 410-483-8277), and Kevin will assist in helping Musa secure employment at Baltimore's Department of Public Works, where Kevin has worked for over fifteen years. Musa's completion of a 442 hour-course in Building Trade, and his knowledge of construction and repair, have prepared him for a position there. In the event he is not able to obtain employment at the Department of Public Works, Musa has also been accepted by 2AM Bakery, a program providing culinary training and an industry-recognized certificate in food preparation to formerly incarcerated individuals. See Attached Exhibit "B" (2AM Bakery Letter)

Musa also has the support of several community organizations that support reentry. Musa has already been accepted and will enroll in Penn North Recovery Center, which will provide substance abuse treatment and counseling. Penn North's eighteen-month treatment program also provides wrap-around services, including mental health evaluation and treatment, employment development services, educational offerings, and life skills training. At Penn North, Musa will be required to submit to random drug tests to verify his substance-free status and attend fourteen 12-step meetings, as well as attend and participate in other services tailored to his recovery as determined by Penn North's substance abuse counselors, social workers, and mental health professionals. See Attached Exhibit "C" (Maryland Community Health Initiatives Letter). Musa will also work with Power Inside, a Baltimore program providing trauma support services and peer mentoring to aid reintegration. See Attached Exhibit "D".(Power Inside Letter).

If released, Musa has secured the emotional and social support he needs to effectively transition to a law-abiding life. With his family and community by his side, Musa can take advantage of the opportunities he missed because of his criminal conduct. He has taken responsibility for his past and has worked as hard as he can with no hope of

---

3. The two infractions were written on the same day (July 23, 2015) by a new correction officer. One was for failure to leave the law library on time, and the other related to Musa's advertisements for free typing work.

release to better himself through education, sobriety, religious devotion. If given
the opportunity for another chance, Musa will reintegrate as a positive citizen who
contributes to his community.

### D. CONCLUSION

When Judge Patterson was forced to impose on Inmate Musa a sentence no reasonable
person could defend, he told Musa not to give up hope because maybe something would
come along. More than a quarter century later, this Inmate still has that hope. He will
turn 55 years old this year. All the relevant social science tells us that he has al-
most certainly "aged out" of crime, and more specifically, he has made something of
himself while incarcerated. You have the wisdom, the compassion, and the authority to
empower the sentencing judge to correct an egregious injustice. Your decision on this
application can be the "something" that finally comes along to save this Inmate from
having to die in prison because he committed a nonviolent, low-level drug trafficking
crime all those years ago and had the temerity to exercise his right to a jury trial.

One last caveat, I do not mean to suggest that this Inmate would not be prosecuted
today for the offense he committed in this case in November 1990. I do mean to suggest,
however, that the crime may never even have occurred if this Inmate addiction had been
addressed at 18 (when he was convicted of stealing less than $300) or 19 (simple poss-
ession, twice), and so on, in the manner it would likely be addressed today.

More to the point of the decision we have asked you to make, please do not deny
this Inmate your mercy because of his prison disciplinary record prior to 2012, when
he finally got control of his addiction. This Inmate went into BOP custody with a raging
opiate addiction. During his lengthy incarceration, the BOP Inspector General candidly
reported that drugs were available to inmates, insufficient drug treatment services were
made available to them, they were not incentivized to seek what drug treatment there
was, and drug misconduct charges against inmates were rampant —— they comprised 66%
of all top-tier misconduct charges.

None of the foregoing is meant to suggest that this Inmate is not responsible for
his offense or his disciplinary record. He is, and he has accepted responsibility for
both. But he has paid an enormous price already. He has been in a prison cellon this
low-level drug trafficking case for more than 26 years; he went in when George H.W.
Bush was our President. He has been there more than six years longer than the average
sentence imposed on defendants convicted of murder in federal courts last year.

If you would like to speak to my attorney he can be contacted at:
John Gleeson, Attorney at Law, 919 Third Avenue, New York, N.Y. 10022
Ph: 212-909-6000

For all these reasons, this Inmate respectfully ask the Warden/Executive Staff
at U.S.P. Florence to please take official notice of the aforementioned confirmable
facts supporting his sincere and heartfelt request for a Compassionate Release/Reduction
in Sentence pursuant to 18 U.S.C. §3582(C)(1)(A) and §4205(g).

Date of Request: April 12, 2019                     Respectfully Submitted,

Jawad Anks Musa #26075-037

Warden of USP Florence-High
April 12, 2019
Page 9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and complete copy of the foregoing REQUEST FOR
COMPASSIONATE RELEASE/REDUCTION IN SENTENCE (RIS), has been HAND-DELIVERED to
Warden M.A Stancil at U.S.P. Florence-High while he was stationed at Mainline
Chow Hall

On this 12th day of April, 2019   pursuant to 28 U.S.C. §1746.

Jawad Amir Musa #28075-037