UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JAWAD AMIR MUSA,

Defendant.

90-cr-863-8 (RJS)

## THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York  10007

Alexander Li
Danielle Sassoon
Assistant United States Attorneys
        *Of Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

BACKGROUND ...................................................................................................................... 2

      A.    Factual Background ................................................................................................ 2

      B.    Legal Background .................................................................................................. 5

ARGUMENT ............................................................................................................................ 7

I.     The Sentencing Guidelines Vest the BOP with Sole Authority to
Determine a Catchall "Extraordinary and Compelling" Reason ....................................... 9

      A.    Legal Standard ...................................................................................................... 9

      B.    Only the BOP Can Determine Whether a Proffered Catchall
Reason is "Extraordinary and Compelling".......................................................... 9

II.    Musa Has Not Stated an "Extraordinary and Compelling" Reason to
Reduce His Sentence......................................................................................................... 11

      A.    Legal Standard .................................................................................................... 11

      B.    A Change in Statutory Penalties Is Not an "Extraordinary
and Compelling" Reason for Compassionate Release.......................................... 14

      C.    Rejecting a Plea Offer Is Not an "Extraordinary and
Compelling" Reason for Compassionate Release.................................................. 16

III.   Musa's Fraud on the Court Is Not a "Diversion" ............................................................ 17

      A.    Legal Standard .................................................................................................... 17

      B.    The Earwin Letter Is a Fraud on the Court ......................................................... 18

CONCLUSION........................................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978) ........................................................... 16, 17

*Corbitt v. New Jersey*, 439 U.S. 212 (1978) ................................................................ 17

*Dillon v. United States,* 560 U.S. 817 (2010) ................................................................ 6

*In re Moses*, 23 F.3d 396 (2d Cir. 1994) ....................................................................... 2

*Moses v. United States*, 513 U.S. 886 (1994) ................................................................ 2

*Moses v. United States*, No. 90-cr-863 (RPP), 2009 WL 222797 (S.D.N.Y.
    Jan. 26, 2009) .......................................................................................................... 3

*Moses v. United States*, Nos. 97-cv-2833 (RPP), 90-cr-863-1 (RPP), 1998
    WL 255401 (S.D.N.Y. May 20, 1998) .................................................................... 2

*Moses v. United States*, Nos. 97-cv-2833 (RPP), 90-cr-863-1 (RPP), 2002
    WL 31011864 (S.D.N.Y. Sept. 9, 2002) ................................................................. 2

*Moses v. United States*, Nos. 97-cv-2833 (RPP), 90-cr-863-1 (RPP), 2005
    WL 292976 (S.D.N.Y. Feb. 8, 2005) ...................................................................... 2

*New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F.
    App'x 25, 25 (2d Cir. 2011) ..................................................................................... 18

*Stinson v. United States*, 508 U.S. 36 (1993) ................................................................. 9

*United States v. Cordoba-Murgas*, 233 F.3d 704 (2d Cir. 2000) .................................. 18

*United States v. Diaz*, 627 F.3d 930 (2d Cir. 2010) ....................................................... 15

*United States v. McGraw*, No. 2:02-cr-00018 (LJM) (CMM), 2019 WL
    2059488 (S.D. Ind. May 9, 2019). ................................................................... 9, 14

*United States v. Overcash*, No. 3:15-CR-263-FDW-1, 2019 WL 1472104
    (W.D.N.C. Apr. 3, 2019). ................................................................................. 10, 14

*United States v. Ross*, 464 F.2d 376 (2d Cir. 1972) ...................................................... 15

*United States v. Shields*, No. 12-cr-00410-BLF-1, 2019 WL 2359231
    (N.D. Cal. June 4, 2019). ........................................................................... 10, 11, 14

*United States v. Watts*, 519 U.S. 148 (1997) ................................................................. 18

*United States v. Willis*, No. 15-cr-3764 (WJ), 2019 WL 2403192 (D.N.M. June 7, 2019) .................................................................................................... 14

*White v. United States*, No. 6:12-CR-03045-1-MDH, 2019 WL 2067223 (W.D. Mo. May 9, 2019) ..................................................................................... 14

**Statutes and Regulations**

1 U.S.C. § 109 ............................................................................................................. 15

18 U.S.C. § 3582 ......................................................................................... 5, 6, 11, 13

28 U.S.C. § 994 ............................................................................................................. 5

U.S.S.G. § 1B1.13 .............................................................................................. 6, 8, 9, 13

**Legislative History**

Comprehensive Crime Control Act, Pub. L. No. 98-473, tit. II, 98 Stat. 1976 (1984) ......................................................................................................... 5

First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ............................. 6, 7, 15

H. Rep. No. 115-699 (2018). ..................................................................................... 12

S. Rep. No. 98-225 (1983) ..................................................................................... 5, 12

## PRELIMINARY STATEMENT

In 1991, Jawad Musa was convicted by a jury of a drug trafficking offense and was sentenced to life imprisonment, which at that time was the applicable mandatory minimum.  In 2018, as part of the First Step Act, Congress reduced the mandatory minimum applicable to defendants in Musa's circumstances to 25 years' imprisonment, but did not make the change retroactive to defendants, like Musa, who had already been sentenced.  Musa, through the mechanism of a compassionate release motion, asks this Court to override that congressional determination and erase his mandatory term of life imprisonment.  The Court should decline. Compassionate release is available only where there are "extraordinary and compelling" changes in a defendant's circumstances such as serious illness, old age, sole caregiver status, or such other circumstances as the Bureau of Prisons, in its discretion, determines warrants the relief.  No such circumstances obtain here.

If the Court nevertheless holds that it has discretion to grant Musa's motion, it should, in considering whether to do so, consider a key document that Musa submitted:  a letter purportedly from Eric Earwin, the former Captain of the prison in which Musa is housed, that attests to Musa's maturity and rehabilitation.  The letter is a forgery.  In sworn declarations, Earwin states that he did not prepare the letter, did not sign the letter, and did not authorize the use of his name. Indeed, the letter misspells Earwin's first name.  Musa nevertheless submitted the forged letter first to the Pardon Attorney in support of an application for clemency, and then to this Court when his clemency application was denied.  Confronted with the forgery, Musa says in his brief that it is a mere "diversion."  It is not.  Musa's submission of a forged document is a fraud on the Court, and that fraud counsels against the Court's exercise of discretion to grant the relief that Musa seeks.

## BACKGROUND

### A.      Factual Background

#### 1.       Musa's Conviction and Early Applications for Review

In July 1991, a jury convicted Musa of conspiring to possess at least one kilogram of heroin with the intent to distribute it. *See Moses v. United States*, Nos. 97-cv-2833 (RPP), 90-cr-863-1 (RPP), 1998 WL 255401, at *1 (S.D.N.Y. May 20, 1998). The plan was to make a large purchase: Musa agreed to supply a $20,000 down payment to buy a kilogram of heroin from a seller. *Id.* After joining the conspiracy Musa took over "the direction of the deal," *id.* at *2 — not only by supplying the money, but also by ensuring the transaction was protected by firearms. Before meeting with the seller, Musa instructed one of his co-conspirators, who had a gun, to frisk another co-conspirator. *Id.* After the meeting with the seller, who turned out to be an informant, several of Musa's co-conspirators were arrested. *Id.* Musa, who was watching from a distance, fled in his car and threw a gun out of the car window. *Id.*

In December 1991, Judge Robert Patterson sentenced Musa to life imprisonment, which at that time was the mandatory sentence given the two prior felony informations (for two prior felony narcotics convictions) filed by the Government. *Id.* Musa's conviction and sentence were affirmed by the Second Circuit on appeal, *In re Moses*, 23 F.3d 396 (2d Cir. 1994), and the Supreme Court denied review, *Moses v. United States*, 513 U.S. 886 (1994). In the years following his conviction, Musa filed numerous motions for post-sentencing relief. All (other than the pending motion) were denied. *See e.g.*, *Moses*, 1998 WL 255401 (denying habeas petition under § 2255); *Moses v. United States*, Nos. 97-cv-2833 (RPP), 90-cr-863-1 (RPP), 2002 WL 31011864 (S.D.N.Y. Sept. 9, 2002) (denying Rule 60(b) motion to vacate order denying habeas petition); *Moses v. United States*, Nos. 97-cv-2833 (RPP), 90-cr-863-1 (RPP), 2005 WL 292976 (S.D.N.Y. Feb. 8, 2005) (denying another Rule 60(b) motion); *Moses v. United States*,

No. 90-cr-863 (RPP), 2009 WL 222797 (S.D.N.Y. Jan. 26, 2009) (denying motion for a writ of audita querela, and a motion to modify the sentence under 18 U.S.C. § 3582(c)(2)).

### 2.      Musa's Clemency Petition

In or about May 2016, Musa petitioned for clemency to the Office of the Pardon Attorney of the Department of Justice ("DOJ"). Musa included with his petition an undated letter in support purportedly written by "Captain M. Earwin" of USP Florence (the "Earwin Letter"), the facility where Musa was and remains incarcerated. (*See* Ex. 1 (Earwin Letter)).[1] Although the Captain of USP Florence at the time did have the surname Earwin, neither his first name nor his middle name begins with an "M." (*See* Ex. 2 (Declaration of Eric Earwin)). The Earwin Letter appears to be signed "USP Captain." (Ex. 1). Musa's petition for clemency was denied in or about January 2017. (Br. 2).

### 3.      The Instant Proceedings

On February 10, 2017, Musa moved this Court to reopen his Section 2255 petition and reduce his sentence. (Doc. No. 276). Musa included with his motion papers the same Earwin Letter that he previously submitted to the Pardon Attorney. (Doc. No. 276 at 60). On August 28, 2017, Musa, through counsel, submitted to this Court a letter again attaching the Earwin Letter as an exhibit. (Doc. No. 279-1 at 18). On November 10, 2017, the Government responded to Musa's motion and letter, advising that while it is "is sympathetic to the spirit of Petitioner's request," there "is no lawful basis to authorize the requested post-sentencing relief." (Doc. No. 286 at 1).

---

[1] Citations to "Ex." refer to the exhibits to this memorandum. Citations to "Br." refer to Musa's memorandum of law in support of his motion to reduce his sentence, Doc. No. 304. Citations to "Doc. No." refer to entries under the criminal docket number 90 Cr. 863 (RJS).

On January 23, 2019, Musa requested a status report or hearing on his motion to reopen his § 2255 petition.  (Doc. 288).  On February 27, 2019, an attorney for the Bureau of Prisons ("BOP") proactively contacted the Government and warned that the Earwin Letter might be forged.  The attorney advised that he had contacted Captain Earwin, now Acting Warden of FMC Butner, and that Warden Earwin denied signing the Earwin Letter.  On March 1, 2019, the BOP provided the Government with a sworn declaration by Warden Earwin stating, among other things:  "Though I was the Captain at USP Florence at the time [the Earwin Letter] was filed [with the Court] on August 28, 2017, I did not sign nor draft this document.  It appears to bear recommendation for inmate Musa's rehabilitation although I neither signed nor saw any such document."  (Ex. 2).  Warden Earwin signed his declaration "E.A. Earwin."

On or about March 5, 2019, the Government notified the defense that it believed the Earwin Letter to be forged and provided the defense with Warden Earwin's declaration.  The Government thereafter consented to several adjournments so that the defense could investigate the matter and provide the Government with an alternative explanation before the Government advised the Court.  After more than two months, the defense was unable to provide a credible explanation for the forgery.  The defense suggested that if the Government did not otherwise intend to recommend relief, then Musa could withdraw his motion to reopen his § 2255 petition, thereby mooting the Government's concerns about the forgery.  The Government advised the defense, however, that regardless whether the motion was withdrawn, the Government had a duty to inform the Court of the forgery to ensure the Court had accurate facts now and for any future applications.  The Government invited the defense to meet and discuss how best to present the information to the Court.

On May 31, 2019, the defense declined the Government's invitation to meet.  That same day, Musa withdrew his request for a status conference or hearing and filed the instant motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

**B.      Legal Background**

**1.      The Compassionate Release Statute**

In 1984, as part of the Comprehensive Crime Control Act, Congress created what is now known as "compassionate release" for federal inmates.  *See* Pub. L. No. 98-473, tit. II, 98 Stat. 1976, 1998  (codified as amended at 18 U.S.C. § 3582(c)(1)(A)).  Congress provided as a general rule that a "court may not modify a term of imprisonment once it has been imposed."  *Id.*; *see* 18 U.S.C. § 3582(c).  Congress allowed an exception, however, where (1) the Director of the Bureau of Prisons has moved for a sentencing reduction, (2) the court "finds that extraordinary and compelling reasons warrant such a reduction," and (3) the court finds that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  98 Stat. at 1998–99.  As described in the Senate Judiciary Committee Report for the legislation, Section 3582(c)(1)(A) is intended to apply "to the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner."  S. Rep. No. 98-225, at 121 (1983).

Congress instructed the United States Sentencing Commission (the "Sentencing Commission") to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).  Congress provided, however, that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  *Id.*  Consistent with this mandate, the Sentencing Commission has promulgated a policy statement and accompanying application notes under United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.")

5

§ 1B1.13.  As relevant here, the application notes provide that "extraordinary and compelling reasons" exist where (A) the defendant has a serious medical condition, such as a terminal illness, (B) the defendant is at least 65 years old and certain other conditions are met, or (C) the defendant's family circumstances have changed such that the defendant is the only available caregiver for a minor child or incapacitated spouse.  U.S.S.G. § 1B1.13 app. note 1(A)–(C).  The application notes also allow a catchall condition where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  *Id.* at app. note 1(D).  Because the governing statute requires that a ruling concerning compassionate release be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13 is binding on the Court.  *See Dillon v. United States,* 560 U.S. 817, 827 (2010) (where Section 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court)).

## 2.    The First Step Act

In December 2018, as part of the First Step Act, Congress made two statutory changes relevant here.

First, Congress relaxed the requirement of a BOP motion to trigger judicial consideration of a request for compassionate release under Section 3582(c)(1)(A).  Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).  As revised, Section 3582(c)(1)(A) requires a motion by *either* the Director of the Bureau of Prisons *or* the defendant, after "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden

of the defendant's facility, whichever is earlier." *Id.* In short, if the BOP refuses or fails to respond to a defendant's request for compassionate release, then the defendant can take his or her request directly to the court. The Sentencing Commission has not yet amended U.S.S.G. § 1B1.13 to reflect this statutory change.

Second, Congress reduced the mandatory minimum term of imprisonment under 21 U.S.C. § 841(b)(1)(A) for defendants with two prior felony narcotics convictions — *i.e.*, the provision under which Musa had been sentenced — from life to 25 years. 132 Stat. 5194, at 5220 § 401(a). Congress did not make this change retroactive to sentences already imposed. *Id.* at 5221 § 401(c) (amendment applies to "any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment").

## ARGUMENT

Musa argues that this Court should reduce his sentence under Section 3582(c)(1)(A) because for "the simple reason that he exercised his right to a trial by jury, the government caused a grotesque penalty to be inflicted on Musa by invoking a sentence enhancement that Congress and the President found to be so draconian that it can no longer be invoked against anyone." (Br. 13–14). Stated differently, Musa contends there are two "extraordinary and compelling" reasons warranting compassionate release: (1) the First Step Act reduced the mandatory minimum imprisonment applicable to defendants in his circumstances from life to 25 years, and (2) his decision to go to trial subjected him to an enhanced statutory penalty that would been avoided had he accepted the Government's plea offer. Because these reasons do not fall within the categories of "extraordinary and compelling" circumstances specifically identified in the application notes to U.S.S.G § 1B1.13 — a serious medical condition, old age, and sole

caregiver status — Musa relies on the application notes' catchall category of other "extraordinary and compelling reason[s]" as the procedural vehicle for his requested relief.

Musa's motion should be denied for three reasons.  First, Musa cannot invoke the catchall provision of U.S.S.G. § 1B1.13 because it permits only "the Director of the Bureau of Prisons" to determine whether there exists some unique extraordinary and compelling reason "in the defendant's case."  U.S.S.G. § 1B1.13 app. note 1(D).  The BOP has made no such determination here.  Second, even if the Court could stand in for the BOP in evaluating a proffered catchall reason, the reasons presented by Musa are not "extraordinary and compelling," as interpreted by Congress, the Sentencing Commission, and the courts.  Accepting Musa's invitation to broaden this extraordinary relief would contravene Congress's decision to limit retroactive application of the First Step Act and undermine the Supreme Court's strong policy protection for plea bargaining.[2]  Third, even if Musa could establish threshold eligibility for consideration under Section 3582(c)(1)(A), his submission of a forged BOP letter would counsel against his requested relief.

---

[2] In addition to an "extraordinary and compelling" reason, U.S.S.G § 1B1.13 requires the Court to find that "the defendant is not a danger to the safety of any other person or to the community" and that "the reduction is consistent with this policy statement."  Given the presence of firearms in the offense conduct — Musa instructed a co-conspirator, who had a gun, to frisk another co-conspirator, and Musa threw a gun out his car window — the Government cannot agree with Musa's characterization of his offense as a "non-violent drug transaction" (Br. 3) that involved "no use or threat of violence" (Br. 9).  The more fundamental problem, however, is Musa's threshold failure to show an "extraordinary and compelling" reason, and the Government focuses on this element in its brief.

I.    **The Sentencing Guidelines Vest the BOP with Sole Authority to Determine a
      Catchall "Extraordinary and Compelling" Reason**

    A.    **Legal Standard**

"[C]ourts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the

'extraordinary and compelling reasons' that may warrant a sentencing reduction." *United States*

*v. McGraw*, No. 2:02-cr-00018 (LJM) (CMM), 2019 WL 2059488, at *2 (S.D. Ind. May 9,

2019). The application notes to U.S.S.G. § 1B1.13 provide that "extraordinary and compelling"

reasons exist where (A) the defendant has a serious medical condition, (B) the defendant is at

least 65 years old and certain other conditions are met, or (C) the defendant is the only available

caregiver for a minor child or incapacitated spouse. U.S.S.G. § 1B1.13 app. note 1(A)–(C). In

addition, the application notes allow for relief where, "[a]s determined by the Director of the

Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason

other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at

app. note 1(D). As Musa concedes (Br. 8–9 n.4), "commentary in the Guidelines Manual that

interprets or explains a guideline is authoritative unless it violates the Constitution or a federal

statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v.*

*United States*, 508 U.S. 36, 38 (1993).

    B.    **Only the BOP Can Determine Whether a Proffered Catchall Reason is
      "Extraordinary and Compelling"**

Musa does not contend that he has a serious medical condition, that he is of advanced

age, or that he is a sole caregiver. Rather, Musa urges the Court to evaluate his proffered reasons

for compassionate release — *viz.*, the First Step Act's reduction of the applicable mandatory

minimum and his rejection of a plea offer that would have avoided life imprisonment — under

the catchall provision of the application notes to U.S.S.G. § 1B1.13. Musa concedes that

U.S.S.G. § 1B1.13 "places the authority to determine what constitutes 'other reasons' with the

BOP," and that the BOP has not determined his reasons are in fact "extraordinary and compelling." (Br. 8). Nevertheless, he argues this requirement should be disregarded because the BOP's authority to decide a catchall reason "has been superseded by the [First Step Act], which no longer require[s] the BOP to bring a motion — or even to weigh in on a motion — before the request for relief can be presented to and acted on by the courts." (Br. 8). Musa cites no authority adopting his argument, and the two district courts to consider the argument have rejected it.

In *United States v. Shields*, the district court considered a motion for compassionate release under the catchall category of U.S.S.G. § 1B1.13. No. 12-cr-00410-BLF-1, 2019 WL 2359231 (N.D. Cal. June 4, 2019). There, as here, the defendant "urge[d] the Court to disregard the language restricting the catchall category . . . to those circumstances in which the Director of the BOP has found an extraordinary or compelling reason for a reduction in sentence to exist," on the ground that "the language of U.S.S.G. § 1B1.13 is outdated, because it was drafted when a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) could be brought only by the Director of the BOP." *Id.* at *4. The district court rejected the invitation, holding there was no "authority for the proposition that the Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments." *Id.* The *Shields* court noted that the one other district court to address the argument had also rejected it, reasoning in that case that "Defendant has failed to demonstrate how the policy statement addressing extraordinary and compelling reasons conflicts with the First Step Act's amendments to § 3582." *United States v. Overcash*, No. 3:15-CR-263-FDW-1, 2019 WL 1472104, at *2 (W.D.N.C. Apr. 3, 2019).

This Court should join the *Shields* and *Overcash* courts.  Contrary to Musa's argument, that the First Step Act enables "a defendant to bring a § 3582 motion to the Court without any response from the BOP" is not "inconsistent" with the BOP's continued authority to decide whether a defendant has stated a catchall "extraordinary and compelling" reason.  (Br. 7).  As discussed *infra* Section II.A, the legislative history of the First Step Act suggests Congress intended to expand the availability of compassionate release on the grounds of terminal illness, old age, and special family circumstances, and each of these avenues is available under U.S.S.G. § 1B1.13 without resort to the catchall provision.  Moreover, the First Step Act continues to mandate that requests for compassionate release be submitted to the BOP in the first instance, *see* 18 U.S.C. § 3582(c)(1)(A), reflecting Congress's view that the BOP is particularly well-suited to evaluating the full spectrum of circumstances — including any truly unique circumstances — of the inmates in its care.  Because the BOP's sole authority to invoke the catchall provision of U.S.S.G. § 1B1.13 is not abrogated by the First Step Act, *Shields*, 2019 WL 2359231, at *2, Musa's motion under the catchall provision should be denied.

## II.    Musa Has Not Stated an "Extraordinary and Compelling" Reason to Reduce His Sentence

### A.    Legal Standard

Should this Court hold that it may stand in for the BOP and evaluate Musa's motion under the catchall provision of U.S.S.G § 1B1.13, the Court must determine whether the reasons proffered in this case are "extraordinary and compelling."  Although Section 3582(c)(1)(A) does not define the term, the legislative history, Sentencing Guidelines, and court decisions suggest that "extraordinary and compelling" reasons are profound changes in the personal circumstances of a defendant over the course of incarceration, such as a serious illness or old age, that go

11

beyond rehabilitation alone.  Contrary to Musa's argument, "extraordinary and compelling"

reasons do not include changes in statutory penalties or regret at rejecting a plea offer.

     **Legislative History.**  The Senate Judiciary Committee Report accompanying the

Comprehensive Crime Control Act of 1984 states:

> The Committee believes that there may be unusual cases in which
> an eventual reduction in the length of a term of imprisonment is
> justified by ***changed circumstances***.  These would include cases of
> severe illness, cases in which ***other*** extraordinary and compelling
> circumstances justify a reduction of an unusually long sentence, and
> some cases in which the sentencing guidelines for the offense of
> which the defender was convicted have been later amended to
> provide a shorter term of imprisonment.[3]

S. Rep. No. 98-225, at 55–56 (emphases added).  By specifically identifying "severe illness" as

an "extraordinary and compelling" reason potentially warranting sentencing relief — and by

emphasizing that rehabilitation alone is insufficient, *id.* at 179 — the Judiciary Committee made

clear that the "changed circumstances" it had in mind were changes to the personal

circumstances of the defendant over the course of incarceration.

     Congress maintained this understanding of "extraordinary and compelling" reasons when

it revised the compassionate release program in the First Step Act of 2018.  In an August 3, 2017

letter to the BOP and DOJ that laid the foundation for the 2018 amendments to Section

3582(c)(1)(A),[4] Senator Brian Schatz (who co-sponsored the eventual legislation) and 11 other

senators stated that the compassionate release "program essentially allows BOP to seek the

release of certain elderly and terminally ill inmates, as well as those with special family

---

[3] The safety valve referenced in the final clause, describing "cases in which the sentencing guidelines . . . have been later amended," is codified at 18 U.S.C. § 3582(c)(2).  That provision is not invoked by Musa and is inapplicable here.

[4] The House Judiciary Committee report for the First Step Act contains little discussion of the compassionate release amendments.  *See* H. Rep. No. 115-699, at 30 (2018).

circumstances, before the end of their prison sentences . . . ." (Ex. 4 at 1).  Although Musa is

correct that in enacting the First Step Act, Congress wished to "expand the use of compassionate

release by allowing federal courts to consider meritorious applications for such relief without

requiring, as a condition precedent, a motion by the BOP" (Br. 15), this is a procedural change,

not a substantive one.  Congress did not modify or further define the requirement of an

"extraordinary and compelling" reason, and nowhere in Senator Schatz's letter or the pages of

the Congressional Record that Musa cites (*see* Br. 15 & n.9) is there any suggestion that a

change in statutory penalties or regret at refusing a plea deal would suffice.

   **Sentencing Guidelines.**  Consistent with the Congressional understanding of Section

3582(c)(1)(A) for more than 30 years, the application notes to U.S.S.G. § 1B1.13 detail three

reasons that qualify as "extraordinary and compelling":  a serious medical condition, old age, and

sole caregiver status.  U.S.S.G. § 1B1.13 app. note 1(A)–(C).  Each of these is a change in

personal circumstances over the course of a defendant's incarceration.[5]  The application notes

also include the catchall provision, relied upon by Musa here, that allow the "Director of the

Bureau of Prisons" to determine the existence "in the defendant's case an extraordinary and

compelling reason other than, or in combination with, the reasons described [above]."  *Id.* at app.

note 1(D).  The Sentencing Commission's delegation to the BOP to decide whether there exists

some uniquely "extraordinary and compelling" reason in a particular defendant's case dovetails

with Congress' expectation that the BOP will review compassionate release requests in the first

instance, *see* 18 U.S.C. 3582(c)(1)(A), and reflects the BOP's superior position to assess how a

---

[5] The change need not be unforeseen.  The application notes to U.S.S.G. § 1B1.13 recognize that
"the fact that an extraordinary and compelling reason reasonably could have been known or
anticipated by the sentencing court does not preclude consideration for a reduction under this
policy statement."  U.S.S.G. § 1B1.13 app. note 2.

defendant's circumstances have changed while incarcerated.  There would be little need for the

BOP to weigh in if "extraordinary and compelling" reasons included, as Musa argues here, a

change in statutory penalties or regret at refusing a plea deal.

      **Judicial Decisions**.  Since enactment of the First Step Act, numerous district courts have

reviewed motions for compassionate release by defendants.  These courts have "universally

turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons'

that may warrant a sentencing reduction."  *McGraw*, 2019 WL 2059488, at *2.  Most cases

appear to address motions based on medical conditions, and reviewing courts have emphasized

that even in that context compassionate release "is an extraordinary and rare event."  *White v.*

*United States*, No. 6:12-CR-03045-1-MDH, 2019 WL 2067223, at *2 (W.D. Mo. May 9, 2019)

(denying compassionate release to inmate suffering from severe macular degeneration); *United*

*States v. Willis*, No. 15-cr-3764 (WJ), 2019 WL 2403192, at *3 (D.N.M. June 7, 2019)

(collecting cases).  Consistent with the narrow view of "extraordinary and compelling" reasons

expressed in the legislative history and Sentencing Guidelines, the few courts to address non-

medical reasons have denied relief.  *See Overcash*, 2019 WL 1472104, at *2 (defendant's "desire

to spend the remainder of his sentence at home . . . [was] not an extraordinary or compelling

circumstance"); *Shields*, 2019 WL 2359231, at *5 (defendant's need to supervise seriously ill

child, when spouse and adult children worked full-time, did not "rise to the level of

'extraordinary or compelling'").

      **B.**     **A Change in Statutory Penalties Is Not an "Extraordinary and Compelling"**
               **Reason for Compassionate Release**

      Musa's core argument is that his mandatory sentence of life imprisonment is too harsh

under today's statutory framework, and that this divergence is an "extraordinary and compelling"

reason for compassionate release.  (*See* Br. 14 & n.8).  For the reasons discussed above, a change

in statutory penalties is not "extraordinary and compelling" within the meaning of Section 3582(c)(1)(A), which centers on changes in a defendant's personal circumstances such as a serious medical condition, old age, or sole caregiver status.  Equally importantly, Musa's argument is also foreclosed by the general savings statute in 1 U.S.C. § 109, which since 1871 has barred retroactive application of new sentencing laws absent a clear expression of Congressional intent.

In effect, Musa asks this Court to do what Congress did not:  apply to his 1991 sentence the First Step Act's reduction of the minimum term of imprisonment from life to 25 years.  The savings statute provides, however, that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide . . . ."  1 U.S.C. § 109.  In the First Step Act, Congress expressly provided that the lowered mandatory minimum relevant here "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."  132 Stat. 5194, at 5221 § 401(c).  Because Musa's life sentence was imposed 27 years before enactment of the First Step Act in 2018, it is fixed by the savings statute and the First Step Act "cannot be applied to reduce [his] sentence . . . ."  *United States v. Diaz*, 627 F.3d 930, 931 (2d Cir. 2010) (per curiam) (declining to apply sentencing changes in the Fair Sentencing Act of 2010 to a defendant who "was convicted and sentenced before [that statute] was enacted"); *see also United States v. Ross*, 464 F.2d 376, 380 (2d Cir. 1972) (repeal of mandatory minimum did not apply to defendant prosecuted under old law).  Musa's invitation to recast the First Step Act as an "extraordinary and compelling" reason for purposes of compassionate release would circumvent the express limitations on retroactivity

set forth by Congress and permit any defendant sentenced under an old statutory framework to seek early release.  For this additional reason, Musa's invitation should be denied.

### C.     Rejecting a Plea Offer Is Not an "Extraordinary and Compelling" Reason for Compassionate Release

Musa also suggests that because he would not have faced mandatory life imprisonment had he accepted the Government's plea offer, his exercise of his constitutional right to a trial by jury led to a "grotesque penalty" that is now an "extraordinary and compelling" reason for compassionate release.  (Br. 13).  As explained in Section II.A, *supra*, regret at rejecting a plea offer is not an "extraordinary and compelling" reason within the meaning of Section 3582(c)(1)(A), which centers on changes in personal circumstances such as a serious medical condition, old age, or sole caregiver status.  Furthermore, Musa's proposed use of the compassionate release statute to revisit a rejected plea offer would undermine the Government's strong policy interest in enforceable plea bargaining, as recognized by the Supreme Court in *Bordenkircher v. Hayes*, 434 U.S. 357 (1978).

In *Hayes*, the prosecutor informed the defendant — who used a forged check in the amount of $88.30 — that if he did not plead guilty to a forgery charge punishable by a term of 2 to 10 years' imprisonment, then the prosecutor would seek an indictment under the Kentucky Habitual Criminal Act, which would subject the defendant to a "mandatory sentence of life imprisonment by reason of his two prior felony convictions."  *Id.* at 358–59.  The defendant proceeded to trial, was convicted under the habitual criminal statute, and was sentenced to life imprisonment.  On appeal, the parties did not dispute that the defendant's "refusal to plead guilty to the original charge was what led to his indictment under the habitual criminal statute."  *Id.* at 359.  The Supreme Court nevertheless upheld the conviction against a constitutional challenge, explaining that "[w]hile confronting a defendant with the risk of more severe punishment clearly

16

may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable — and permissible — attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Id.* at 364 (internal quotation marks and brackets omitted).  Put differently, "[i]t cannot be said that defendants found guilty by a jury are 'penalized' for exercising the right to a jury trial any more than defendants who plead guilty are penalized because they give up the chance of acquittal at trial." *Corbitt v. New Jersey*, 439 U.S. 212, 226 (1978).

*Hayes* is directly on point:  there, as in this case, the defendant was offered a plea deal that removed the risk of life imprisonment, and the defendant rejected the offer in favor of trial. That election, however momentous, is not an "extraordinary and compelling" circumstance within the meaning of Section 3582(a)(1)(C).  It is a difficult choice made by defendants every day.  As with a non-retroactive change in statutory penalties, treating a defendant's regret at rejecting a plea offer as an "extraordinary and compelling" reason to circumvent a sentence mandated by Congress would undermine a foundational policy "unequivocally recognized" by the Supreme Court:  "the [Government's] legitimate interest in encouraging the entry of guilty pleas and in facilitating plea bargaining, a process mutually beneficial to both the defendant and the [Government]."  *Corbitt*, 439 U.S. at 222.

## III.    Musa's Fraud on the Court Is Not a "Diversion"

### A.    Legal Standard

If the Court nevertheless concludes that it has discretion to grant Musa's motion, it should consider, in deciding whether to exercise its discretion, Musa's forgery of a letter by a senior BOP official, which he presented in support of his applications to the Pardon Attorney and to the Court.  Musa's fraud is a negative factor in the Section 3553(a) analysis.  (*Cf.* Br. 11–14 (discussing forgery allegation in Section 3553(a)(1) context)).  As with any sentencing fact, the

Court would resolve any dispute over the fraud for Section 3553(a) purposes by a preponderance of the evidence.[6]  *See United States v. Cordoba-Murgas*, 233 F.3d 704, 708 (2d Cir. 2000) ("[O]n multiple occasions, this Court has instructed that proof by a 'preponderance of the evidence' is the applicable burden of proof when a sentencing judge is asked to assess disputed facts relevant to sentencing.").[7]

**B.      The Earwin Letter Is a Fraud on the Court**

The Government submits with this brief two declarations by Acting Warden Eric Earwin, the purported author of the Earwin Letter.  In the first declaration, Warden Earwin states unequivocally that he "did not sign nor draft" the Earwin Letter and that he "neither signed nor saw any such document."  (Ex. 2).  In the second declaration, Warden Earwin again emphasizes that he "did not sign the letter or authorize my name to be applied to the letter," and that he was "unaware of the existence of the letter until it was brought to my attention in or about February 2019."  (Ex. 3 (Supplemental Declaration of Eric Earwin)).  Warden Earwin's sworn statements make sense of the facial irregularities in the Earwin Letter, including the misspelling of Warden Earwin's name as "M. Earwin" and the signature that appears to read "USP Captain."  (Ex. 1). To be blunt:  Musa forged the Earwin Letter and submitted it to the Pardon Attorney and twice to this Court.

---

[6] Musa argues that "[d]ue process" requires the Government to prove Musa's fraud "beyond a reasonable doubt."  (Br. 14).  This is incorrect.  *United States v. Watts*, 519 U.S. 148, 156 (1997) ("[W]e have held that application of the preponderance standard at sentencing generally satisfies due process.").

[7] The Court also has inherent authority to sanction a litigant "if it is established by clear and convincing evidence that [he] has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." *New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25, 25 (2d Cir. 2011) (internal quotation marks omitted).  "Falsifying evidence is sanctionable conduct. Submitting falsified evidence is also properly sanctionable."  *Id.* (citations omitted).

In his brief, Musa dismisses the forgery as a mere "diversion." (Br. 12). He then sets forth several factual assertions about the Earwin Letter, including that "Musa and Earwin spoke about Earwin signing a letter in support of Musa's application for clemency containing the information that was ultimately included in the letter presented by Musa." (*Id.*). While it is true that Musa asked Warden Earwin to write in support of his application for clemency, Warden Earwin has confirmed that he "did not agree to write for Musa" and "did not authorize anyone else to write for Musa under [Earwin's] name." (Ex. 3). Notably, Musa's statement of facts denies none of the following:

- Musa prepared the Earwin Letter under Warden Earwin's name.

- Musa mailed the Earwin Letter to the Pardon Attorney and this Court.

- Warden Earwin did not review the Earwin Letter.

- Warden Earwin did not sign the Earwin Letter.

- Warden Earwin did not authorize the use of his name on the Earwin Letter.

Taken together, these facts — all of which are supported by Warden Earwin's sworn declarations and by the face of the Earwin Letter, and none of which Musa denies — show that Musa has committed a fraud on this Court.

Musa's only substantive rejoinder is the unsupported statement, made through counsel, that "[i]t is our understanding that Earwin ***authorized the mailing*** of the letter to both the Pardon Attorney and this Court." (Br. 13 (emphasis added)). Musa's brief cites no evidence for this statement, and he has presented none to the Government. Warden Earwin, by contrast, has responded directly in a sworn declaration that he "did not authorize the letter to be mailed to the Pardon Attorney or this Court." (Ex. 3). Musa's suggestion that a senior BOP official would

have authorized an inmate to send a letter, sight unseen, under the BOP official's name to the Pardon Attorney and to a federal court defies all common sense.

The Court should not countenance Musa's fraud on the Court.

## CONCLUSION

For the foregoing reasons, the defendant's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) should be denied.


Dated: New York, New York
       June 21, 2019

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York

                       By:    /s/ Alexander Li_____
                              Alexander Li
                              Danielle Sassoon
                              Assistant United States Attorneys
                              Tel.: 212-637-2265 / -1115