

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 29, 2020

**BY ECF**
The Honorable Richard J. Sullivan
United States Circuit Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    <u>**United States** v. **Jawad Amir Musa**</u>, 90 Cr. 863-8 (RJS)

Dear Judge Sullivan:

      Pursuant to the Court's order dated April 22, 2020 (ECF Doc. No. 356), the Government writes in response to the authorities and arguments raised in defendant Jawad Amir Musa's supplemental authority letters (ECF Doc Nos. 344–55) in support of his motion for compassionate release (ECF Doc. No. 303). Musa contends that these supplemental authorities bolster his arguments that (1) the Court may stand in for the Bureau of Prisons ("BOP") in applying the catchall category of "extraordinary and compelling" reasons under United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13, and (2) his proffered reasons are in fact "extraordinary and compelling." The Government recognizes that a number of district courts have held they have independent authority to apply the catchall category of "extraordinary and compelling" reasons, and that several district courts have further held that certain changes to sentencing penalties in the First Step Act of 2018, though not retroactive, are nevertheless an "extraordinarily and compelling" reason for compassionate release. But numerous courts have disagreed. The Government respectfully submits that the courts that have declined to stand in for the BOP are properly interpreting and applying the Sentencing Guidelines, and that the reasons proffered by Musa are not "extraordinary and compelling" under the law.

**I.    The Sentencing Guidelines Vest the BOP with Sole Authority to Determine a Catchall "Extraordinary and Compelling" Reason**

      Musa seeks compassionate release pursuant to the catchall provision of the application notes to U.S.S.G. § 1B1.13, which permit relief where "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."[1]

---

[1] Subsections (A) through (C) provide "extraordinary and compelling" reasons exist where (A) the defendant has a serious medical condition, (B) the defendant is at least 65 years old and certain other conditions are met, or (C) the defendant is the only available caregiver for a minor child or

U.S.S.G. § 1B1.13 app. note 1(D). The BOP declined to find "extraordinary and compelling" circumstances in this case. (ECF Doc. No. 314-1). Musa argues that the Court may nevertheless grant relief by making its own determination under the catchall provision that other "extraordinary and compelling reasons" exist.

In his supplemental authority letters, Musa identifies a number of cases in which district courts made independent determinations of catchall "extraordinary and compelling" reasons. *See United States v. Haynes*, No. 93 Cr. 1043 (RJD), 2020 WL 1941478, at *12–15 (E.D.N.Y. Apr. 22, 2020); *United States v. Marks*, No. 03 Cr. 6033L, 2020 WL 1908911, at *5–7 (W.D.N.Y. Apr. 20, 2020); *United States v. Defendant(s)*, No. 2:99-CR-00257-CAS-3, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020); *United States v. Hope*, No. 90 Cr. 6108-KMW-2, slip op. at 3–5 (S.D. Fla. Apr. 10, 2020); *United States v. Millan*, No. 91 Cr. 685 (LAP), 2020 WL 1674058, at *5–8 (S.D.N.Y. Apr. 6, 2020); *United States v. Decator*, No. CR CCB-95-0202, 2020 WL 1676219, at *2–3 (D. Md. Apr. 6, 2020); *United States v. Reyes*, No. 04 CR 970, 2020 WL 1663129, at *2–3 (N.D. Ill. Apr. 3, 2020); *United States v. Owens*, No. 97 Cr. 2546-CAB, slip op. at 4–5 (S.D. Cal. Mar. 23, 2020); *United States v. Redd*, No. 97 Cr. 6-AJT, 2020 WL 1248493, at *6–8 (E.D. Va. Mar. 16, 2020); *United States v. Young*, No. 2:00-CR-0002-1, 2020 WL 1047815, at *5–6 (M.D. Tenn. Mar. 4, 2020); *United States v. O'Bryan*, No. 96 Cr. 10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *3–4 (D. Utah Feb. 18, 2020); *United States v. Urkevich*, No. 8:03-CR-27, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 349–52 (S.D. Tex. 2019).[2] These courts observe that when Congress enacted the First Step Act, it gave inmates direct access to the courts for compassionate release, without a motion by the BOP, if certain conditions are met. *See, e.g.*, *Marks*, 2020 WL 1908911, at *5. Because the Sentencing Commission has not yet amended U.S.S.G. § 1B1.13 to reflect that statutory change, these courts infer that the "court effectively steps into the shoes of the BOP director, and makes its own determination" of extraordinary and compelling reasons. *Id.* at *7. In other words, these courts conclude that the U.S.S.G. § 1B1.13 is now abrogated by statute and, therefore, "courts are no longer bound by the specific categories identified by the Sentencing Commission prior to the enactment of the First Step Act." *Id.* at *5.

Other district courts, by contrast, have continued to apply U.S.S.G. § 1B1.13 as binding authority. *See United States v. Mollica*, No. 2:14-CR-329-KOB, 2020 WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020); *United States v. Goldberg*, No. CR 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020); *Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020); *United States v. Brummett*, No. 6:07-103-DCR, 2020 WL 1492763, at *3 (E.D. Ky. Mar. 27, 2020); *United States v. Willingham*, No. Cr. 113-010, 2019 WL 6733028, at *4 (S.D. Ga. Dec. 10, 2019); *United States v. Lynn*, Cr. No. 89-0072-WS, 2019 WL 3805349, at *2 (S.D. Ala. Aug. 12, 2019), *appeal dismissed*, 2019 WL 6273393 (11th Cir. 2019); *United States*

---

incapacitated spouse. U.S.S.G. § 1B1.13 app. note 1(A)–(C). Musa does not contend he falls within these categories.

[2] Musa also cites *United States v. Ebbers*, No. 02 Cr. 1144-3, 2020 WL 91399, at *4–5 (VEC) (S.D.N.Y. Jan. 8, 2020), but that decision was expressly based upon the defendant's age and medical conditions, not the catchall provision of the application note.

*v. Shields*, No. 12 Cr. 410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019), *reconsideration denied*, 2019 WL 2645028 (N.D. Cal. June 27, 2019).[3] These courts harmonize the Sentencing Guidelines with the statute by eliminating the requirement that the BOP bring a motion for compassionate release, as provided in the First Step Act, but maintaining the definition of "extraordinary and compelling" set forth in the application notes to U.S.S.G § 1B1.13. *See, e.g.*, *Lynn*, 2019 WL 3805349, at *4. This interpretation permits the court to independently evaluate the categories of "extraordinary and compelling" circumstances specifically identified in the application notes — a serious medical condition, old age, and sole caregiver status — but reserves to the BOP the discretion to apply the catchall category. *Id.*

The latter group of courts, though smaller in number, is correct on the law. Congress delegated sole authority to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," 28 U.S.C. § 994(t), and required courts presented with compassionate release motions to rule "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A). Pursuant to its statutory mandate, the Sentencing Commission defined "extraordinary and compelling" in U.S.S.G § 1B1.13, and nothing in the First Step Act overrides that definition. The decisions cited by Musa "rest upon a faulty premise that the First Step Act somehow rendered the Sentencing Commission's policy statement an inappropriate expression of policy," *Willingham*, 2019 WL 6733028, at *2, but there is no "inherent incompatibility between a statute allowing defendants to move for compassionate release and a policy statement allowing BOP a role in determining whether compassionate release is warranted, and thus no basis for deeming the policy statement overridden," *Lynn*, 2019 WL 3805349, at *4. Setting aside the policy statement "contravenes express Congressional intent that the Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision." *Willingham*, 2019 WL 6733028, at *4.

The cases cited by Musa also suggest that preserving the BOP's discretion to apply the catchall provision would frustrate Congress's intent through the First Step Act to expand the use of compassionate release. *See, e.g.*, *Cantu*, 423 F. Supp. 3d at 351 ("[I]f the Director of the BOP were still the sole determiner of what constitutes an extraordinary and compelling reason, the amendment's allowance of defendants' own § 3582(c)(1)(A) motions for reduction of sentence would be to no avail."). Many if not most motions for compassionate release, however, fall within the defined categories of a serious medical condition, old age, or sole caregiver status, which do not require a BOP determination. "[W]hile retaining BOP as the arbiter of the residual category may not increase the number of compassionate releases, neither will it reduce them, so the net effect of Section 603(b) [of the First Step Act] is decidedly to increase the use of compassionate release." *Lynn*, 2019 WL 3805349, at *3.

---

[3] In his reply brief, Musa claims that on reconsideration, "the court in *Shields* disavowed the proposition for which it is cited in the government's brief." (ECF Doc. No. 335, at 4–5). In fact, on reconsideration, the *Shields* court reiterated its view that it "had not discovered any legal authority granting a district court discretion to disregard guidance provided by the sentencing commission based on the court's opinion that such guidance has not kept pace with statutory amendments." 2019 WL 2645028, at *2.

## II.     Musa Has Failed to State an Extraordinary and Compelling Reason for Release

Musa proffers two reasons for compassionate release:  first, that the First Step Act reduced the mandatory minimum imprisonment applicable to defendants in his circumstances from life to 25 years, and second, that his decision to go to trial subjected him to an enhanced statutory penalty that would been avoided had he accepted the Government's plea offer.[4]  Should the Court determine that it may review Musa's reasons under the catchall provision of U.S.S.G. § 1B1.13, the Court should hold that Musa's reasons are not "extraordinary and compelling" within the meaning of the law.

The First Step Act does not constitute an "extraordinary and compelling" circumstance simply because Musa's offense conduct would not result in the same sentence today.[5]  To be sure, a handful of cases cited by Musa have held that the First Step Act's modification of a statutory penalty was by itself sufficient to constitute an "extraordinary and compelling" circumstance.  *See Haynes* 2020 WL 1941478, at *15–16 (change to Section 924(c) stacking enhancement alone); *Decator*, 2020 WL 1676219, at *2–3 (same); *Redd*, 2020 WL 1248493, at *5 (same); *O'Bryan*, 2020 WL 869475, at *2 (same); *Maumau*, 2020 WL 806121, at *7 (same); *Urkevich*, 2019 WL 6037391, at *3 (same).  But other cases found the change in law compelling only when taken in combination with the defendant's rehabilitation, a factor undercut in this case by the defendant's *forgery* of a letter from a senior BOP official purporting to vouch for Musa's maturity and rehabilitation (ECF Doc. No. 311, at 18–20).  *See Hope*, No. 90 Cr. 6108-KMW-2, slip op. at 8–9 (change to prior narcotics felonies enhancement, rehabilitation, and serious medical condition); *Young*, 2020 WL 1047815, at *7–10 (change to Section 924(c) stacking, rehabilitation, and old age); *Marks*, 2020 WL 1908911, at *7–8 (change to Section 924(c) stacking and rehabilitation); *Defendant(s)*, 2020 WL 1864906, at *5–6 (same); *Owens*, No. 97 Cr. 2546-CAB, slip op. at 5–6 (same).[6]

---

[4] In his April 7, 2020 letter, Musa references the "ongoing COVID-19 pandemic" as "added exigency to securing [his] immediate release," but does not identify any underlying medical conditions or otherwise argue for relief on this ground.  (ECF Doc. No. 353).

[5] None of the cases cited by Musa hold that regret at declining a plea offer, the second reason Musa proffers, is "extraordinary and compelling."  Although the court in *Haynes* criticized that defendant's "stacked" 924(c) convictions as a "penalty for Haynes's exercise of his constitutional right to trial," 2020 WL 1941478, at *15, the court held it was Congress's modification of the corresponding statutory penalties in the First Step Act that was the "extraordinary and compelling" circumstance, *id.* at *16.

[6] The remaining cases cited by Musa are not factually analogous at all.  *See Millan*, 2020 WL 1674058, at *9–15 (defendant's conduct in prison, including work with at-risk youth and suicide prevention, was extraordinary and compelling); *Reyes*, 2020 WL 1663129, at *5 (defendant's rehabilitation and need to care for family member with cancer were extraordinary and compelling); *Ebbers*, 2020 WL 91399, at *7–8 (defendant's serious medical conditions and old age were extraordinary and compelling); *Cantu*, 423 F. Supp. 3d at 352–53 (Government's request for home confinement was extraordinary and compelling).

In all events, the cases granting compassionate release based upon the First Step Act's non-retroactive changes to sentencing penalties cannot be squared with the savings statute, which provides that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide . . . ." 1 U.S.C. § 109. Because Musa's sentence was imposed 27 years before enactment of the First Step Act in 2018, it is fixed by the savings statute and the First Step Act "cannot be applied to reduce [his] sentence . . . ." *United States v. Diaz*, 627 F.3d 930, 931 (2d Cir. 2010) (per curiam) (declining to apply sentencing changes in the Fair Sentencing Act of 2010 to a defendant who "was convicted and sentenced before [that statute] was enacted").

Applying the savings statute, the courts of appeals have uniformly held that the First Step Act's non-retroactive changes to sentencing penalties — including both Section 401 of the Act, which reduces the enhancement for two prior felony narcotics convictions applied in Musa's case, and Section 403 of the Act, which limits the "stacking" of Section 924(c) convictions applied in the bulk of the cases Musa cites as supplemental authority — do not apply to defendants on direct appeal at the time of enactment. *See Young v. United States*, 943 F.3d 460, 462 (D.C. Cir. 2019) (Section 401); *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019) (Section 401), *cert. denied*, No. 19-7341, 2020 WL 873742 (Feb. 24, 2020); *United States v. Gonzalez*, 949 F.3d 30, 42 (1st Cir. 2020) (Section 401); *United States v. Pierson*, 925 F.3d 913, 927 (7th Cir. 2019) (Section 401), *vacated and remanded on other grounds*, No. 19-566, 2020 WL 1124417, at *1 (Mar. 9, 2020); *United States v. Cruz-Rivera*, 954 F.3d 410, 412–13 (1st Cir. 2020) (Section 403); *United States v. Richardson*, 948 F.3d 733, 750–53 (6th Cir. 2020) (Section 403); *United States v. Jordan*, 952 F.3d 160, 171–74 (4th Cir. 2020) (Section 403); *United States v. Hodge*, 948 F.3d 160, 162–64 (3d Cir. 2020) (Section 403).

Each of these appellate cases presents the precise sentencing disparity that Musa raises: Defendants sentenced before enactment of the First Step Act are treated differently than defendants sentenced after. "But those disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." *Dorsey v. United States*, 567 U.S. 260, 280 (2012). Musa's invitation to recast the First Step Act as an "extraordinary and compelling" reason for purposes of compassionate release would circumvent the express limitations on retroactivity set forth by Congress. Put differently, it makes no sense for Congress to preclude a defendant sentenced in 2018 (Young) from receiving the sentencing benefit of the First Step Act on direct appeal, but permit a defendant sentenced in 1991 (Musa) to receive the same benefit through compassionate release. (Indeed, Musa's argument would even permit Young, denied the benefit of the First Step Act on direct appeal, to immediately request compassionate release on the same ground.) As Judge Caproni wrote: "[I]t is not this Court's role to retroactively correct sentencing disparities without a Congressional mandate to do so, only to consider whether compassion justifies release under the present circumstances." *Ebbers*, 2020 WL 91399, at *9.

For the reasons set forth above and in the Government's brief, Musa's motion for compassionate release should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

by: *[signature]*
Alexander Li
Danielle Sassoon
Assistant United States Attorneys
(212) 637-2265/-1115

cc: John Gleeson, Esq. (*via ECF*)