

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

November 19, 2020

**By ECF**

The Honorable Richard J. Sullivan
United States Circuit Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

<u>Notice of Supplemental Authority</u>

*United States v. Jawad Amir Musa (f/k/a Leroy Moses)*, 90-cr-863 (RJS)

Dear Judge Sullivan:

Last Friday, in an oral opinion relying principally on *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), *United States v. Haynes*, 456 F. Supp. 3d 496 (E.D.N.Y. 2020), and *United States v. Ellerby*, No. 1:95-CR-00077-CBA, Dkt. No. 172 (E.D.N.Y. Apr. 29, 2020), Judge Edward R. Korman in the Eastern District of New York granted a motion for compassionate release and reduced the defendant's sentence to time served. *See United States v. Facey (Davis)*, No. 1:96-cr-00912-ERK (E.D.N.Y. Nov. 13, 2020), ECF No. 539. In announcing its decision, the court cited to many of the reasons presented in Jawad Musa's motion for compassionate release that is currently pending before Your Honor, Dkt. No. 303. Specifically, the court noted, among other things, the extraordinary length of the defendant's sentence and the subsequent legal changes that created a large disparity between the sentence the defendant received and the one he would receive today for the same counts, finding that these factors, in addition to the defendant's rehabilitation, presented extraordinary and compelling reasons that warranted a reduction in sentence. And just today, a judge in the Eastern District of North Carolina did the same for an individual who received stacked 18 U.S.C. § 924(c) convictions, and reduced the defendant's sentence to what it would be today. *United States v. Curtis*, No. 5:92-CR-114-BR (E.D.N.C. Nov. 19, 2020), ECF No. 136.

Across the country, district courts have granted similar motions for relief based on other now-defunct sentencing provisions. In *United States v. Price*, No. 07-0152-06 (ESH), 2020 WL 5909789 (D.D.C. Oct. 6, 2020), for example, Judge Ellen Huvelle cited to *Brooker* in support of her finding that the "sentencing disparity created by the First Step Act," in addition to the "stark and unwarranted sentencing disparities between Mr. Price's life sentence [mandated by § 841(b)] and the sentences of his more culpable co-conspirators," among other factors, warranted a reduction in sentence. 2020 WL 5909789, at *5–6. The court reduced his "previously imposed sentence of life imprisonment to time served." *Id.* at *7.

Similarly, in *United States v. Williams*, No. 5:12-cr-14, 2020 WL 5834673 (W.D. Va. Sept. 30, 2020), Chief District Judge Michael Urbanski noted that the defendant had two minor drug possession felonies before being indicted, allowing "the government [to move] for a

Hon. Richard J. Sullivan          - 2 -                    November 19, 2020

sentencing enhancement under 21 U.S.C. § 851, seeking 'an enhanced penalty of mandatory life'" under the law at the time.  2020 WL 5834673, at * 1.  The court, which voiced its disagreement with the mandatory sentence at the time it was imposed, held that "[b]oth the striking disparity between the short duration of Williams' prior state court sentences and his federal mandatory life sentence and subsequent recognition by Congress that a mandatory life sentence is not warranted under these circumstances establish extraordinary and compelling reasons to vacate Williams' life sentence."  2020 WL 5834673, at * 8.  Judge Urbanski reduced the defendant's sentence to 188 months, the "low end of his correctly calculated sentencing guidelines" that he would receive under today's law.  *Id*. at *2.

Because these decisions bear directly on the Court's authority to grant the relief sought by our pending motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Dkt. No. 303, we attach hereto the decisions in *Curtis*, *Price*, and *Williams*.

Respectfully submitted,

/s/ John Gleeson
John Gleeson
jgleeson@debevoise.com
919 Third Avenue
New York, New York 10022
(212) 909-6000
*Counsel to Jawad Amir Musa*

*Enclosure*
cc:    Danielle Sassoon, Assistant United States Attorney (*via ECF*)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:92-CR-114-1BR

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| VAUGHN J. CURTIS | ) | |

This matter is before the court on defendant's motion for compassionate release.  (DE # 120.)

In 1993, a jury convicted defendant of conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371 ("Count 1"); armed bank robbery and aiding and abetting the same in violation of 18 U.S.C. §§ 2 and 2113 ("Count 2"); and using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) ("Count 3").  The court sentenced defendant to a total term of imprisonment of 297 months.  Also, the court sentenced defendant to a total term of five years supervised released, imposed a fine of $10,000, and ordered defendant to pay $10,774 in restitution.[1]  Defendant appealed his conviction and sentence, and the Fourth Circuit Court of Appeals affirmed.  United States v. Curtis, No. 93-5466, 1994 WL 14848 (4th Cir. Jan. 24, 1994) (per curiam).

---

[1] Prior to sentencing in this court, defendant pled guilty to armed bank robbery and violating § 924(c) in the Middle District of North Carolina.  United States v. Curtis, No. 2:92-CR-00223-CCE.  After sentencing here, that court sentenced him to 101 months imprisonment.  According to defendant, based on information received from the Bureau of Prisons, he has completed the imprisonment term this court imposed, and he is now serving the imprisonment term imposed by the court in the Middle District of North Carolina.  (Supp. Mot., DE # 121, at 1.) Even so, defendant maintains that this court may reduce his sentence of imprisonment to a term certain, and should it in fact do so, the Bureau of Prisons will recalculate his projected release date.  (Id. at 2.)  According to the government, defendant is serving an aggregate 398-month term of imprisonment.  (Resp., DE # 123, at 3.) Nonetheless, it does not dispute that, assuming defendant otherwise satisfies the requirements of 18 U.S.C. § 3582(c)(1)(A), this court may reduce defendant's term of imprisonment.

In March 2020, defendant filed *pro se* a motion for compassionate release.  (DE # 118.) Pursuant to Standing Order No. 19-SO-3 (E.D.N.C. Jan. 25, 2019), the court appointed counsel to represent defendant for purposes of the motion.  In August 2020, appointed counsel filed the instant motion as well as a supplemental motion, (DE # 121).  The government filed a response in opposition, (DE # 123), to which defendant filed a reply, (DE # 125).

Defendant requests a reduction in his sentence of imprisonment to 141 months pursuant to 18 U.S.C. § 3582(c)(1)(A).  That statute provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>> (1) in any case—
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>> (i) extraordinary and compelling reasons warrant such a reduction . . .
>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

The relevant policy statement is set forth in United States Sentencing Guideline § 1B1.13, "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)." [2]  "Th[at]

---

[2] Technically, the policy statement, which was adopted prior to the First Step Act, applies only to motions filed by the Bureau of Prisons.  See United States v. Beck, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019).  "The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants.  While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."  Id. at *6-7 (citation and footnote omitted).

policy statement . . . requires: (1) extraordinary or compelling reasons to warrant a reduction in a defendant's sentence, (2) that the defendant is not a danger to the safety of others or the community, and (3) that release from custody complies with § 3553(a) factors." United States v. Lake, No. CR 5:16-076-DCR, 2019 WL 4143293, at *2 (E.D. Ky. Aug. 30, 2019) (citing U.S.S.G. § 1B1.13 (2018)); see also United States v. Kibble, Criminal No. 2:19-00077, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020).

Under the policy statement, extraordinary and compelling reasons justifying a sentence reduction exist based on any of following circumstances:

(A)   Medical Condition of the Defendant.—
  (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
  (ii)   The defendant is—
    (I)   suffering from a serious physical or medical condition,
    (II)   suffering from a serious functional or cognitive impairment, or
    (III)   experiencing deteriorating physical or mental health because of the aging process,
    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
(B)   Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
(C)   Family Circumstances.
  (i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.
  (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
(D)    Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B.13, cmt. n.1.

Even if a defendant establishes extraordinary and compelling reasons to support a

sentence reduction, the court must still consider the applicable § 3553(a) factors.  See 18 U.S.C.

§ 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020).

> These factors include: "(1) [Defendant's] personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants."

United States v. Adona, No. CR PX-17-345, 2020 WL 4338889, at *2 (D. Md. July 28, 2020)

(citation omitted) (alteration in original).

At the outset, the government argues defendant's motion should be denied because he has

failed to exhaust his administrative remedies.  (Resp., DE # 123, at 16-17.)  According to the

government, the Bureau of Prisons ("BOP") has no record of defendant filing a request for

compassionate release through its Administrative Remedy Program.  (Kelley Aff., DE # 123-1,

at 2.)  In response, defendant submits the copies of his 1 February 2020 letter to the Warden

requesting consideration for a reduction in his sentence and of subsequent email correspondence

between the Warden and himself regarding the request.  (Reply, DE # 125, at 3 (citing Mot., Exs.

1, 2, DE ## 120-1, 120-2; see also Mot., DE # 118, at 1.)  The court concludes that defendant has

demonstrated that he made a request of the Warden pursuant to § 3582(c)(1)(A)(i) and more than

30 days lapsed since that time, without his receiving a written denial.  Therefore, he has satisfied

§ 3582(c)(1)(A)'s exhaustion requirement.

Turning to the merits, defendant contends the changes in § 924(c) sentences under the

First Step Act of 2018 ("First Step Act"), combined with the threat COVID-19 poses to his

health while incarcerated, constitute extraordinary and compelling reasons to modify his

sentence.  (Mot., DE # 120, at 7-8.)  The government argues defendant's sentence should not be

4

reduced because he has not demonstrated any extraordinary or compelling reason to justify a reduction.  (Resp., DE # 123, at 1.)  Also, the government urges the court to deny the motion considering the § 3553(a) factors and the danger defendant would pose to the community.  (Id.)

First, the court examines defendant's sentence of imprisonment.  On Counts 1 and 2, defendant's guideline imprisonment range was 57 to 71 months.  (PSR ¶ 50.)  The court sentenced defendant at the bottom of the range on those counts.  For Count 3, because defendant had previously pled guilty to a § 924(c) violation, see supra note 1, the court was required to sentence defendant to a 20-year consecutive term of imprisonment.  See 18 U.S.C. § 924(c)(1) (1990) ("In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years . . . .  [T]he term of imprisonment imposed under this subsection [shall not] run concurrently with any other term of imprisonment . . . ."); Curtis, 1994 WL 14848, at *1 (holding this court properly applied the § 924(c) enhancement because defendant "has been found guilty, on two separate occasions, of using a firearm in relation to the commission of a felony" (citations omitted)).  (See also PSR ¶¶ 49, 50.)

"The First Step Act amended 18 U.S.C. § 924(c)(1)(C) such that the enhanced mandatory minimum penalty for a second or any subsequent § 924(c) conviction, . . . applies only when an offender's first conviction under § 924(c) was 'final' when the subsequent violation was committed."  United States v. Redd, 444 F. Supp. 3d 717, 720 (E.D. Va. 2020) (citing First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221-22) (footnote omitted).  If this law had been in effect when defendant committed the offense in Count 3, defendant's mandatory consecutive term of imprisonment would have been seven years because his prior § 924(c) conviction was not final.  See 18 U.S.C. § 924(c)(1)(A)(ii) (2018) (providing a penalty of seven

years imprisonment if the firearm is brandished).  (See also PSR ¶ 10 (stating that defendant brandished a weapon inside the bank).)

The Act did not make this change in the law retroactive.  See First Step Act of 2018, § 403(b), 132 Stat. at 5222.  It did, however, amend the statute under which defendant seeks relief, § 3582(c)(1)(A), to permit a defendant to bring a motion for a sentence reduction directly, rather than vesting that authority exclusively with the BOP.  See id., § 603(b)(1), 132 Stat. at 5239. Numerous district courts have found the First Step Act's change in § 924(c) sentencing, despite the fact Congress did not make it retroactive, constitutes an extraordinary and compelling reason justifying a reduction in a defendant's sentence under § 3582(c)(1)(A).  See, e.g., United States v. Arey, 461 F. Supp. 3d 343, 349-50 & n.8 (W.D. Va. 2020) (collecting cases); but see, e.g., United States v. Gashe, No. CR07-4033-LTS, 2020 WL 6276140, at *2 (N.D. Iowa Oct. 26, 2020) (collecting cases).  The court follows those decisions under the circumstances here, where defendant is serving a sentence 13 years longer than would a person convicted today for the same offense.  This sentencing disparity constitutes an extraordinary and compelling reason to warrant reducing defendant's sentence.[3]

Next, the court considers the relevant § 3553(a) factors and the potential danger defendant would pose to the community.  Defendant has been incarcerated 28 years.  With good time credit, he is projected to be released in less than one year.  (See Mot., Ex 3, DE # 120-2, at

---

[3] Defendant has an increased risk of contracting COVID-19 given his incarceration.  See Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq html (go to People Who are Incarcerated at Correctional and Detention Facilities, select Do I have a greater chance of getting COVID-19? ("People in correctional and detention facilities are at greater risk for some illnesses, such as COVID-19, because of close living arrangements with other people.") (last visited Nov. 18, 2020).  Also, his age (51 years old) increases his risk of severe illness from COVID-19.  See id., https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults html ("As you get older, your risk for severe illness from COVID-19 increases. For example, people in their 50s are at higher risk for severe illness than people in their 40s.") (last visited Nov. 18, 2020).  These facts arguably bolster the conclusion that extraordinary and compelling reasons exist to warrant reducing his sentence.

1.)  His security classification is low.  (Id.)  While incarcerated, defendant has sustained six disciplinary infractions (low or moderate severity), the last of which occurred more than five years ago.  (Id. at 2.)  He has taken numerous educational courses, maintained employment, and obtained his GED.  (Id. at 1-2.)  He is making payments towards his financial obligations.  (Id. at 3.)  To be sure, the instant offenses are serious.  However, given defendant's age, conduct during incarceration, and the significant length of time since his offenses, the court finds it unlikely defendant will be a danger to the community.  Considering all the circumstances, reducing defendant's sentence of imprisonment to 141 months still provides just punishment and reflects the seriousness of the offenses he committed.

Defendant's motion for compassionate release and supplemental motions are ALLOWED.  Defendant's *pro se* motion for compassionate release is DENIED as moot.  For purposes of the record, the Clerk is DIRECTED to file under seal on the docket defendant's presentence report.

Defendant's sentence of imprisonment as reflected in the judgment dated 7 June 1993 is REDUCED to 84 months on Count 3, for a total term of 141 months.  All other provisions of the 7 June 1993 judgment shall remain in effect.  The BOP may delay defendant's release up to 14 days for quarantine and/or administrative reasons.

This 19 November 2020.

_____
W. Earl Britt
Senior U.S. District Judge

7

2020 WL 5909789
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.

UNITED STATES of America
v.
Helery PRICE, Defendant.

Criminal No. 07-0152-06 (ESH)
|
Signed 10/06/2020

**Attorneys and Law Firms**

Bernard J. Delia, U.S. Attorney's Office Special Proceedings Section, Pamela Stever Satterfield, Anthony F. Scarpelli, Kacie McCoy Weston, John K. Han, William John O'Malley, Jr., Yasmin Emrani, U.S. Attorney's Office for the District of Columbia, Washington, DC, for United States of America.

Booth M. Ripke, Larry Allen Nathans, Nathans & Biddle, LLP, Baltimore, MD, Richard Alan Seligman, Law Offices of Richard Seligman, Washington, DC, William Lawrence Welch, III, Columbia, MD, for Defendant.

Helery R. Price, Lewisburg, PA, pro se.

**MEMORANDUM OPINION**

ELLEN S. HUVELLE, United States District Judge

 **\*1** Before the Court is defendant Helery Price's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1). (*See* Def.'s Mot., ECF No. 448.) He seeks a sentence reduction to time served based on "extraordinary and compelling reasons." *Id.* § 3582(c)(1)(A)(i). For the reasons stated herein, the motion will be granted.

**BACKGROUND**

In 2008, after a jury trial, Mr. Price was convicted of a single count of conspiracy to possess with intent to distribute and to distribute one kilogram or more of phencyclidine ("PCP"), in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) (iv), 851. (Judgment, Aug. 11, 2008, ECF No. 277.) At the time he was sentenced, due to two prior drug convictions, he

was sentenced to the statutory mandatory minimum of life imprisonment and 10 years of supervised release. (*Id.*) As discussed *infra*, due to amendments in the relevant statutes, Mr. Price's statutory mandatory minimum if he were being sentenced today would be 15 years. If he were serving a 15-year sentence, the Bureau of Prisons calculates that, with good time credits, Mr. Price would have been released in March 2020.

Mr. Price is currently incarcerated at USP Lewisburg. On August 13, 2020, he sent a letter to the warden there, asking that he be considered for compassionate release pursuant to § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic, his personal characteristics that increase his risk should he contract the virus (57 years old, African American, and male), the fact that he is serving a life sentence for a non-violent drug offense that would not apply today given the recent changes to criminal sentencing laws made by the First Step Act of 2018, and the unwarranted sentencing disparities between Mr. Price and his more culpable co-conspirators. (*See* Def.'s Mot. at 1 & attachment thereto.) Mr. Price's request was denied that same day. (*Id.*)

Mr. Price filed the pending motion for compassionate release on August 31, 2020, and a supplement thereto on September 6, 2020 (ECF No. 449). The government filed an opposition on September 8, 2020 (ECF No. 452), and Mr. Price filed a reply on September 11, 2020 (ECF No. 453), and a second supplement on September 27, 2020 (ECF No. 454).

**ANALYSIS**

Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). As amended by the First Step Act of 2018, § 3582(c)(1) provides that:

> The court may not modify a term of imprisonment once it has been imposed except that ...

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of

imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

 **\*2** (i) extraordinary and compelling reasons warrant such a reduction....

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.... 18 U.S.C. 3582(c)(1).

Prior to the First Step Act, motions for compassionate release could only be brought by the Director of the Bureau of Prisons ("BOP"). See Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) ("Increasing the Use and Transparency of Compassionate Release"). Because the Sentencing Commission's applicable policy statement was issued before the passage of the First Step Act, it only contemplates motions filed by the Bureau of Prisons, not by defendants.[1] In relevant part, it provides:

 Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment ... if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

 (1) (A) Extraordinary and compelling reasons warrant the reduction; ...

 (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

 (3) The reduction is consistent with this policy statement. U.S.S.G. § 1B1.13. In Application Note 1, the Commission identifies four types of circumstances that may qualify as extraordinary and compelling: (A) the defendant's medical condition; (B) the defendant's age, if combined with deteriorating physical or mental health and a minimum amount of time served; (C) certain family circumstances; and (D) "other reasons—as determined by the Director of the Bureau of Prisons" independent of or in combination with the reasons listed in subsections (A) to (C). See U.S.S.G. § 1B.13 appl. n.1(A)–(D).

The government opposes defendant's motion, arguing that (1) he has failed to satisfy the statutory exhaustion requirement; (2) his reasons for seeking a sentence reduction are not "extraordinary and compelling"; and (3) even if he had presented extraordinary and compelling reasons, he should not be released based on a consideration of the § 3553(a) factors and because his release would pose a danger to the community. Each argument will be addressed in turn.

## I. EXHAUSTION

Section 3582(c) allows a defendant to bring a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c). The parties dispute the meaning of this provision. Defendant argues that his motion is properly before the Court because more than 30 days have passed since August 12, 2020, when he submitted his request to the warden of USP Lewisburg. The government argues that because the warden denied defendant's request, as opposed to not responding to it, the 30-day waiting period does not apply and defendant cannot satisfy the exhaustion requirement until all administrative appeals have been exhausted. (*See* Gov't Opp. at 12 ("Courts have interpreted the First Step Act to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days.").) The government's proposed interpretation is contrary to the plain language of the statute, which provides that a defendant can either exhaust administrative appeals *or* wait 30 days. *See, e.g.*, *United States v. Franco*, 2020 WL 5249369 at *1-2, No. 20-60473 (5th Cir. Sept. 3, 2020); *United States v. Algur*, 960 F.3d 831, 833-34 (6th Cir. 2020). Indeed, such an interpretation would undermine the First Step Act's goal of expanding the use of compassionate release by removing the BOP as a gatekeeper to judicial consideration of sentence reduction motions. Accordingly, because more than 30 days have passed since defendant submitted his request to the warden of his facility, Mr. Price satisfies this first requirement for compassionate release.

## II. EXTRAORDINARY AND COMPELLING REASONS

 **\*3** Mr. Price argues that extraordinary and compelling reasons exist to reduce his sentence because (1) changes in sentencing law mean that he is serving a mandatory life sentence while a similarly-situated defendant sentenced today would face only a 15-year mandatory minimum; (2) his life sentence far exceeds the sentences of more culpable co-conspirators; and (3) the injustice of his situation is exacerbated by the ongoing COVID-19 pandemic, which he

is at greater risk of contracting while in prison and which, because he is an older, black, male, who has health issues, is more likely to cause him serious illness or death.

Before deciding whether these circumstances constitute extraordinary and compelling reasons under § 3582(c), the Court must address a legal question: whether the fact that Section 3582(c) requires that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" means that a court is limited to the specific reasons set forth in U.S.S.G. § 1B1.13, none of which apply to Mr. Price, or whether it has the discretion to decide that a reason is extraordinary and compelling even if it is not a reason that falls within the Sentencing Commission's policy statement. Because this policy statement predates the First Step Act's substantial changes to the compassionate release process, which were designed to expand the use of compassionate release and remove the BOP as the exclusive gatekeeper of the process, a number of district courts, as well as one court of appeals, have concluded that the policy statement no longer binds district courts. *See United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *5 (2d Cir. Sept. 25, 2020) ("First Step Act empowered district courts evaluating motions for compassionate release to consider *any* extraordinary and compelling reason for release that a defendant might raise"); *United States v. Quinn*, No. 91-cr-00608, 2020 WL 3275736, at *5 (N.D. Cal. June 17, 2020) ("Sentencing Commission's policy statement no longer binds district courts after the First Step Act; instead, courts are free to determine whether any extraordinary and compelling reasons other than those delineated in [the Sentencing Guidelines policy statement] warrant compassionate release." (internal quotation marks omitted)).[2] While there is a split of authority,[3] this Court finds the many opinions that endorse an expansive reading of a sentencing court's power, given the changes instituted by the First Step Act and the fact that the policy statement has not been amended since its enactment, to be more persuasive. *See, e.g.*, *United States v. Duncan*, No. 3:11-cr-00012, 2020 WL 4669944 at *5 (M.D. Tenn. Aug. 12, 2020) (summarizing cases that set forth multiple reasons for concluding that "factors tip the scale in favor of the conclusion that a court can look at 'other reasons' when considering 'extraordinary and compelling' reasons under the First Step Act").

**\*4** Having concluded that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," *Brooker*,

2020 WL 5739712, at *7, the question remains whether the extraordinary and compelling reasons cited by Mr. Price warrant compassionate release. The Court concludes they do.

First, from the outset, this Court was deeply disturbed by having to impose a statutory mandatory minimum sentence of life imprisonment. His prior two non-violent drug convictions hardly merited a life sentence. The first conviction was a then-20-year old conviction from 1988, when he was 25 years old, in the Superior Court for the District of Columbia. It involved a minimal amount of drugs, and although he was sentenced to 20 months to 5 years, the execution of the sentence was suspended and he was placed on three years of probation. The second conviction was in federal court in 1994, when Mr. Price was 30. The amount of drugs was still relatively small, 18.3 grams of heroin, but he was sentenced to 10 years. At sentencing, the Court observed that a sentence of life imprisonment was excessive for a defendant convicted of a non-violent drug offense who had two prior drug convictions:

> I think that the drug laws in this regard are completely draconian. I will say for the Court of Appeals I would not impose a life sentence merely because of your prior record. That's what's driving it.... But this is not, this particular offense is not a crime of violence meriting life. People who commit murder and such heinous crimes as that deserve life, but I have no choice whatsoever under 841 but to impose a life sentence.

(Sent. Hr'g Tr. at 36, Aug. 7, 2008.)

Congress has now recognized that the sentencing scheme in place in 2008 was, in this Court's words, "draconian," such that today a defendant similarly-situated to Mr. Price would face only a 15-year mandatory minimum. (*See* Supp. Mot. at 1-2 (explaining why due to amendments to the drug sentencing laws, the 1988 conviction would no longer count and the mandatory minimum sentence for one prior drug conviction is now 15 years).) But those changes to the law have not been made retroactive. Nonetheless, this situation, as a number of courts have recognized, can present an extraordinary and compelling reason to reduce a defendant's sentence, even in the absence of serious health issues. *See, e.g.*, *United States v. Arey* No. 5:05-cr-0029, 2020 WL 2464796, at *3 (W.D. Va. May 13, 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a dramatically lower sentence than the one he is currently serving constituted an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)."); *United States v. Day*, No. 1:05-

cr-460, 2020 WL 4251803, at *12 (E.D. Va. July 23, 2020) (finding extraordinary and compelling reasons where "were Defendant sentenced today, his sentence with respect to Count 1 would be dramatically different. Instead of a mandatory Life sentence (predicated on two qualifying § 851 offenses), Defendant would today face a mandatory minimum sentence of 15 years (predicated on a single qualifying § 851 offense), with a substantially lower than Life Guidelines sentence."); *see also United States v. Quinn*, 2020 WL 3275736, at *4 ("enormous sentencing disparity created by subsequent changes to federal sentencing law ... constitutes an 'extraordinary and compelling reason' for ... compassionate release"); *Bellamy v. United States*, No. 2:03-cr-197, 2020 WL 4208446, at *6 (E.D. Va. July 22, 2020) (considering "the disparity between individuals sentenced before and after the passage of the FIRST STEP Act"); *United States v. Urkevich*, No. 8:03-cr-37, 2019 WL 6037391, at *8 (D. Neb. Nov. 14, 2019) ("A reduction ... is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed."); United States v. *Maumau*, No. 2:08-cr-0758, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) ("[T]he changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief on the facts present here.").

**\*5** In addition to the sentencing disparity created by the First Step Act, there are stark and unwarranted sentencing disparities between Mr. Price's life sentence and the sentences of his more culpable co-conspirators: Lonnell Glover, Anthony Suggs, and Ernest Glover.

Lonnell Glover was the kingpin in this drug conspiracy. He was tried separately, convicted, and sentenced to life imprisonment. *See* Judgment, *United States v. Lonnell Glover*, No. 07-cr-153 (D.D.C. Aug. 6, 2010). He was also separately charged and convicted of conspiracy to distribute five kilograms or more of cocaine, for which he received a sentence of 240 months imprisonment. *See* Judgment, *United States v. Lonnell Glover*, No. 09-cr-129 (D.D.C. June 24, 2010). However, both convictions were overturned on appeal because the Court of Appeals found that the bug on his truck was unlawful. *See United States v. Lonnell Glover*, 736 F.3d 509 (D.C. Cir. 2013). On remand, despite Lonnell Glover's substantial criminal history, including several crimes of violence, and his leadership role in two different drug distribution rings, the government agreed to an 11(c)(1)(C) plea, pursuant to which the cocaine conspiracy charges were

dismissed and he was sentenced to 21 years for the PCP drug conspiracy. He now has a projected release date in 2025.

Anthony Suggs was supplied by Lonnell Glover, and he then distributed to Ernest Glover, Mr. Price and others. Anthony Suggs was tried with Ernest Glover and Mr. Price. He was convicted of one count of conspiracy and also one substantive count of distribution. He had one prior conviction for distribution of 5 grams or more of cocaine, for which he had been sentenced to 87 months. Based on that prior conviction, his statutory mandatory sentence was 240 months, which the Court imposed. The Court noted at the time that Mr. Suggs was "far more culpable" than either Ernest Glover or Mr. Price, who were subject to mandatory life sentences. (Sent. Hr'g Tr. at 27) ("[n]ot that Mr. Suggs isn't far more culpable than the other people who because of a statute I'm going to end up sentencing for much longer, that doesn't seem to make sense one bit to me"). However, because the Court also considered the mandatory minimum sentence of 20 years for Anthony Suggs to be excessive (Sent. Hr'g Tr. at 27), there was no fair way to mitigate the sentencing disparity. The disparity is now even greater because after serving a little over 13 years (approximately 77% of his sentence based on his projected release date), Mr. Suggs was granted compassionate release due to his medical conditions and the COVID-19 pandemic and this Court's determination that none of the goals of sentencing required his continued incarceration. *See United States v. Suggs*, No. 07-cr-0152-01, 2020 WL 5816485, at *1-3 (D.D.C. Sept. 29, 2020).

Ernest Glover was supplied by Anthony Suggs, and he then sold to various street level dealers. Like Mr. Price, Ernest Glover was convicted of one count of conspiracy and, because he also had two prior convictions,[4] sentenced to mandatory life imprisonment. Unlike Mr. Price, though, Ernest Glover was in possession of eight ounces of PCP, scales, packaging vials, and three shotguns, along with ammunition, at the time of his arrest. In 2017, due to a grant of executive clemency, Ernest Glover's sentence was reduced to 240 months, creating an inexplicable disparity between him and Mr. Price. This disparity is now even greater because after serving almost 12 years (approximately 70% of his sentence based on his projected release date), Ernest Glover was granted compassionate release due to his medical conditions and the COVID-19 pandemic and this Court's determination that none of the goals of sentencing required his continued incarceration. *See United States v. Glover*, No. 07-cr-00152-04, 2020 WL 4923635, at *1-4 (D.D.C. Aug. 21, 2020).

**\*6** Thus, as it now stands, both Anthony Suggs and Ernest Glover have been released from prison and Lonnell Glover is due to be released in 2025, while Mr. Price is still serving a life sentence. These unwarranted sentencing disparities provide a further compelling reason to reduce Mr. Price's sentence.

Finally, Mr. Price is a 57-year-old African-American man with some health issues, and, as such, he is at greater risk from the COVID-19 pandemic than a younger and healthier inmate. While the there are no current active cases at Lewisburg, there have been 84 cases in the past and the potential for another breakout is always present.

Given all of the above, the Court finds that there are extraordinary and compelling reasons to reduce Mr. Price's sentence of life imprisonment.

### III. § 3553(A) FACTORS

Section 3553(a) provides that in determining an appropriate sentence, a court must take into account "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as, *inter alia*, afford adequate deterrence, provide just punishment, and protect the public. *See id.* § 3553(a)(1)-(2). Moreover, a sentence must be "sufficient, but not greater than necessary," to promote these goals. *See id.* § 3553(a). Having considered the § 3553(a) factors, the Court concludes that a sentence reduction to time served is warranted.

The government argues that the § 3553(a) factors weigh against a sentence reduction because Mr. Price has not shown that he "is not a danger to the safety of any other person or to the community." (Gov't Opp. at 16 (quoting U.S.S.G. § 1B1.13(2)).) The only facts the government relies on to support its view are that defendant "received a life sentence for his role in a serious crime"; he had several prior convictions and arrests before his conviction in this case; and he is serving his sentence in a "medium" security prison. (Gov't Opp. at 16.) As Judge Contreras recently pointed out, if the Court were to agree that these facts, without more, were sufficient to demonstrate that a defendant would pose a "danger to public safety," "very few, if any, defendants who have served lengthy sentences would be able to take advantage of the First Step Act ... a result [that] appears contrary to the purpose of the First Step Act amendments." *See United States v. Brown*, No. 92-cr-0345, slip op. at 12 (D.D.C. July 2, 2020), ECF No. 93. Rather, the Court must consider the entire record, and based on this record, the

Court concludes that Mr. Price does not pose a danger to the community. First, even though Mr. Price was convicted of conspiracy to possess with intent to distribute and to distribute phencyclidine, he did not engage in any violent conduct. Indeed, the only evidence tying Mr. Price to the drug conspiracy that led to his conviction were references made by his co-conspirators in wiretapped conversations. In addition, the last of Mr. Price's prior convictions dates back to 1993, more than 27 years ago, and according to his current inmate profile his recidivism risk level is "low." (*See* Gov't Ex. C, ECF No. 452-3.) Moreover, although he is housed in a medium security facility, the government acknowledges that his prison record does not include any history of violent infractions. Finally, as previously discussed, the life sentence that Mr. Price is serving was required by statute, based on the offense of convictions and his prior convictions; it did not reflect this Court's judgment that Mr. Price posed a danger to the public. Indeed, as the Court expressed at the time, it considered the life sentence to be completely out of proportion to Mr. Price's culpability, and it would never have imposed that sentence had it not been required to do so.

**\*7** For the same reasons, the Court finds that none of the purposes of sentencing would be served by continuing to incarcerate Mr. Price. He is now 57 years old. He has been incarcerated since 2007, so he has already served over 13 years. Had current law been in effect at the time he was sentenced in 2008, he would have faced a 15-year mandatory minimum sentence. In all likelihood, that is the sentence the Court would have imposed as the underlying criminal conduct, while serious, did not involve any firearms or allegations of violence. With good time credits, he would already have been released. The unusual nature of this case and unjustified disparities in sentencing have already been addressed. The two co-defendants who were convicted at the same trial were both more culpable than Mr. Price, yet both have already been released. In addition, Mr. Price has had minimal disciplinary issues over the 13 years he has been in prison, and has completed a number of programs, including an 1,120 hour electrical apprentice program and 40-hour and 500-hour substance abuse programs. Finally, Mr. Price plans to reside with a family member, and his release plan has been reviewed and approved by the United States Probation Office.

Taking all the above into consideration, the Court does not agree that additional time in prison is necessary to achieve any of the goals of sentencing.

**CONCLUSION**

For the reasons stated above, the Court finds that extraordinary and compelling reasons warrant a sentence reduction. Accordingly, the Court will grant defendant's motion for compassionate release and reduce his previously imposed sentence of life imprisonment to time served. In addition, the Court will modify the conditions of supervised release to include a three-month period of home detention, with location monitoring at the discretion of the Probation Office. A separate Order accompanies this Memorandum Opinion.

**All Citations**

Slip Copy, 2020 WL 5909789

---

Footnotes

1   The Sentencing Commission has lacked a quorum since the passage of the First Step Act and thus has been unable to enact any amendments to the Sentencing Guidelines.

2   *See also United States v. Duncan*, No. 3:11-cr-0012, 2020 WL 4669944, at *5 (M.D. Tenn. Aug. 12, 2020); *United States v. Day*, No. 1:05-cr-460, 2020 WL 4251803, at *11, No. 1:05-cr-460 (E.D. Va. July 23, 2020); *Bellamy v. United States*, No. 2:03-cr-197, 2020 WL 4208446, at *6 (E.D. Va. July 22, 2020); *United States v. Arey*, No. 5:05-cr-0029, 2020 WL 2464796, at *3 (W.D. Va. May 13, 2020); *United States v. Haynes*, No. 93-cr-1043, 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020);*United States v. Marks*, No. 03-cr-6033, 2020 WL 1908911, at *5 (W.D.N.Y. Apr. 20, 2020); *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020); *United States v. Redd*, 444 F. Supp. 3d 717, 726-27 (E.D. Va. 2020); *United States v. Young*, No. 2:00-cr-0002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681-82 (N.D. Cal. 2019); *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019).

3   *See, e.g., United States v. Fox*, No. 2:14-cr-03, 2019 WL 3046086, at *2 (D. Me. July 11, 2019).

4   Like Mr. Price, Ernest Glover had two prior convictions for drug distribution: one in Superior Court that resulted in a sentence of three years probation; and one in federal court that resulted in a 108-month sentence of imprisonment.

---

**End of Document**                                           © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 5834673
Only the Westlaw citation is currently available.
United States District Court, W.D. Virginia,
Harrisonburg Division.

UNITED STATES of America
v.
Antonio Demetrius WILLIAMS, Defendant

Case No. 5:12-cr-14
|
Signed 09/29/2020
|
Filed 09/30/2020

**Attorneys and Law Firms**

Jean Barrett Hudson, United States Attorneys Office, Charlottesville, VA, Jeb T. Terrien, Grayson A. Hoffman, United States Attorneys Office, Harrisonburg, VA, Jennifer R. Bockhorst, United States Attorneys Office, Abingdon, VA, Justin Michael Lugar, Craig Jake Jacobsen, United States Attorneys Office, Roanoke, VA, for United States of America.

## MEMORANDUM OPINION

Michael F. Urbanski, Chief United States District Judge

**\*1** This matter is before the court on defendant Antonio Demetrius Williams' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as revised by the First Step Act of 2018, ECF No. 761. The government has responded, ECF No. 768, and Williams has replied, ECF No. 770. For the reasons stated herein, the court will **GRANT** Williams' motion for compassionate release, **VACATE** his life sentence, and **REDUCE** his sentence to 188 months' incarceration.

## I.

On April 1, 2013, the court sentenced Williams to mandatory life in prison following his conviction for conspiracy to distribute 280 grams or more of cocaine base.[1] The court has issued two prior memorandum opinions in this case, related to a motion pursuant 28 U.S.C. § 2255. ECF Nos. 687, and 699. The procedural history and factual basis have been thoroughly detailed in the previous opinions and the court will only reiterate the relevant facts as necessary to his motion for compassionate release.

At the time the court imposed the mandatory life sentence, Williams was only 22 years old. When he was 18 years old, Williams was convicted of two cocaine possession felonies in Florida, for which he served 28 and 19 days, respectively. Despite Williams' age and the de minimus nature of his predicate convictions, the government moved for a sentencing enhancement under 21 U.S.C. § 851, seeking "an enhanced penalty of mandatory life (and a minimum period of supervised release of at least 10 years) for individuals having three prior drug felony convictions." ECF No. 96.[2]

Although the government's § 851 notices for Williams' two prior Florida state drug convictions met the then-required definition of "felony drug offenses" under 18 U.S.C. § 841(b)(1)(A), it is striking that Williams committed those crimes shortly after his 18th birthday and that his combined sentence for both offenses was only 47 days. The court noted this disparity in its November 15, 2016 memorandum opinion on Williams' habeas corpus petition:

> Prior to his illegal foray into Virginia, Antonio Williams pled guilty to two Florida cocaine possession felonies, and received time-served sentences of 28 and 19 days. At the time, Williams was 18 years old. Just four years later, following the jury's finding of guilt, Williams, then only 22 years old, was sentenced to a mandatory term of life imprisonment without release under 21 U.S.C. § 841(b)(1)(A). One cannot help being struck by the enormous difference between Williams' state sentences and his federal one. After exhaustively examining the issue of whether Williams' Florida 2008 and 2009 Possession of Cocaine convictions qualify as felony drug offenses under 21 U.S.C. § 802(44), the court must conclude that the mandatory life sentence imposed on Williams, however incongruous in light of predicate state convictions, was lawful.

**\*2** Williams, 2016 WL 6780027, at \*8. The court remarked on this stark disparity at Williams' sentencing hearing on March 20, 2013.

> [W]hat really bothers me about this case is that you've got this 22-year-old young man who got slapped on the wrist — not even a slap on the wrist. He got a little love tap down in Florida and he probably thought down there, "I'll plead guilty, I'll take my time served, I'll move on and that's what

my lawyer tells me to do, that's what I'll do, I'll get out of jail," not ever knowing that if he gets caught again and is prosecuted federally, he faces mandatory life. That's what's troubling about this case.... [I]t's just the sheer difference between 28 days and 19 days and now this life sentence that under the statute I'm required to impose.

Sent'g Hr'g Tr., United States v. Antonio Williams, No. 5:12cr00014, ECF No. 499, at 9-10.

Williams now seeks a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing that the substantial modifications to the enhancement provisions of 21 U.S.C. §§ 841 and 851 in the First Step Act establish "extraordinary and compelling" reasons warranting his compassionate release. In order to enhance a sentence under § 841(b)(1)(A), the First Step Act now requires that the predicate conviction be a "serious drug felony," as defined at 21 U.S.C. § 802(57), in rather than a mere "felony drug offense," as defined at 21 U.S.C. § 822(44). While any state or federal drug offense punishable by imprisonment for more than one year qualified as a "felony drug offense," to qualify as a "serious drug felony," the First Step Act now requires that "the offender served a term of imprisonment of more than 12 months." 21 U.S.C. § 802(57). It is undisputed that Williams served nowhere near 12 months for either of his Florida convictions. This means that were he sentenced today, Williams' sentence would not be subject to enhancement and he would no longer be required to serve a mandatory life sentence. Indeed, although the statutory maximum for a § 841(b)(1)(A) sentence is life imprisonment, the mandatory minimum sentence is only 10 years. Williams argues that this sea change in mandatory minimum sentences enunciated in the First Step Act constitutes an extraordinary and compelling reason to warrant reduction of his sentence. As such, Williams asks the court to reduce his mandatory life sentence to 120 months. For the reasons that follow, the court agrees with Williams, but will reduce his sentence to 188 months, representing the low end of his correctly calculated sentencing guidelines.[3]

## II.

A federal district court "may not modify a term of imprisonment once it has been imposed" except in limited circumstances. 18 U.S.C. § 3582(c). One such exception is the compassionate release statute, 18 U.S.C § 3582(c)(1)(A), which was amended by the First Step Act on December 21, 2018. Prior to the amendment, a court could reduce the term of imprisonment only "upon a motion by the Director of the

Bureau of Prisons [ (BOP) ]". Id. Now, following the First Step Act, the statute also allows a court to reduce a sentence upon motion by the defendant "if it finds ... extraordinary and compelling reasons warrant such a reduction." Id. The court must also consider the "factors set forth in 3553(a), to the extent they are applicable," and ensure that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." Id. As a threshold issue, in order for a defendant to bring a motion before the district court, § 3582(c)(1)(A) contains an exhaustion requirement. The defendant may only bring a motion for compassionate release after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request ... whichever is earlier." Id.

**\*3** Accordingly, Williams' requested relief requires the court to consider: (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence and if such a reduction is consistent with applicable policy statements of the United States Sentencing Commission (the "Sentencing Commission"); and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

### i. Williams has exhausted available administrative remedies.

Williams submitted a written request for compassionate release to the warden of USP Coleman I, seeking a reduction in his sentence based on extraordinary and compelling circumstances—specifically, that "due to the changes in the law made by the First Step Act, none of [his] prior drug convictions qualify as a 'serious drug felony,' thus making [his] guideline sentence under today's law of 188-235 months." ECF No. 761-1, at 2. The warden denied his request on April 30, 2020, and Williams appealed. Williams' appeal was likewise denied on May 20, 2020. ECF No. 761-2. Accordingly, the court finds that Williams has exhausted administrative remedies as required by § 3582(c)(1)(A) and he may properly bring this motion.[4]

### ii. Williams presents extraordinary and compelling reasons to warrant a sentence reduction.

The compassionate release statute states that a court may modify a term of imprisonment "upon motion of the defendant ... if it finds that ... extraordinary and compelling reasons warrant such a reduction ... and that such a reduction

is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). Therefore, the court must determine if it finds extraordinary and compelling reasons exist and if a reduction is consistent with applicable policy statements.

First, the court finds that it is valuable to consider the history behind § 3582(c)(1)(A) and the corresponding changes made by the First Step Act. In 1984, Congress passed the Comprehensive Crime Control Act, including the Sentencing Reform Act, which abolished federal parole. See Pub. L. No. 98-473, 98 Stat 1837 (1984); see also Richmond v. Polk, 375 F.3d 309, 316 (4th Cir. 2004) ("the Sentencing Reform Act of 1984 ... abolished parole for federal offenses committed after November 1, 1987"). In its place, Congress passed § 3582(c), which provided that a district court could not modify a final term of imprisonment except in limited situations—including for "extraordinary and compelling reasons." Comprehensive Crime Control Act of 1984, § 3582(c), Pub. L. No. 98-473 (current version at 18 U.S.C. § 3582(c)(2018)). In its original form, only the Director of the BOP could initiate a motion for compassionate release. In other words, the BOP served as a gatekeeper for whether a district court could consider a motion for compassionate release.

This rarely used vehicle for sentence modification changed dramatically when Congress amended § 3582(c)(1)(A) with the First Step Act. Section 603(b) of the First Step Act, instructively titled "Increasing the Use and Transparency of Compassionate Release," amended § 3582(c)(1)(A) to allow individual defendants, in addition to the BOP, to file a motion with the district court for a reduction in their sentence. See First Step Act of 2018, Pub. L. 115-391, 132 Stat 5194. Congress added an additional hurdle for defendants to overcome by implementing the exhaustion requirement, as discussed above. Accordingly, if a defendant satisfies the exhaustion requirement, he can now petition the court directly for compassionate release.

 *4  While the First Step Act significantly changed the compassionate release statute by removing the BOP as the gatekeeper for initiating compassionate release motions, it did not change how "extraordinary and compelling" should be defined. Prior to the First Step Act, Congress directed the Sentencing Commission to "promulgate and distribute ... general policy statements regarding the application of the guidelines ... including the appropriate use of ... the sentencing modification provisions set forth in sections ... 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). Specifically,

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t).

Following Congress' instructions, the Sentencing Commission published the following policy statement in the U.S. Sentencing Guidelines Manual ("U.S.S.G.") with respect to compassionate release:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1)(A) Extraordinary and compelling reasons warrant the reduction; or
> >
> > (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> >
> > (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3) The reduction is consistent with this policy statement.
>
> U.S.S.G. § 1B1.13.

In the commentary for this policy statement, the Sentencing Commission provided application notes, identifying four ways for a defendant to demonstrate that "extraordinary and compelling" reasons exist justifying compassionate release: (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the BOP, for "other reasons" other than, or in combination with, the reasons described in application notes (A)–(C). U.S.S.G. § 1B1.13, cmt. n. 1(A)–(D).

While this policy statement was first effective on November 1, 2006, and amended numerous times since, it has remained

unchanged since the passage of the First Step Act.[5] Most notably, the policy statement still requires the BOP to serve as the gatekeeper for initiating compassionate release motions. See U.S.S.G. § 1B1.13 ("Upon motion of the Director of the Bureau of Prisons ... the court may reduce a term of imprisonment ..."). Similarly, application note (D) still only allows the BOP to determine what other extraordinary and compelling reasons exist beyond those enumerated in application notes (A)–(C). See U.S.S.G. § 1B1.13, cmt. n. 1(D).

Even though the Sentencing Commission has not updated the policy statement following the First Step Act, the government argues the court is still bound by its language.[6] The government asserts that "the question can be posed as whether courts considering compassionate release motions continue to be bound by the Sentencing Guidelines policy statement that defines 'extraordinary and compelling reasons.' " United States' Resp. in Opp'n, ECF No. 768, at 2. The government argues that "Congress expressly granted to the Sentencing Commission (not the courts) the power to determine what constitutes a sufficient ground for compassionate release." Id. at 6. Further, the government argues that the First Step Act did not change the policy statement and "somehow place[ ] independent discretionary authority in the hands of a district court to" decide what constituted extraordinary and compelling reasons. Id. at 7.

**\*5** The crux of the government's argument is summed up by the following excerpt from its brief:

> [T]he FSA merely streamlined the procedural rules by which a defendant could seek compassionate release, allowing a defendant to petition directly to the court instead of requiring the BOP to be the movant. It did not change the substantive bases for such relief; those bases were still left to the Sentencing Commission to decide. Unless and until §§ 994(a)(2)(C) and 994(t) are repealed, they must control. Courts cannot arrogate for themselves powers specifically limited by Congress.
>
> Id. (emphasis in original).

On the other hand, Williams argues that the court is not bound by the outdated policy statement and that, because there is no policy statement that relates to a defendant bringing a motion for compassionate release, there is no applicable policy statement for the revised § 3582(c)(1). Williams further argues that the Sentencing Commission did not limit "extraordinary and compelling" reasons to medical, age-related, or family circumstances, because it always allowed for "other reasons" in application note (D). See U.S.S.G. § 1B1.13 cmt. n. 1(A)–(D). In the end, Williams argues that the policy statement "is not binding on the courts because it is inconsistent with the amended text of § 3582—and the undisputed purpose of the First Step Act." ECF No. 761, at 11.

The court agrees with Williams that the policy statement in § 1B1.13, as currently written, is inconsistent with the First Step Act and is thus not binding on the court. Rather, the policy statement serves an advisory role. See United States v. Fox, No. 2:14-cr-03, 2019 WL 3046086, at \*3 (D. Me. July 11, 2019) (the "existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not conclusive given the statutory change"); see also United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."). The compassionate release statute was amended to allow both the BOP and the defendant, after meeting the exhaustion requirement, to bring motions for compassionate release and the court finds that there is no current policy statement applicable to motions for compassionate release filed by defendants. See United States v. Redd, 444 F. Supp. 3d 717, 724 (E.D. Va. 2020) ("there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.' "); Beck, 425 F. Supp. 3d at 587 ("There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act."); United States v. Brooks, No. 07-cr-20047, 2020 WL 2509107, at \*5 (C.D. Ill. May 15, 2020) (collecting cases).

Because § 1B1.13 is inconsistent with the First Step Act, the application notes are likewise unpersuasive and not binding on the court. See Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) ("commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with ... that guideline[ ]"). The court is therefore not limited to the three enumerated reasons in the application notes and is likewise not limited by the BOP's determination of what "other" "extraordinary and compelling" reasons exist. See Redd, 444 F. Supp. 3d at 726-27 ("the Court joins other courts in concluding that a court may find, independent of any motion, determination or recommendation by the BOP

Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in [the application notes]") (collecting cases).

**\*6** Instructively, the Redd court wrote the following:

Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance, particularly since it would be unlikely that the BOP Director would determine that an extraordinary and compelling reason exists under Application Note 1(D) but then decline to file a motion for compassionate release based on that determination. For these reasons, whether a court's finding of a warranted sentence reduction based on "other reasons" would be consistent with U.S.S.G. § 1B1.13 should be assessed based on whether that finding would be consistent with those other reasons had they been presented to the Court by the BOP Director as the basis for relief.

Id. at 725-26; see also United States v. Young, No. 2:00-cr-00002-1, 2020 WL 1047815, at \*6 (M.D. Tenn. Mar. 4, 2020) ("In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction."); United States v. Haynes, No. 93 CR 1043, 456 F.Supp.3d 496, 2020 WL 1941478, at \*13 (E.D.N.Y. Apr. 22, 2020) ("The title of the First Step Act section that amends 18 U.S.C. § 3582(c)(1)(A) ... is 'Increasing the Use and Transparency of Compassionate Release.' ... That title supports the reading that U.S.S.G § 1B1.13 cmt. n.1(D) is not applicable when a defendant requests relief under § 3582(c)(1)(A) as amended because it no longer explains an appropriate use of that statute.") (quoting United States v. Cantu-Rivera, 423 F. Supp. 3d 345, 350 (S.D. Tex. 2019)).

The court adopts the reasoning set forth in Redd and finds that the First Step Act revised the compassionate release statute such that it removed the BOP as the gatekeeper for who can properly bring a motion. The court reads § 3582(c)(1)(A) to grant the district court the same discretion as the BOP when it considers a compassionate release motion properly before it, allowing the district court to also decide if "other reasons" exist to establish "extraordinary and compelling reasons." See United States v. Stephenson, No. 3:05-CR-00511, 2020 WL 2566760, at \*5 (S.D. Iowa May 21, 2020). Therefore, the court will consider if Williams has demonstrated extraordinary and compelling reasons to

warrant a reduction in his sentence, including reasons other than those enumerated in the application notes to § 1B1.13.

Williams argues that the amendment to the sentence enhancement provisions of §§ 841(b)(1) and 851, such that the enhancements now only apply to a person with a prior conviction for a "serious drug felony," rather than simply a "felony drug offense," constitutes an extraordinary and compelling reason warranting a sentence reduction. ECF No. 761, at 3. Because neither of his prior Florida cocaine possession convictions qualify as a "serious drug felony" under the amended law, if he were sentenced today, he would not face a sentence enhancement. Id. The court agrees with Williams.[7]

**\*7** When Williams was sentenced, § 841(b)(1)(A) provided for an enhanced penalty of mandatory life imprisonment if the defendant committed certain drug conspiracy violations "after two or more prior convictions for a felony drug offense have become final." 21 U.S.C. § 841(b)(1)(A) (2010). Section 401 of the First Step Act made two relevant changes to the enhanced penalty of § 841(b)(1)(A): first, it required that the defendant have two prior serious drug felony convictions for the enhancement to apply; and second, it reduced the penalty for those defendants to a 25-year mandatory minimum, instead of life. See 21 U.S.C. § 841(b)(1)(A) (2018). Today, in order to satisfy the "serious drug felony" requirement, the defendant must have served a term of imprisonment of more than 12 months on each of the prior offenses. See 21 U.S.C. § 802(57); 18 U.S.C. § 924(e)(2).

Here, if Williams were sentenced today, mandatory life imprisonment would not be the outcome. First, he served a total of 47 days in jail, 28 for the first conviction and 19 for the second. These scant terms of incarceration clearly do not meet the standard for a "serious drug felony" as § 841(b)(1)(A) requires. Second, even if Williams did meet the "serious drug felony" requirement—which he clearly would not—he would only face a mandatory minimum of 25 years' imprisonment, a far cry from the mandatory life imposed.

The government agrees that "Williams is correct that if sentenced today, he would face a mandatory minimum of 120 months instead of life on his conspiracy conviction because any enhancement would not apply." ECF No. 768, at 11. However, the government argues that because Congress did not make section 401 of the First Step Act retroactive, Williams does not have a valid basis for compassionate release on account of extraordinary and compelling reasons

and that "using section 3582(c) as a vehicle to effectuate a non-retroactive amendment is legally wrong and would result in an end-run around Congress' choice on whether to allow retroactivity."[8] ECF No. 768, at 2.

The government is correct that the changes to section 401 of the First Step Act were not made explicitly retroactive, while other sections were made retroactive. See, e.g., First Step Act of 2018, Section 404, Pub. L. 115-391, 132 Stat 5194 (making changes to the Fair Sentencing Act of 2010 retroactive). As such, the First Step Act did not grant Williams, and all other similarly situated defendants, an automatic reduction in their sentence. Rather, as with changes to the 18 U.S.C. § 924(c) "stacking" penalties, where section 403 of the First Step Act likewise did not automatically apply, it is up to the courts to make an individualized assessment of a defendant seeking a reduction in his sentence. See Redd, 444 F. Supp. 3d at 721 (the "First Step Act increased the opportunity for defendants to obtain a reduction in their sentence based on an individualized consideration under designated criteria.").[9] The same applies for section 401 of the First Step Act—while Congress did not make the changes to § 841(b)(1)(A) automatically retroactive, the court can consider the amendments, in addition to undertaking an individualized examination of each defendant, in determining if the circumstances warrant a reduction in his sentence under § 3582(c)(1)(A). See id. ("Nor does the First Step Act's lack of retroactivity justify withholding sentencing relief given the overall purpose of the First Step Act amendments, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.").

 **8** Williams argues that the dramatic reduction under section 401 of the First Step Act to the § 841(b)(1)(A) enhancements constitutes an extraordinary and compelling reason warranting a reduction in his sentence. The court agrees. Similar to the many district courts across the country that have found that the "stacking" changes to § 924(c) constitute an extraordinary and compelling reason to warrant a sentence reduction, the court finds the same holds for the tectonic changes to the enhancement provisions of § 841(b)(1)(A). See Redd, 444 F. Supp. 3d at 721; Haynes, 2020 WL 1941478, at *15, 456 F.Supp.3d 496 (collecting cases). The court in Haynes specifically found that "[f]or an individual like Haynes ... the change [in § 924(c)] spells the difference between thirty years in or out of prison." 2020 WL 1941478, at *15, 456 F.Supp.3d 496. The same must be true when the

difference for Williams is a mandatory ten years in prison as opposed to the rest of his life.

Indeed, in United States v. Day, No. 1:05-cr-460, 2020 WL 4251803, at * 12, No. 1:05-cr-460 (E.D. Va. July 23, 2020), the Eastern District of Virginia held just that.

> There is no doubt that there is a gross disparity between the sentence Defendant received and the sentence he would have received after the First Step Act. See United States v. Urkevich, 2019 U.S. Dist. LEXIS 197408, at *8, 2019 WL 037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in [defendant's] sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed."). In that regard, the Court notes that, were Defendant sentenced today, his sentence with respect to Count 1 would be dramatically different. Instead of a mandatory Life sentence (predicated on two qualifying § 851 offenses), Defendant would today face a mandatory minimum sentence of 15 years (predicated on a single qualifying § 851 offense), with a substantially lower than Life Guidelines sentence. These changes are extraordinary and compelling developments that constitute extraordinary and compelling reasons justifying a reduction in Defendant's Life sentence. See Redd, 2020 WL 1248493, at *7, 444 F.Supp.3d 717 (finding as extraordinary and compelling the disparity between defendant's sentence at the time of his initial sentencing (603 months) and the sentence he would have received under today's sentencing regime (243 months) for the same offense conduct, a difference that was premised on Congress' repudiation of "stacked" 18 U.S.C. § 924(c) charges arising from a single indictment).

Consistent with the reasoning of the Eastern District of Virginia in Day, the court finds that the dramatic change made by the First Step Act—changing the predicate conviction required from "felony drug offense" to "serious drug felony" for § 841(b)(1)(A) sentence enhancement purposes—constitutes an extraordinary and compelling reason to reduce Williams' sentence. Were he convicted today, neither of Williams' Florida cocaine possession convictions would qualify to enhance his sentence, lowering his mandatory mimimum sentence from life to ten years.

The circumstances of this case are especially extraordinary and compelling. Shortly after his 18th birthday, Williams committed the two Florida cocaine possession offenses and received time-served sentences of 28 and 19 days. Because

the government filed § 851 notices for each of those Florida convictions in his Western District of Virginia prosecution under § 841(b)(1)(A), the court was required to sentence Williams, then only 22 years old, to spend the rest of his life in federal prison. The gross disparity between the sentences Williams received for his two prior state convictions and his federal conviction was extraordinary and compelling in 2013 when he was mandatorily sentenced to life in prison. And it is even more extraordinary and compelling now that Congress has changed the law such that the sorts of minor sentences served by Williams in Florida no longer qualify to enhance the mandatory minimum penalties under § 841(b)(1)(A). Now, only a "serious drug felony," for which a defendant must have served more than 12 months in prison, qualifies. Both the striking disparity between the short duration of Williams' prior state court sentences and his federal mandatory life sentence and subsequent recognition by Congress that a mandatory life sentence is not warranted under these circumstances establish extraordinary and compelling reasons to vacate Williams' life sentence.

### iii. A sentence reduction is appropriate after considering the § 3553(a) factors.

**\*9** Having found that extraordinary and compelling reasons exist to warrant a reduction in Williams' sentence, the court must consider if a reduction is consistent with the applicable § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A). Accordingly, the court must consider the following applicable § 3553(a) factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

... [and]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

See United States v. Rodriguez, 451 F. Supp. 3d 392, 406-07 (E.D. Pa. 2020) (citing 18 U.S.C. § 3553(a)).

During Williams' original sentencing, due to the mandatory nature of the sentence based on the §§ 841(b)(1)(A) and 851 enhancements, the court was not required to exhaustively delineate the § 3553(a) factors, including Williams' youth, lack of a leadership position, and non-violent criminal history. The court is now required to consider those factors and, when applying them to Williams, the court finds that they weigh heavily in favor of a sentence reduction.

First, when the court sentenced Williams, he was only 22 years old, and had just turned 20 when the controlled buys that led to his arrest occurred. The court notes that Williams' youth is an important factor in determining a just sentence. See U.S.S.G. § 5H1.1 ("Age (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."). Further, Williams' family circumstances were less than ideal. His father had been in prison since Williams was young,[10] his mother was a co-defendant in his case, and he dropped out of high school in the ninth grade. Williams also does not have a violent criminal history and he did not receive an enhancement at sentencing for possession of a dangerous weapon or use of violence.[11]

**\*10** Second, while Williams was involved in a serious drug distribution conspiracy, his sentencing guidelines calculations did not include an enhancement for possession of a firearm, use of violence or aggravating role. The court does not diminish the seriousness of Williams' involvement in the conspiracy or the seriousness of the crime, but rather the court is required to consider if the sentence imposed is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). In addition, the two predicate convictions that the government relied on in filing its § 851 enhancement were for two drug possession convictions in Florida, for which Williams served a combined total of 47 days. While both specific and general deterrence require a lengthy term of incarceration for this offense, the court believes that a term of 188 months, reflecting the low end of his guideline range under current law, to be "sufficient, but not greater than necessary." Id.

Third, with respect to providing just punishment, the court firmly believes—and the government concurs—that Williams' mandatory life sentence is too long. See Letter from United States Attorney to Acting Pardon Attorney, 768-1 ("[The United States Attorney] join[s] him in this request and urge[s] you to recommend a commutation of Mr. Williams' sentence to 180 months imprisonment."). To its credit, while arguing that a compassionate release petition is the "wrong legal vehicle," the government "agree[s] that justice requires action to fix Williams' sentence." United States' Resp. in Opp'n, ECF No. 768, at 3.

Fourth, as it relates to rehabilitative services, the court notes that Williams has taken advantage of his time incarcerated by obtaining his GED. The court also takes into consideration that Williams has a release plan to live with his father and a job offer to work in his landscaping business.

Finally, the court puts significant weight on the need to avoid unwarranted sentencing disparities. A similarly situated defendant, with the same prior convictions from Florida, would face a mandatory minimum of ten years if sentenced today. Instead, based on the timing of his offense, Williams, a 22-year-old, was sentenced to spend the remainder of his life incarcerated.

Accordingly, the court concludes that, in light of the First Step Act and the changes to the § 841(b)(1)(A) sentencing enhancements, a reduction in Williams' sentence is appropriate after considering the § 3553(a) factors. Williams should not remain subject to the draconian sentencing enhancements that no longer apply simply because he was sentenced before the statute was amended.[12] As such, the court will reduce the mandatory life sentence on Count 1 to 188 months, imposing a sentence at the low end of the sentencing guidelines as calculated today.[13]

### III.

After sentencing Williams to mandatory life on Count 1, the court sentenced him to 240 months on each of six distribution counts, to run concurrently. As the sentencing transcript reveals, the court initally signaled a ten year sentence on each of these measureable quantity distribution counts, but changed to twenty years after noting that the guidelines range for these counts, standing alone, was 235 to 293 months. The

court imposed a sentence near the low end of the guideline range of 240 months, to run concurrently. The court stated:

> **\*11** I'm varying from the guidelines on each one of those individual distribution charges, for the following reasons. I'm going to impose a sentence on each one of those to run concurrently, of 240 months. I do that because, one its smack dab in the middle of the 235 to 293, which would be the guideline range sentence separate and apart from this life calculation that ramps up the other to 360 months.

Sent'g Hr'g Tr., United States v. Antonio Williams, No. 5:12cr00014, ECF No. 499, at 41.

The Fourth Circuit has held that in sentencings under the First Step Act, the court must recalculate defendant's sentencing guidelines range and correct any prior error. United States v. Chambers, 956 F.3d 667 (4th Cir. 2020). Although Williams was sentenced after enactment of the Fair Sentencing Act, his mandatory life sentence precluded him from benefitting from the two-level reduction in the subsequent Sentencing Guidelines Amendment 782, which would otherwise have been applicable to his sentence on the measurable quantity distribution counts. Applying that two-level reduction to the guidelines calculation for the distribution counts yields the same guidelines range as that calculated for Count 1 of 188-235 months. Because the Sentencing Commission lowered the drug guideline range by two levels in Amendment 782, effective after Williams was sentenced, and this reduction was made retroactive in Amendment 788, Williams is entitled to the benefit of this reduction. See 18 U.S.C. § 3582(c)(2).[14] Consistent with the 188 month sentence imposed for Count 1, the sentencing factors under § 3553(a) support a reduction on the six measurable quantity distribution counts, Counts 2, 3, 4, 6, 9 and 10, to 188 months, to run concurrently with each other and with Count 1.

This conclusion squares with the general principle that "the law in effect at the time governs sentencing." United States v. Schaefer, 120 F.3d 505, 507 (4th Cir. 1997) (citing Hughey v. United States, 495 U.S. 411, 413 n.1, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990)); see also 18 U.S.C. § 3553(a)(4) (A)(ii) (at sentencing, the Court must consider "the kinds of sentence and the sentencing range established for–the applicable category of offenses committed ... as set forth in the guidelines–that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced"); U.S.S.G § 1B1.11 ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). It also finds

support in the court's mandate under § 3553(a) to consider, in determining the particular sentence to be imposed, "the need ... to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A); "the kinds of sentences available [at the time of sentencing]," 18 U.S.C. § 3553(a)(3); and "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6).

**\*12** Given the changes in the sentence enhancement provisions of § 841(b)(1)(A) worked by the First Step Act, and considering the two-level retroactive reduction in the drug guideline ranges effectuated by U.S.S.G. Guideline Amendments 782 and 788, the sentencing factors under § 3553(a), and the applicable policy statements associated with these guideline amendments, the court correspondingly reduces Williams' sentences on the distribution counts (Counts 2, 3, 4, 6, 9, and 10) from 240 months to 188 months, to run concurrently with each other and the 188 month sentence on Count 1.

## IV.

As both current law and the submission of the United States Attorney to the Pardon Attorney recognize, Antonio Williams' mandatory life sentence should no longer stand. His young age, lack of violence and the stark disparity both between his prior Florida sentences and the federal mandatory life sentence and the requirements for enhanced sentences under § 841(b)(1)(A) when he was convicted and now, make this an extraordinary and compelling case.

Accordingly, the court **GRANTS** Williams' motion for compassionate release, ECF No. 761, and his sentence is **REDUCED** as follows.

Williams' mandatory life sentence on Count 1 is **VACATED**, and a total term of imprisonment of 188 months is imposed. Specifically, Williams' sentence on Count 1 is reduced from life imprisonment to 188 months. Williams' sentences on Counts 2, 3, 4, 6, 9, and 10 are reduced from 240 months to 188 months. All terms of imprisonment are to run concurrently with each other.

Williams' term of supervised release of 10 years on Count 1 is **VACATED**, and a total term of supervised release of 6 years is imposed. Specifically, Williams' term of supervised release on Count 1 is reduced from 10 years to 6 years, to run concurrently with the 6-year period of supervised release which remain imposed on Counts 2, 3, 4, 6, 9 and 10.

In all other respects, the judgment order in this case remains in effect.

An appropriate order will be entered.

**All Citations**

Slip Copy, 2020 WL 5834673

Footnotes

1    Williams was sentenced to mandatory life on Count 1, Conspiracy to Distribute 280 Grams or More of Cocaine Base, and 240 months, to run concurrently, on multiple distribution counts (Counts 2, 3, 4, 6, 9, and 10) charging distribution of a measurable quantity of cocaine base.

2    As noted in footnote 1 of the court's November 15, 2016 memorandum opinion, the government originally claimed that Williams had a qualifying felony drug offense conviction on February 23, 2012 in the Circuit Court of Frederick County, Virginia. However, Williams' Frederick County conviction was not a qualifying predicate felony drug offense because it was not final before he committed the § 841(b)(1)(A) offense in this case. United States v. Antonio Williams, No. 5:12cr00014, 2016 WL 6780027, at *1 n.1 (W.D. Va. Nov. 15, 2016) (docketed at ECF No. 687). Thus, the only two predicate felony drug offenses at issue were the Florida cocaine possession convictions.

3    As currently calculated, Williams would have a total offense level of 34 and a criminal history category of III, yielding a guidelines range of 188-235 months.

4    To the extent that Williams has not fully exhausted the available administrative appeals within the BOP, the court also finds that the government has waived the exhaustion requirement by failing to argue it in their opposition. See United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020) (finding that the exhaustion requirement is a mandatory claims-processing rule that has two exceptions: waiver and forfeiture).

5    See United States Sentencing Commission, Guidelines Manual, Appendix C, Amendments to the Guidelines Manual, Amendment 683, available at: https://guidelines.ussc.gov/ac/683 (last visited September 29, 2020).

2020 WL 5834673

6   The court notes the inherent irony in the government's argument that the court does not have the authority to reduce Williams sentence because "the [Sentencing Reform Act] calls for consistent sentencing." ECF No. 768, at 13. Indeed, the court finds it has the authority precisely for this reason—to ensure Williams' sentence is consistent with other similarly situated defendants.

7   In an earlier habeas opinion, the court noted that because of a subsequent change in Florida criminal law, had Williams been convicted of the two predicate state court drug possession charges a few months later, those convictions would not have counted even as felony drug offenses. Williams was convicted on October 3, 2008 and February 3, 2009, and the Florida statute was amended to take those crimes out of the felony drug offense category only months later, on July 1, 2009. See Williams, 2016 WL 687027, at *4-8.

8   While the government opposes Williams' motion for compassionate relief, it supports a reduction in his overall sentence. In the letter sent in support of Williams' request for a sentence commutation, the United States Attorney wrote: "Mr. Williams was a very young man who had terrible errors in judgment. While I agree he should face a substantial punishment for his crimes, a life sentence is simply not warranted under the circumstances ... [I] urge you to recommend a commutation of Mr. Williams' sentence to 180 months imprisonment." ECF No. 768-1, at 2. The government's response in opposition notes that Williams' sentence commutation petition remains pending. ECF No. 768, at 1.

9   In United States v. Arey, No. 5:05-cr-00029, 2020 WL 2464796, at *5 (W.D. Va. May 13, 2020), this court agreed with Redd, finding that "[w]hile the First Step Act § 403(a) did not make this change retroactive, many district courts have reasoned that the First Step Act's change in how sentences should be calculated when multiple § 924(c) charges are included in the same indictment constitutes an extraordinary and compelling reason under § 3582(c)(1)(A)." (internal citations omitted).

10  While Williams' father was incarcerated when he was young, his father was released from the BOP in 2013 and currently resides in Florida and owns and operates his own landscaping business.

11  The policy statement directs the court to consider if the defendant is a danger to the safety of any other person or to the community, as provided in U.S.C. § 3142(g). See U.S.S.G. § 1B1.13(2). While the policy statement is not binding on the court, the court finds that Williams is not a danger to the community or any other person requiring imprisonment for the remainder of his life as he does not have a violent criminal history, did not possess a firearm or engage in violence during this offense, and he has a release plan which involves living with his father and an offer of employment.

12  The court notes that in its December 18, 2019, order the court denied Williams' motion to reduce his sentence under the First Step Act. ECF No. 760. The court concluded that because the changes made by the First Step Act to § 841(b)(1)(A) were not made retroactive, the court could not alter Williams' sentence based on the First Step Act alone. However, at the time, Williams had moved solely under the First Step Act, whereas now his motion is predicated on the compassionate release statute, § 3582(c)(1)(A). As such, the court has the authority under the compassionate release statute to reduce his sentence.

13  Likewise, because Williams' two Florida convictons no longer qualify to enhance his sentence under § 841(b)(1)(A), his ten-year term of supervised release, also a product of the former enhancement, is reduced to six years, concurrent with the six year term of supervised release on each of the measurable quantity distribution counts.

14  18 U.S.C § 3582(c)(2) allows a court to modify a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission ..., the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

---

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.

 © 2020 Thomson Reuters. No claim to original U.S. Government Works.